## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **WEST COUNTY PROPERTY HOLDINGS, LLC,** | Case No.: |
| **Plaintiff,** | Division: |
| v. | |
| **WCCC OP LLC,** | |
| Serve: CSC-Lawyers Incorporating Service Company Registered Agent 221 Bolivar St. Jefferson City, MO 65101 | |
| **Defendant.** | |

### VERIFIED PETITION

COMES NOW Plaintiff WEST COUNTY PROPERTY HOLDINGS, LLC ("**Landlord**"), by and through undersigned counsel, and hereby files its Verified Petition in this matter against Defendant WCCC OP LLC ("**Tenant**" or "**Defendant**"), and in support thereof states and alleges as follows:

#### FACTS COMMON TO ALL COUNTS

*The Parties*

1. Landlord is a Missouri limited liability company having its principal office located at c/o Cascade Capital Group, LLC, 3450 Oakton Street, Skokie, IL 60076.

2. Tenant is a Missouri limited liability company that can be served through its registered agent, CSC-Lawyers Incorporating Service Company at 221 Bolivar St., Jefferson City, MO 65101.

88423746.3

*Venue and Jurisdiction*

3. This Court has personal jurisdiction over Tenant because Tenant conducts business in St. Louis County, Missouri and is incorporated under the laws of the State of Missouri.

4. This Court has *in rem* jurisdiction over the real and personal property upon which Landlord seeks to have a receiver appointed because such property is located in St. Louis County, Missouri.

5. Venue is proper in this Court because the real property at issue is located in St. Louis County, Missouri.

*The Lease Transaction*

6. Landlord is the owner of certain real and personal property located at 312 Solley Drive, Rear, Ballwin, Missouri 63021 (collectively and all as further described in the Lease (defined below), the "**Property**"). The Property is improved with a skilled care nursing facility that currently has 52 occupants but capacity for up to 137 beds. A section of the Property is undergoing renovation and not currently available for occupancy.

7. On March 1, 2021, Landlord entered into a certain Lease Agreement (the "**Lease**") with Tenant pursuant to which Tenant agreed to rent the Property for an initial term of ten (10) years with certain extension rights further identified in the Lease. A true and correct copy of the Lease is attached hereto as **Exhibit A**.

8. Under Article IV of the Lease, Tenant is to pay certain amounts on a monthly basis, which amounts are referred to collectively in the Lease as the "**Rents**." Article VII of the Lease provides that Tenant shall also make certain monthly payments into the tax and insurance reserve accounts for payments of taxes and insurance with respect to the Property. Article IX of the Lease

also requires Tenant to maintain insurance at the Property, all in accordance with the terms set forth therein.

9. Article VIII of the Lease requires that during the term of the Lease, Tenant uses and operates the Property as a skilled nursing facility and for not other purpose. In addition, Tenant must maintain in good standing and full force a certificate of need and license from the Missouri Department of Health and Senior Services and any other government agencies permitting operations at the Property as a skilled nursing facility.

10. Under Article XI of the Lease, Tenant must keep and maintain the Property in good order and condition without waste and in a suitable state of repair. Tenant is to also cause the work described in Schedule 11.2 of the Lease to be completed in good, safe and workmanlike manner within the timeframe set forth in Schedule 11.2.

11. Article XIII of the Lease provides that Tenant is to "obey, observe and promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of any federal, state and municipal government agency or authority having jurisdiction over the [Property] and the operation thereof as a skilled nursing facility … ."

***Breaches Under The Lease***

12. Tenant failed to complete the required work under Article XI of the Lease. Specifically, the parking lot and elevator are both in need of repair. Further, Tenant is in breach of its financial covenants to its secured lender, in breach of Section 27.3 of the Lease.

13. In addition, staring in October 2022, Tenant has not timely paid the Rents and other amounts due and owing under the Lease. While certain reserve accounts maintained by Landlord have funds to cover the amount of the past due Rents and other amounts owed under the Lease,

those reserve accounts have been depleted as of March 2023 and there will be insufficient funds held in reserve to pay any Tenant obligations going forward. Further, according to financial statements previously provided by Tenant, Tenant has been unable to timely pay its operating expenses and has been operating at a deficit for several months. Thus, the financial statements and other information available to Landlord reflect that there will be insufficient funds available starting in April 2023 to pay the monthly obligations of the Tenant due under the Lease and to pay basic operating expenses at the Property.

14. More importantly, Tenant's financial instability has resulted in an inability of Tenant to properly maintain the Property. In January 2023, a representative of Landlord visited the Property and discussed with Tenant the need to complete certain repairs. Just over a month later, on February 27, 2023, Landlord received a notice from the City of Winchester regarding Tenant's failure to maintain a valid business license with respect to its operations. A true and correct copy of the notice received from the City of Winchester is attached hereto as **Exhibit B**.

15. Later that day, Landlord was informed by telephone that Tenant has received notice from local municipal officials that they would be visiting the Property and be issuing a 30-day notice informing Tenant that it must cease operations at the Property and relocate the residents located therein.

16. The next day, Landlord received a copy of a letter (the "**West County Notice**") from the West County EMS & Fire ("**West County**") in which Tenant was informed of several violations at the Property, including, without limitation, the demolition, renovation and remodeling of the Property without valid permits, unrepaired damage to ceilings in occupied portions of the Property, the failure to maintain adequate egress paths, and egress doors being

blocked.  In the letter, West County notified Tenant that its "occupancy has been revoked immediately …" and that "[a]bsolutely no new residents may be brought into the facility and all existing residents must be relocated by 11:59PM on Wednesday, March 29."  A true and correct copy of the West County Notice is attached hereto as **Exhibit C.**

17. On March 1, 2023, a representative of the Landlord again visited the Property to complete an inspection and address firsthand the closure notice received by Tenant.  Landlord's representative observed during the visit that the condition of the Property had deteriorated significantly since Landlord's visit just a month earlier.  Also during the visit, Landlord's representative was informed that the local public health department ("Public Health") had completed a physical inspection of the Property on February 28, 2023 that was initiated in response to the West County Notice.  During that visit, Landlord's representative participated in a phone conference with Public Health which was finishing its February 28, 2023 inspection report remotely on March 1, 2023.  During that call, Landlord's representative learned that Public Health four K-tags each of which contained multiple violations for life safety issues.  Public Health also expressed similar concerns as to what had previously been addressed by West County.  As a result of this inspection, the Public Health requested during the call on March 1, 2023 that operations at the Property be closed and directed that closure letters be sent to residents at the Property the following day – on March 2, 2023.

18. As a result of the foregoing, Landlord notified Tenant of its breaches under the Lease, and, that as a result of the same, Landlord intended to move for the appointment of a receiver at the Property on an emergency basis.

88423746.3

### COUNT I – APPOINTMENT OF RECEIVER

19.     Landlord re-alleges and incorporates by reference each and every allegation contained in all of the foregoing paragraphs above, as though fully set forth herein.

20.     As set forth above, Tenant is in breach with respect to its obligations owed under the Lease as a result of Tenant's failure to complete the required repairs at the Property, failure to make timely payments of amounts owed under the Lease, failure to maintain a proper license to conduct business at the Property, and overall failure to properly maintain the Property which has resulted in West County and the local health department providing notice to the Tenant that all operations at the Property must cease within thirty days from February 27, 2023 and all residents located therein must be relocated and receive relocation notices by March 2, 2023.

21.     Under R.S.Mo. § 515.510, courts "shall have the power to appoint a receiver … to keep and preserve all property … entrusted to the receiver pending any legal or equitable action concerning the same … including in the following instances:

(2)     in an action in which the person seeking appointment of a receiver has a lien on or interest in the property or its revenue-producing potential and either …

(a)     The appointment of a receiver with respect to the property or its revenue-producing potential is necessary to keep and preserve the property or its revenue-producing potential or to protect any business or business interest concerning the property or its revenue-producing potential;

. . .

(9)     In an action against any entity if that person is insolvent or is not generally paying the entity's debts as those debts become due unless they are the subject of bona fide dispute;

. . .

(14)    To prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property."

22. The appointment of a receiver is appropriate in this matter pursuant to R.S.Mo. §515.510(2) and (14) to prevent irreparable harm to Landlord and the Property. It is essential that the Property maintain its operations as an assisted living facility and provide continuous services to the current residents therein. If operations at the Property are terminated by local officials and relocation notices sent out, then all residents will start to find new facilities, will ultimately relocate and the ability to generate any income from the Property will terminate. As the owner of the Property, Landlord has a vested interest in: (i) protecting the value of the Property, the income therefrom and the personal property, and to prevent all risk of loss, removal, or material injury thereto; (ii) ensuring that the Property is adequately insured; (iii) ensuring that taxes on the Property are being paid in a timely fashion so as to prevent the possibility of tax liens; (iv) ensuring that the Property is subject to proper maintenance and repair; (v) ensuring that income and profits generated by the Property are being properly used for the benefit of the Property and are not being improperly diverted or subject to waste, diversion or diminution; and (vi) reviewing the books and records maintained in connection with the Property.

23. Further, the appointment of a receiver is necessary under R.S.Mo. §515.510(9) because over the course of the last year, the financial statements provided by Tenant have reflected that Tenant is unable to pay amounts owed under the Lease and is further unable to fund operating costs at the Property. Over the course of the last year, Tenant has operated the Property at a loss and has failed to timely make payments owed under the Lease. Landlord estimates that the reserve accounts on which Tenant has previously relied will be depleted by April 2023 resulting in risk that the Tenant will be unable to pay expenses necessary to provide care for the residents at the Property and to properly maintain and insure the Property.

## COUNT II – PRELIMINARY INJUNCTIVE RELIEF

24. Landlord re-alleges and incorporates by reference each and every allegation contained in all of the foregoing paragraphs above, as though fully set forth herein.

25. Under R.S.Mo. § 515.575, the appointment of receiver acts as an automatic stay (the "**Stay**") against the continuation of any judicial, administrative, or other action against a debtor, including, but not limited to, any act to obtain possession or interfere with possession or control over estate property.

26. The entry of an order appointing a receiver does not operate as a Stay against the commencement of continuation of any action or proceeding by a government unit to enforce it's police or regulatory power.  See, R.S.Mo §515.575.3(4).

27. Landlord seeks injunctive relief pursuant to Rule 92.02(c) out an abundance of caution to prevent the City of Winchester and West County from causing irreparable harm to the Property, and the residents currently housed at the Property.

28. Landlord is likely to succeed on the merits of their Petition and Motion to Appoint a Receiver.

29. Landlord, by and through the Receiver, is likely to remedy any and all violations and concerns of the City of Winchester and West County that led municipal orders and directives to close the facility.

30. Landlord has no adequate remedy at law for the harm and damages that may be caused by the shuttering of the Property and permanent removal of the residents from the facility.

31. Landlord's proposed Receiver has significant experience in stablilizing, revitalizing, and repairing distressed senior care facilities.  Landlord and the proposed receiver

should be provided an opportunity to (i) allow the residents to stay the Property; (ii) address, satisfy, and complete the issues raised by the City of Winchester and West County; and (iii) preserve the economic value of the Property by retaining residents and operating the facility as a going concern.

WHEREFORE, Plaintiff West County Property Holdings, LLC, prays that the Court grant Landlord the relief sought herein, appoint a receiver for the Property, and grant all other relief the Court deems just and reasonable.

Dated:  March 3, 2023

POLSINELLI PC

By: */s/ Matthew S. Layfield*
MATTHEW S. LAYFIELD (MO #57540)
100 S. 4th Street, Suite 1000
St. Louis, MO 63102
(314) 552-6834
Fax No. (314) 231-1776
mlayfield@polsinelli.com


By: */s/ Amy E. Hatch*
AMY E. HATCH (MO #53116)
900 West 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 753-1000
Fax No. (816) 753-1536
ahatch@polsinelli.com

ATTORNEYS FOR PLAINTIFF

9

88423746.3

STATE OF MISSOURI      )
                       )  SS
COUNTY OF St. Louis    )

## VERIFICATION

The undersigned, being first duly sworn upon my oath, states that I have read the foregoing Petition and that the matters stated therein are true and accurate to the best of my knowledge, information, and belief.



Amanda Colwell
Vice President of Asset Management
Cascade Capital Group, authorized agent
for West County Property Holdings,
LLC

Subscribed and Sworn to before me
on March 1st, 2023.

_____
NOTARY PUBLIC