Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

# EXHIBIT A

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

# LEASE AGREEMENT

by and between

**West County Property Holdings, LLC**,
a Missouri limited liability company,

**as Lessor**

**and**

**WCCC OP LLC**,
a Delaware limited liability company**,**

**as Lessee**

March 1, 2021

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## TABLE OF CONTENTS

ARTICLE I - DEFINITIONS ................................................................ 2

ARTICLE II - DEMISED PREMISES AND PERSONAL PROPERTY ................. 2

ARTICLE III - TERM OF LEASE ........................................................ 2

ARTICLE IV - RENT ...................................................................... 2

ARTICLE V - LATE CHARGES ......................................................... 4

ARTICLE VI - PAYMENT OF TAXES AND ASSESSMENTS ...................... 4

ARTICLE VII - TAX, INSURANCE AND REPLACEMENT RESERVE DEPOSITS ............. 6

ARTICLE VIII - OCCUPANCY ........................................................... 8

ARTICLE IX - INSURANCE .............................................................. 9

ARTICLE X - LESSOR'S RIGHT TO PERFORM .................................... 12

ARTICLE XI - REPAIRS AND MAINTENANCE; CONDEMNATION ............... 13

ARTICLE XII - ALTERATIONS AND DEMOLITION ............................... 15

ARTICLE XIII - COMPLIANCE WITH LAWS AND ORDINANCES ............... 15

ARTICLE XIV - DISCHARGE OF LIENS ............................................ 16

ARTICLE XV - INSPECTION OF PREMISES AND RECORDS BY LESSOR ..... 18

ARTICLE XVI - COVENANTS OF LESSEE ......................................... 18

ARTICLE XVII - RENT ABSOLUTE ................................................. 19

ARTICLE XVIII - ASSIGNMENT AND SUBLETTING ............................ 19

ARTICLE XIX - EVENTS OF DEFAULT ............................................ 20

ARTICLE XX - INTENTIONALLY OMITTED ...................................... 23

ARTICLE XXI - LESSOR'S REMEDIES UPON DEFAULT ........................ 23

ARTICLE XXII - LIABILITY OF LESSOR .......................................... 24

ARTICLE XXIII - CUMULATIVE REMEDIES OF LESSOR ...................... 25

ARTICLE XXIV - SECURITY FOR RENT ........................................... 25

ARTICLE XXV - INDEMNIFICATION ............................................... 26

ARTICLE XXVI - SUBORDINATION PROVISIONS ............................... 27

ARTICLE XXVII - LESSEE'S FAITHFUL COMPLIANCE WITH LOAN DOCUMENTS AND HUD REQUIREMENTS ............................................................. 28

ARTICLE XXVIII - LOAN DOCUMENT RESERVES .............................. 29

ARTICLE XXIX - LESSEE'S ATTORNMENT ....................................... 29

ARTICLE XXX - REPRESENTATIONS .............................................. 30

ARTICLE XXXI - NON-SOLICITATION; MANAGEMENT AND OPERATIONS; ...... 31

ARTICLE XXXII - CAPEX PAYMENTS .............................................. 33

ARTICLE XXXIII - FINANCIAL STATEMENTS AND REPORTING .............. 34

ARTICLE XXXIV - LICENSURE/TERMINATION ................................. 35

ARTICLE XXXV - CONDITIONS PRECEDENT AND CONCURRENT TO CLOSING ....... 36

ARTICLE XXXVI - TRANSFER OF OPERATIONS UPON TERMINATION OF LEASE .... 38

ARTICLE XXXVII - MISCELLANEOUS .............................................. 42

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "**Lease**") is made and entered into as of this 1st day of March, 2021 (the "**Effective Date**") by and between **West County Property Holdings, LLC**, a Missouri limited liability company ("**Lessor**"), and **WCCC OP LLC**, a Delaware limited liability company ("**Lessee**").

RECITALS:

A.     The Lessor owns certain tracts of land which are improved with a skilled care nursing facility, located at 312 Solley Drive, Rear, Ballwin, MO 63021, as well as any other structures located thereon, all as more particularly described in Exhibit A attached hereto and made a part hereof (hereinafter collectively referred to as the "**Demised Premises**"); and the furnishings, furniture, equipment and fixtures used in or about the Demised Premises ("**Personal Property**").

B.     Lessor desires to lease the Demised Premises and Personal Property to Lessee, and Lessee desires to lease the Demised Premises and Personal Property from Lessor, upon the terms and conditions set forth in this Lease.

C.     Lessor and Lessee (or its affiliate) have contemporaneously herewith entered into a certain Agreement for Option to Purchase Real Estate of even date herewith (the "**Purchase Option**") pursuant to which Lessee (or its affiliate) has been granted an option to purchase the Demised Premises and Personal Property upon the terms set forth therein.

D.     As a condition of entering into this Lease with Lessee, Lessor has required and Lessee has agreed that this Lease shall be cross-defaulted with the Purchase Option.

E.     Lessor will obtain financing pursuant to the terms of a loan agreement entered into by Lessor and its lender providing a loan with respect to Lessor's acquisition of the Facility.  The foregoing loan agreement, together with such other documents evidencing or securing a lender's loan to Lessor, as may be amended, restated, modified, or extended from time to time, as well as any documents with respect to a loan obtained to refinance any such loan shall be referred to herein as the "**Loan Documents**", any loan with respect to the foregoing shall be referred to herein as a "**Loan**" and any lender with respect to the foregoing shall be referred to herein as a "**Lender**".

F.     The parties hereto have agreed to the terms and conditions of this Lease.

NOW THEREFORE, in consideration of the above Recitals which are incorporated herein by this reference and of the mutual covenants, agreements and undertakings hereinafter set forth, it is agreed that the use and occupancy of the Demised Premises, and the use of the Personal Property shall be subject to and in accordance with the terms, conditions and provisions of this Lease.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

ARTICLE I - DEFINITIONS

1.1    The terms defined in this Article shall, for all purposes of this Lease and all agreements supplemental hereto, have the meaning herein specified.

(a)    "**Facility**" shall mean any skilled nursing facility as more particularly described on **Exhibit A**.

(b)    All other terms shall be as defined in other sections of this Lease.

ARTICLE II - DEMISED PREMISES AND PERSONAL PROPERTY

2.1    Lessor, for and in consideration of the rents, covenants and agreements hereinafter reserved, mentioned and contained on the part of the Lessee, its successors and assigns, to be paid, kept and performed, does hereby lease unto Lessee the Demised Premises together with the Personal Property to be used in and upon the Demised Premises for the term hereinafter specified, for use and operation therein and thereon of a skilled nursing facility, in substantial compliance with all the rules and regulations and minimum standards applicable thereto, as prescribed by the State of Missouri and such other governmental authorities having jurisdiction thereof.

ARTICLE III - TERM OF LEASE

3.1    The term of this Lease (the "**Term**", which includes the Initial Term and any Extensions, as defined below) shall begin and be effective as of the Effective Date ("**Commencement Date**"), and shall expire on the day prior to the ten (10) year anniversary of the Commencement Date (the "**Initial Term**"), unless sooner terminated or extended as hereinafter provided.

3.2    Following the Initial Term, and any subsequent extension thereto as applicable, the term of this Lease may be extended by Lessee for up to two (2) consecutive additional terms of five (5) years each (each an "**Extension**"), up to a total term of twenty (20) years from the Commencement Date, at Lessee's sole right and option.  In order to exercise each Extension, Lessee must provide written notice (an "**Extension Notice**") to Lessor at least one hundred eighty (180) days prior to the expiration of the then current Term, indicating an Extension shall occur, and there must be no uncured existing Event of Default hereunder from the time the Extension Notice is given until the time that the Extension becomes effective.  In the event an Extension Notice is not properly provided in accordance with the foregoing, or in any event at the conclusion of the maximum Term of twenty (20) years, this Lease shall terminate upon expiration of the term then in effect and shall not be further extended.

ARTICLE IV - RENT

4.1    Throughout the Term of this Lease, Lessee shall pay to Lessor, or as Lessor shall direct, without demand, deduction or offset for any reason whatsoever except as herein specifically provided, as fixed annual base rent ("**Base Rent**") for the Demised Premises and the Personal Property over and above all other and additional payments to be made by Lessee as

{1066/149/00426111.8}
4817-3081-0582, v. 10                                    2

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

provided in this Lease, the amounts set forth on Schedule 4.1 hereto, which shall be paid in twelve (12) equal monthly installments. Beginning on the first (1st) anniversary of the Commencement Date and on each anniversary thereafter, the Base Rent shall be increased by two and a half percent (2.5%) of the total annual Base Rent with respect to the prior lease year. All payments of Rent (as hereinafter defined), together with any and all tax and insurance deposits provided for in this Lease, shall be paid in advance on the first day of each month. Unless otherwise notified in writing Lessor directs Lessee to deliver all rental payments payable to Lessor, as directed by Lessor in writing. In the event the Commencement Date shall be other than the first day of the month, Lessee shall pay to Lessor a pro rata portion of the Rent for the month and a *pro rata* portion of all tax, insurance and other deposits provided for in this Lease.

4.2     This Lease is and shall be deemed and construed to be a triple net lease and the Base Rent specified herein shall be net to Lessor in each lease year during the Term of this Lease. The Lessee shall pay all costs, expenses and obligations (ordinary and extraordinary) of every kind whatsoever relating to the Demised Premises and the Personal Property which may arise or become due during the Term of this Lease (the "**Additional Rent**"), including, but not limited to, the payment of property taxes as provided in Articles VI and VII of this Lease, the maintenance of insurance policies as provided in Article IX of this Lease, maintenance and repairs to the Demised Premises and the Facility as required by Lender or to maintain the same in the same condition as of the commencement of the Lease excepting reasonable wear and tear as provided in Article XI of this Lease, funding any monthly repair reserves required by Lender, and payment duly owed to any parties providing goods and/or services with respect to operation of the Facility, except for any principal and interest payments due with respect to any Loan Document as well as Lessor's general overhead and administrative expenses, its United States and state income taxes of the Lessor. Lessee does hereby agree to indemnify, defend and hold harmless Lessor against any such costs, expenses and obligations. Notwithstanding the foregoing, Lessor and Lessee acknowledge and agree that Lessee shall also not be responsible for payment of principal and interest, any prepayment fee, or exit fee payable to Lender under the terms of the Loan Documents.

4.3     The aggregate unpaid principal amounts of all CapEx Payment(s) made by Lessor to Lessee pursuant to Article XXXII shall from the date each CapEx Payment is made until repaid in full, shall accrue interest at an interest rate of ten percent (10%) simple interest per annum. Interest will be calculated on a basis of a 360-day year and charged for the actual number of days elapsed and be payable in arrears on a monthly basis concurrently with the payment of the Base Rent.

4.4     All rental payments, together with all tax and insurance deposits provided for in this Lease shall be paid on or prior to the first (1st) day of each month. Unless otherwise notified in writing all checks shall be made payable as directed by Lessor and shall be sent to Lessor at 3450 Oakton Street, Skokie, IL 60076.

4.5     Except as otherwise specifically provided herein, no reduction in the number of licensed beds shall entitle Lessee to any reduction or adjustment of the Base Rent or Additional Rent (collectively, the "**Rent**") payable hereunder, which shall be and continue to be payable by Lessee in the full amount set forth herein notwithstanding any such reduction in the number of licensed beds.

{1066/149/00426111.8}
4817-3081-0582, v. 10                                                 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

### ARTICLE V - LATE CHARGES

5.1     If: (a) payment of any sums required to be paid or deposited by Lessee to Lessor under this Lease, or (b) payments made by Lessor under any provision hereof for which Lessor is entitled to reimbursement by Lessee, shall become overdue beyond five (5) calendar days after the date on which they are due and payable as set forth in this Lease, a late charge equal to the greater of two percent (2%) per month or the default rate charged by Lender on the sums so overdue shall be immediately due and payable to Lessor and said late charges shall be payable on the first (1st) day of the month next succeeding the month during which Lessor gives notice of the incurrence of a late charge to Lessee.  In addition, Lessee shall be liable to Lessor for any late charges due under the Loan Documents, which accrue as a result of (a) non-payment of any sums required to be paid or deposited by Lessee to Lessor under this Lease beyond any applicable notice and/or grace periods; or (b) any payments made by Lessor under any provision hereof for which Lessor is entitled to reimbursement by Lessee beyond any applicable notice and/or grace periods.  Lessee agrees that any such late charges shall not be deemed to be a penalty, but shall be deemed to be liquidated damages because of the impossibility of computing the actual amount of damages in advance.  If nonpayment of any late charges shall occur, Lessor shall have, in addition to all other rights and remedies, all the rights and remedies provided for herein and by law in the case of nonpayment of Rent.  Except as otherwise provided in this Article V, no failure by Lessor to insist upon the strict performance by Lessee of Lessee's obligations to pay late charges shall constitute a waiver by Lessor of its rights to enforce the provisions of this Article in any instance thereafter occurring, and nothing contained herein shall be deemed to be a waiver of or limitation on the right of Lessor from declaring an Event of Default, as defined herein because of Lessee's failure to make any payment due hereunder when such payment was due.

### ARTICLE VI - PAYMENT OF TAXES AND ASSESSMENTS

6.1     Lessee will pay or cause to be paid, as provided herein, as Additional Rent, before any fine, penalty, interest or cost may be added thereto for the nonpayment thereof, all taxes (except taxes for which Lessee shall make deposits with Lessor in accordance with the provisions of Article VII of this Lease), assessments, license and permit fees and other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which during the Term of this Lease may have been, or may be assessed, levied, confirmed, imposed upon or become due and payable out of or in respect of, or become a lien on the Demised Premises and/or Personal Property or any part thereof (collectively, "**Taxes and Assessments**").  Lessor shall provide to Lessee copies of any bills received by it for Taxes and Assessments.  Except for taxes for which Lessee shall make deposits with Lessor or Lender in accordance with the provisions of Article VII, not later than ten (10) days prior to the due date for such Taxes and Assessments or ten (10) days following its receipt of the bill therefore (whichever is later), Lessee shall pay to Lessor the amount of Taxes and Assessments due. At the request of Lessee, within five (5) days of any payment by Lessor of the Taxes and Assessments, a copy of the paid stamped bill or other evidence of payment shall be delivered to Lessee.

6.2     Any Taxes and Assessments relating to a fiscal period of any authority, a part of which is included within the Term of this Lease and a part of which is included in a period of time before or after the Term of this Lease, shall be adjusted pro rata between Lessor and Lessee as of

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

the commencement and termination of the Term and each party shall be responsible for its pro rata share of any such Taxes and Assessments.

6.3     Nothing herein contained shall require Lessee to pay income taxes assessed against Lessor or its beneficiary, and/or capital levy, franchise, estate, succession or inheritance taxes of Lessor or its beneficiary.

6.4     Lessor shall have the first option to contest the amount or validity of any Taxes and Assessments.  If permitted by the terms of the Loan Documents, and if Lessor has declined to contest, Lessee shall have the right to contest the amount or validity, in whole or in part, of any Taxes and Assessments by appropriate proceedings diligently conducted in good faith, but only after payment of such Taxes and Assessments, unless such payment would operate as a bar to such contest or interfere materially with the prosecution thereof, in which event, Lessee may postpone or defer such payment only if all of the following conditions are met:

(a)     Neither the Demised Premises, the Personal Property any material license or certification nor any part thereof would by reason of such postponement or deferment be in danger of being forfeited or lost, and

(b)     Lessee shall have deposited with Lessor, to be held in trust, cash or securities in an amount (against which Lessee shall receive a credit equal to the amount pertaining to the period such Taxes and Assessments are being contested held by Lessor pursuant to the terms of Section 7.1 hereof) reasonably satisfactory to Lessor but in no event less than the amount required by Lender, or if there is then no Lender encumbering the Demised Premises, then one hundred twenty-five percent (125%) of the amount of such Taxes and Assessments, together with any interest thereon and penalties in connection with the nonpayment thereof, which at such time shall be actually due and payable, and such additional amounts from time to time as may be necessary to keep on deposit at all times an amount equal to the amount required by Lender, or if there are no Loan Documents, then an amount equal to one hundred twenty-five percent (125%) of such Taxes and Assessments at any time actually due and payable, together with all interest, costs and penalties in connection therewith and all charges that may or might be assessed against or become a charge on the Demised Premises or any part thereof in such proceedings.

(c)     Lessee shall comply with Lender's requirements for a tax contest as if Lessee were the mortgagee or borrower under the Loan Documents.

If held by Lessor, the cash so deposited shall be deposited by Lessor in an interest bearing account and the cash or securities so deposited shall be held by Lessor until the final resolution of such contest and any lien filed against the Demised Premises shall have been released and discharged, and shall thereupon be returned to the Lessee, plus any accrued interest, less the amount of any loss, cost, damage and reasonable expense (including, without limitation, attorneys' fees and investment expenses) that Lender or Lessor may sustain in connection with the Taxes and Assessments so contested.  In the event Lender holds the sum required to be deposited by this Section 6.4, Lessor shall only pay Lessee interest if Lender pays Lessor interest

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

and such interest shall be paid to Lessee at the same interest rate and with the same deductions as paid to Lessor by Lender.

6.5     Upon the termination of any such proceedings, Lessee shall pay the amount of such Taxes and Assessments or part thereof as finally determined in such proceedings, the payment of which may have been deferred during the prosecution of such proceedings, together with any costs, fees, interest, penalties, or other liabilities in connection therewith, and such payment, at Lessee's request, shall be made by Lessor out of the amount deposited with respect to such Taxes and Assessments and accrued interest as aforesaid.  In the event such amount is insufficient, then the balance due shall be promptly paid by Lessee.  In the event the amount of funds deposited by Lessee with respect to any such contested Taxes and Assessments plus any accrued interest thereon is in excess of such Taxes and Assessments due as finally determined in such proceeding (including any costs, fees, interest, penalties or other liabilities in connection therewith), then such excess funds shall be promptly returned to Lessee by Lessor.

6.6     Lessor shall not be required to join in any proceedings referred to in this Article, unless the provisions of any law, rule or regulation at the time in effect shall require that such proceedings be brought by or in the name of Lessor in which event Lessor shall join in such proceedings or permit the same to be brought in its name and Lessee shall pay for all costs in connection therewith.  Lessor shall not ultimately be subjected to any liability for the payment of any costs or expenses in connection with any such proceedings, and Lessee will indemnify, defend and save harmless Lessor from any such costs and expenses, including, without limitation, reasonable attorneys' fees, as a result of such proceedings.  Lessee shall be entitled to any refund of any real estate taxes and penalties or interest thereon received by Lessor but previously reimbursed in full by Lessee.  Lessor agrees that it will reasonably assist Lessee to provide any necessary information and execute any necessary documents in connection with proceedings referred to in this Article.

6.7     In the event that Lessor determines in its reasonable judgment, that it is not being adequately represented by Lessee's counsel in any proceedings referred to in this Article, Lessor may upon ten (10) days prior written notice to Lessee, obtain separate counsel to represent it in such action.  In such event, the cost of such counsel shall be paid by Lessor.  In the event that Lessor determines, in its reasonable judgment, that Lessee has abandoned any contest referred to in this Article or that Lessee is not pursuing any such contest with due diligence, Lessor may, upon ten (10) days' prior written notice to Lessee, if the Taxes and Assessments so contested by Lessee have not theretofore been paid, pay such Taxes and Assessments from the amounts deposited by Lessee pursuant to the terms of Section 6.4 above.

6.8     If any income profits or revenue tax shall be levied, assessed or imposed upon the income, profits or revenue arising from the Rent payable hereunder, partially or totally in lieu of or as a substitute for real estate taxes imposed upon the Demised Premises or Personal Property, then Lessee shall be responsible for the payment of such tax.

ARTICLE VII - TAX, INSURANCE AND REPLACEMENT RESERVE DEPOSITS

7.1     Lessee will make an initial (on the Commencement Date) and monthly real estate tax deposits with Lessor, in an amount equal to one-twelfth $(1/12^{th})$ of the annual Taxes and

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Assessments, or such greater amount as required by the Lender.  Said deposits shall be due and payable on the first (1st) day of each month as Additional Rent.  The deposits shall be held by Lessor or Lender, and used to pay the real estate taxes as they become due and payable.  Said deposits are not required to be kept separate and apart from any other funds of Lessor or Lender.  If the amount of Lessee's payments as made under this Article shall be less than the total amount due of the Taxes and Assessments, then Lessee shall pay to Lessor the amount necessary to make up the deficiency in its pro rata share in the initial year of the Term of this Lease and thereafter shall pay the full deficiency no later than ten (10) days prior to the due date of such tax bill, and if appropriate, Lessee shall receive a credit against the next monthly tax escrow payment coming due in an amount equal to said deficiency payment.  In the event that Lessee has paid all sums due under this Section 7.1 and Lessor or Lender fail to pay the real estate taxes when due, Lessor or Lender shall be solely responsible for any late charges or loss which is a result of their failure to make timely payment hereunder.  Not later than five (5) days following its receipt thereof, Lessee shall provide to Lessor copies of any bills received by it for Taxes and Assessments.  Within five (5) days of any direct payment by Lessee of the Taxes and Assessments, a copy of the paid tax bill shall be delivered to Lessor.

7.2     If required by a Lender, Lessee shall make monthly deposits for insurance premiums with Lessor, in an amount equal one-twelfth ($1/12^{th}$) of the insurance premiums, or such applicable amount required by a Lender.  Provided that Lessee at all times complies with the immediately preceding sentence, Lessee shall suffer no liability hereunder in the event that the insurance premiums are not timely paid to the insurance company.  The deposits shall be held by Lessor or Lender, and used to pay the insurance invoices as they become due and payable.  Said deposits are not required to be kept separate and apart from any other funds of Lessor or Lender.  The deposits, if applicable, for insurance deposits, shall be due and payable on the first (1st) day of each month as Additional Rent.  Not later than five (5) days following its receipt thereof, Lessor shall provide to Lessee copies of any insurance bills received by it, if not paid by directly by Lessee.  At the request of Lessee, within five (5) days of any payment by Lessor of insurance premiums, a copy of the paid insurance bill or evidence of payment of the insurance premiums shall be delivered to Lessee.

7.3     If Lessor is required under the Loan Documents to make, with the Lender thereunder, monthly deposits for replacement reserves, then Lessee will make such monthly deposits for replacement reserves with Lessor, in an amount equal to the amount Lessor is required to make under the Loan Documents (and which amounts may be held by Lender, as applicable); provided that notwithstanding the terms of the Loan Documents, Lessee will in any event deposit monthly replacement reserves in at least the amount of Three Hundred Fifty and No/100 Dollars ($350.00) per bed, for each year hereunder, provided, however, that Lessee shall have, to the extent permitted by Lender, full right and interest in and to such replacement reserves and shall be permitted to draw against such reserves in accordance with the Loan Documents and Lessor shall reasonably cooperate with Lessee to facilitate same.  The deposits for replacement reserves, shall be due and payable on the first (1st) day of each month as Additional Rent.  Lessee shall also make any replacement reserve deposits required to be made by a Lender at the closing of its loan to Lessor.

7.4     All amounts required to be deposited pursuant to this Article 7 shall be held for the benefit of Lessee for the purposes set forth herein; provided that upon the occurrence and

{1066/149/00426111.8}

4817-3081-0582, v. 10

7

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

continuation of an Event of Default, after the applicable notice and cure period, hereunder Lessor may elect in their discretion to apply such amounts to obligations of Lessee under this Lease, in Lessor's discretion.

## ARTICLE VIII - OCCUPANCY

8.1     During the Term of this Lease, the Demised Premises shall be used and occupied by Lessee for and as a skilled nursing facility, and for no other purpose.  Subject to the terms of Article XX hereof, Lessee shall at all times during the Term maintain in good standing and full force a certificate of need and license (the "**License**") issued by the Missouri Department of Health and Senior Services ("**DHSS**") and any other governmental agencies permitting the operation on the Demised Premises as a skilled nursing facility.

8.2     Lessee will not suffer any act to be done or any condition to exist on the Demised Premises which may be in violation of any law and/or constitute a public or private nuisance or which may void or make voidable any insurance then in force on the Demised Premises.

8.3     Except as otherwise specifically provided in this Lease, upon termination of this Lease for any reason except due to an exercise of the Purchase Option, Lessee will return to Lessor the Demised Premises in substantially the same condition as existed on the Commencement Date, reasonable wear and tear excepted, and, except as provided for herein, licensed by the State of Missouri and by any governmental agencies having jurisdiction over the Demised Premises as a skilled nursing facility with unrestricted licenses in full force and good standing for no less than the number of skilled and/or intermediate beds as identified on Schedule 8.3.  Except as otherwise specifically provided herein, no reduction in the number of licensed beds shall entitle Lessee to any reduction or adjustment of the Rent payable hereunder, which shall be and continue to be payable by Lessee in the full amount set forth herein notwithstanding any such reduction in the number of licensed beds.  Lessee shall, within five (5) days following its receipt thereof, provide Lessor with a copy of any notice from the DHSS or any federal, state or municipal governmental agency or authority regarding any reduction in the number of licensed beds and Lessor shall have the right to contest, by appropriate legal or administrative proceedings, any such reduction.

8.4     During the Term of this Lease, Lessee shall only use the Demised Premises in accordance with Environmental Laws (as hereinafter defined) and shall not use nor permit the Demised Premises to be used for the treatment, storage or disposal of any Hazardous Substances (as hereinafter defined) nor for any purpose involving the use of the Hazardous Substances in violation of any applicable Environmental Laws; provided, however, that Lessee may use in and store at the Facility such materials and substances as are customarily used in nursing homes but only in such quantities as are reasonably necessary for the routine business operation of the Facility.  For purposes hereof "**Hazardous Substances**" shall mean any toxic or hazardous waste or pollutants, or substances, including, without limitation, asbestos, PCB's, petroleum products and by products, substances defined or listed as: "Hazardous Substances" or "Toxic Substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.,* "Hazardous Materials" in the Hazardous Materials Transportation Act, 49 U.S.C. § 1802, *et seq.*, "Hazardous Waste" in The Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.*, any chemical substance or mixture regulated under

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. § 2061, *et. seq.*, any "Toxic Pollutant" under the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, as amended, any "Hazardous Air Pollutant" under the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, and any hazardous or toxic substance or pollutant regulated under any other applicable federal, state or local Environmental Laws. Notwithstanding anything contained in this Section 8.4 to the contrary, Lessee shall not have any liability to Lessor under this Section 8.4 resulting from any conditions existing, or events occurring, or any Hazardous Substances existing or generated, at, in, on, under or in connection with the Demised Premises prior to the Commencement Date of this Lease except to the extent Lessee exacerbates the same. "**Environmental Laws**" as used in this Lease means all federal, state and local environmental, health, or safety laws or regulations applicable to the Demised Premises or the Facility, now or hereafter enacted. Lessee hereby agrees to indemnify, defend and hold Lessor harmless from and against, and shall reimburse Lessor for, any loss, claim, liability, damages, injunctive relief, injuries to persons, property or natural resources, costs, expense, action and causes of action in connection with the use, generation, treatment, storage, release or disposal of Hazardous Substances at or from the Demised Premises during the Term hereof, including, without limitation, the cost of any required or necessary repair, cleanup or detoxification and the preparation of any closure or other required work to be performed, to the full extent that such action is attributable, directly or indirectly, to the use, generation, treatment, storage, release or disposal of Hazardous Substances on the Demised Premises during the Term hereof.

8.5      Subject to the provisions of this Article VIII, in no event shall any of Lessee relocate any of the licensed bed, or certificate of need, rights at the Facility to another location, or otherwise reduce the number of licensed beds, without Lessor's express written consent which may be withheld in Lessor's sole discretion. Any action taken by Lessee in connection with any of the foregoing matters without Lessor's express written consent shall be void and of no force and effect. Any and all license and beds rights with respect to any of the Facility, to the extent permitted under applicable law, shall be the property of Lessor and included in the Demised Premises hereunder. In the event the Facility adds any licensed beds during the Term, such additional beds shall become part of the Demised Premises and all rights with respect thereto shall be the property of Lessor and may not be subsequently removed or transferred by Lessee. In such event, Lessor shall proportionately increase the Base Rent as a result of such additional licensed beds thirty (30) days after the licensing thereof; provided however that Lessee shall receive a credit against any such increase in the amount of the actual costs incurred by Lessee in connection with the addition of any licensed beds, if any.

ARTICLE IX - INSURANCE

9.1      Subject to any additional requirements of any Loan Documents, Lessee shall, at its sole cost and expense, as of the Commencement Date and during the Term, maintain fire, and casualty insurance with extended coverage endorsement, which includes coverage for malicious mischief and vandalism both on the Demised Premises and the Personal Property on the Missouri standard form with a responsible company or companies approved by Lessor, which approval will not be unreasonably withheld, conditioned or delayed, and Lender. Such insurance shall, at all times, be maintained (without any co-insurance clause, if possible) in an amount equal to the full replacement value of the Demised Premises and Personal Property, but not less than that required by Lender, but in any event in an amount sufficient to prevent Lessor and Lessee from becoming

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

co-insurers under applicable provisions of the insurance policies.  Such insurance shall at all times be payable to Lender, Lessor and Lessee, as their interests may appear and shall contain a loss-payable clause to the Lender, as its interest may appear.  Upon the reasonable request of Lessor, provided however no less frequently than such time as required by Lessee's insurance carrier, Lessee shall furnish at its sole cost and expense, to Lessor and such insurance carrier, insurance appraisals in form and substance as are regularly and ordinarily made by insurance companies, in order to determine the then replacement value of the Demised Premises and Personal Property, and if such appraisal shows that the amount of casualty insurance maintained by Lessee hereunder is insufficient, the amount of insurance required by this Section 9.1 shall be adjusted accordingly.

9.2     Lessee shall also, at Lessee's sole cost and expense, cause to be issued and shall maintain during the Term of this Lease, insurance from an insurance company with a "B++" rating or higher from A.M. Best Company in accordance with the requirements set forth in the Loan Documents, but in no event with coverage less than:

(a)     A public liability policy naming Lessor, Lender, Lessee, as insured, and insuring them against claims for bodily injury, or property damage occurring upon, in or about the Demised Premises, or in or upon the adjoining streets, sidewalks, passageways and areas, and including professional malpractice insurance covering employees of the Facility, such insurance to afford protection to the limits reasonably established by Lessee in the operation of its business, but not less than $1,000,000 per each occurrence and $3,000,000 in the aggregate or any greater amount required by the Loan Documents.

(b)     If there is a boiler, air conditioner or water heater located on the Demised Premises, boiler explosion insurance, in the amount of not less than $500,000, under the terms of which Lessor and Lessee will be indemnified, as their interests may appear, against any loss or damage which may result from any accident or casualty in connection with any boiler used in the Demised Premises, whereby any person or persons may be injured or killed or property damaged in or about the Demised Premises.

9.3     All policies of insurance shall provide, to the extent available at a commercially reasonable price so long as not otherwise required by the Lender:

(a)     They are carried in favor of Lessor, Lessee, and Lender, as their respective interests may appear, and any loss shall be payable as therein provided, notwithstanding any act or negligence of Lessor or Lessee, which might otherwise result in forfeiture of insurance; and

(b)     They shall not be canceled, terminated, reduced or materially modified without at least thirty (30) days' prior written notice to Lessor; and

(c)     A standard mortgagee clause in favor of Lender, and shall contain, if obtainable, a waiver of the insurer's right of subrogation against funds paid under the standard mortgagee endorsement which are to be used to pay the cost of any repairing, rebuilding, restoring or replacing.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

9.4     Certificates of insurance policies required by this Article shall be delivered to Lessor and Lender prior to or on the Commencement Date.  Upon receipt thereof, Lessee shall deliver copies of the actual policies to Lessor, which certificates and policies shall be updated annually not less than twenty (20) days prior to the expiration date thereof.

9.5     Lessee shall at all times keep in effect business interruption insurance with loss of rents endorsement naming Lessor as an insured in an amount at least sufficient to cover:

(a)     The aggregate of the cost of all Taxes and Assessments due during the period of the next succeeding twelve (12) months following the occurrence of the business interruption;

(b)     The cost of all insurance premiums for insurance required to be carried by Lessee for such twelve (12) month period; and

(c)     The aggregate of the amount of the monthly Base Rent for the next succeeding twelve (12) month period.

All proceeds of any business interruption insurance or loss of rents coverage shall be applied, first, to the payment of any Base Rent payments for the next succeeding twelve (12) months to the extent that such payments are due and payable; second, to the payment of any Taxes and Assessments and insurance deposits required for the next succeeding twelve (12) months to the extent that such payments are due and payable; and, thereafter, after all necessary repairing, rebuilding, restoring or replacing has been completed as required by the pertinent Articles of this Lease and the pertinent sections of the Loan Documents, any remaining balance of such proceeds shall be paid over to the Lessee.

9.6     In the event the amount of insurance proceeds under Section 9.1 exceeds Fifty Thousand Dollars ($50,000), such insurance proceeds as may be paid to Lessee and Lessor, shall be governed by the Loan Documents or if no Loan Documents, then deposited with Lessor to be held and disbursed for the repairing, rebuilding, restoring or replacing of the Demised Premises or any portion thereof, or any improvements from time to time situated thereon or therein in accordance with Sections 9.7 and 9.8 hereof, or with the pertinent provisions of the Loan Documents.

9.7     Except as provided below, no sums shall be paid from such proceeds toward such repairing, rebuilding, restoring or replacing unless there shall not be in existence any uncured Event of Default and it shall be first demonstrated to the reasonable satisfaction of Lessor that the amount of money necessary to provide for any such repairing, rebuilding, restoring or replacing (according to any plans or specifications which may be adopted therefor) in excess of the amount received from any such insurance policies, has been expended or provided by Lessee for such repairing, rebuilding, restoring or replacing, or that Lessee has provided cash for such amount and that the amount received from such insurance policies is sufficient to complete such work.  In the event there is any amount required from Lessee in excess of the amount received from such insurance policies, Lessee shall furnish such excess funds so that the funds will be sufficient to complete such repairing, rebuilding, restoring or replacing in accordance with the provisions of this Lease, the Loan Documents and any plans and specifications submitted in connection

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

therewith, free from any liens or encumbrances of any kind whatsoever.  Funds held by Lessor shall be disbursed only upon the presentment of architect's or general contractor's certificates, waivers of lien, contractor's sworn statements, owner's sworn statements and other evidence of cost and payments as may be reasonably required.

9.8    Prior to making any such repairs costing in excess of Fifty Thousand Dollars ($50,000), if so requested by Lessor, Lessee shall do the following or provide to Lessor the following documentation, as Lessor may reasonably require to protect its interest in the Demised Premises and Personal Property: (a) submit complete plans and specifications for such repairs prepared by an architect or general contractor whose qualifications shall be reasonably satisfactory to Lessor; (b) submit a stipulated sum construction contract made with a reputable and responsible builder or contractor, providing for the completion and payment for all work, labor and materials necessary to complete such repairs; and (c) disburse such funds as may be required to complete said repairs by a national title insurance company or other responsible escrowee at Lessee's sole cost and expense to the contractor or contractors making such repairs in installments as such work progresses and upon presentment of such certificates, waivers of lien, sworn statements and other documents as may be required by such escrowee; and (d) take such other actions or provide such other documentation to Lessor as Lessor may reasonably require to protect its interest in the Demised Premises and Personal Property.

9.9    In lieu of the foregoing but subject to the terms and conditions of this Article 9, Lessee may, at its option but subject to the prior written consent from the Lender, obtain and maintain a blanket insurance policy in an amount sufficient to provide all or part of the coverage described in this Article 9.

ARTICLE X - LESSOR'S RIGHT TO PERFORM

10.1    Should Lessee fail to perform any of its covenants herein agreed to be performed, subject to the applicable cure periods, Lessor may, upon providing ten (10) business days' prior notice specifying the work to be done or covenants to be performed and the approximate amount be expended, but shall not be required to, make such payment or perform such covenants (any of the foregoing, "Protective Advances"), and all sums so expended by Lessor, including Lessor's reasonable expenses in enforcing or performing such covenants, including reasonable attorneys' fees shall by payable by Lessee to Lessor upon demand plus interest thereon from the date incurred until paid in full at a rate equal to the prime rate of interest as most recently published by the Wall Street Journal plus two percent (2%) (the "**Default Rate**"). In particular and without limiting the generality of the foregoing, following the occurrence of an uncured Event of Default hereunder, Lessor shall be entitled to make Protective Advances pursuant to the terms hereof with respect to payments due to any parties providing goods and/or services for any of the Facility. Any of the foregoing costs or expenses incurred or payments made by Lessor shall be deemed to be Additional Rent payable by Lessee and collectible as such by Lessor.

10.2    Performance of or payment to discharge said Lessee's obligations shall be optional by Lessor and such performance and payment shall in no way constitute a waiver of, or a limitation upon, Lessor's other rights and remedies hereunder, including, without limitation, Lessor's right to declare an Event of Default for such failure.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

ARTICLE XI - REPAIRS AND MAINTENANCE; CONDEMNATION

11.1    Throughout the Term of this Lease, Lessee, at its sole cost and expense, will keep and maintain, or cause to be kept and maintained, the Demised Premises (including the grounds, sidewalks, roof, parking lots and curbs abutting the same) and the Personal Property in good order and condition without waste and in a suitable state of repair at least comparable to that which existed immediately prior to the Commencement Date (ordinary wear and tear excepted), and will make or cause to be made, as and when the same shall become necessary, all structural and nonstructural, ordinary and extraordinary, exterior and interior, replacing, repairing and restoring necessary to that end.  Without limiting the generality of the foregoing, Lessee shall perform all repairs required by the Lender.  All replacing, repairing and restoring required of Lessee shall be (in the reasonable opinion of Lessor) of comparable quality equal to the original work and shall be in compliance with all standards and requirements of law, licenses and municipal ordinances necessary to operate the Demised Premises as a skilled nursing facility.

11.2    In addition to the foregoing, Lessee shall cause the work described on Schedule 11.2 attached hereto to be completed in a good, safe and workmanlike manner and in accordance with all applicable laws, ordinances, rules and regulations at its expense and within the time frame set forth on said Schedule, with Lessee to provide pictures of each completed repair and a copy of paid invoices for the repair.  Promptly following completion thereof, Lessee shall provide Lessor with evidence thereof reasonably acceptable to Lessor and its Lender.  Except for Lessee's obligations to make payments, maintain insurance, give notices or maintain harmonious labor relations as set forth in this Lease, if Lessee is delayed in performing its obligations hereunder, by reason of delay or stoppage due to governmental regulation, strikes, lockouts, acts of God, acts of war, terrorist acts, civil commotions, unusual scarcity of or inability to obtain labor or materials, labor difficulties, casualty or other causes beyond the reasonable control of Lessee ("Force Majeure Events"), the time for Lessee's performance shall be extended for the period of any such delay as determined by Lessor in its reasonable discretion.

11.3    In the event that any part of the improvements located on the Demised Premises or the Personal Property shall be damaged or destroyed by fire or other casualty (any such event, being called a "**Casualty**"), Lessee, within thirty (30) days after a casualty or within thirty (30) days after approval of the final plans and specifications (including by Lender and any governmental or quasi-governmental agency or entity exercising jurisdiction), issuance of a building permit and any other necessary permits and licenses for commencement of construction, whichever is later, Lessee shall commence to restore the Demised Premises and Lessee shall complete the same within one hundred eighty (180) days thereafter, provided, however, that in the case of damage or destruction which cannot with due diligence be repaired within said one hundred eighty (180) day period, Lessee shall have an additional period of time to complete the reconstruction, provided Lessee is proceeding promptly and with due diligence to complete the restoration, in accordance with all the terms, covenants and conditions and other requirements of this Lease and the Loan Documents applicable in the event of such Casualty.  The Demised Premises and the Personal Property shall be so replaced, repaired and restored as to be of at least equal value and substantially the same character as on the Commencement Date.  If the estimated cost of any such restoring, replacing or repairing is One Hundred Fifty Thousand Dollars ($150,000) or more, the plans and specifications for same shall be first submitted to and approved by Lessor in writing, which approval shall not be unreasonably withheld, conditioned or delayed,

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

and Lender, and Lessee shall select an independent architect or engineer approved by Lessor (which approval shall not be unreasonably withheld, conditioned or delayed) and Lender who shall be in charge of such repairing, restoring or replacing.  Upon the demand of Lessor, Lessee shall deposit with a nationally recognized title insurance company, prior to the commencement of any such repairing, restoring or replacing, the total estimated cost thereof less the insurance proceeds and amounts required to be contributed by Lessor, if any, and disbursements shall be made pursuant to the terms of Section 9.8 hereof.  Lessee covenants that it will give to Lessor prompt written notice of any Casualty affecting the Demised Premises in excess of One Hundred Fifty Thousand Dollars ($150,000).  Any insurance proceeds with respect to a Casualty in excess of amounts required to repair the Facility, as well as any award with respect to a condemnation of any of portion of the Demised Premises, shall be the property of Lessor.

11.4    Provided that there is no uncured Event of Default by Lessee under this Lease, Lessee shall have the right, at any time and from time to time, to remove and dispose of any Personal Property which may have become obsolete or unfit for use, or which is no longer useful in the operation of the Demised Premises, provided Lessee promptly replaces any such Personal Property so removed or disposed of with other personal property free of any security interest, liens or encumbrances, and the replacement personal property shall be of substantially the same character, and at least equal usefulness and quality to any such Personal Property so removed or disposed of and such replacement property shall automatically become the property of and shall belong to Lessor and Lessee shall execute and deliver such bills of sale or other documents reasonably requested by Lessor to vest ownership of such replacement personal property in Lessor. Notwithstanding the foregoing, upon written consent of Lessor which consent shall not be unreasonably withheld and to the extent required if such leased Personal Property has a cumulative value in excess of $50,000.00, Lessee shall have the right to place leased Personal Property on the Demised Premises.  In the event Lessee desires to place such leased Personal Property on the Demised Premises, Lessee shall advise Lessor in writing and Lessor shall use its reasonable best efforts to seek the approval of the Mortgagee or an amendment of the Lender with respect thereto in order to facilitate the written consent from Lessor, to the extent required.

11.5    In case all or substantially all of the Demised Premises leased hereunder shall be taken or sold under the threat of such taking for any public use by act of any public authorities, then this Lease shall terminate as of the date possession is taken by the condemnor.  If all or substantially all of the Demised Premises shall be taken, the net proceeds of any condemnation award, settlement or compromise for the Demised Premises taken shall belong to Lessor; provided, however, Lessee shall have the right to pursue a separate award for the value of Lessee's interest in the Demised Premises as long as such separate award does not diminish the award, settlement or compromise paid to Lessor; and provided, further, that Lessee shall be solely entitled to any amount for relocation and loss of business as long as such separate award does not diminish the award.  For the purposes of this paragraph "substantially all of the Demised Premises leased hereunder" shall be deemed to have been taken if upon the taking of less than the whole of the Demised Premises that portion of the Demised Premises not so taken shall not by itself be adequate for the conduct therein of Lessee's business, in the reasonable judgment of Lessor and Lessee, subject further to the rights of Lender. In the event of a partial condemnation the result of which shall be a reduction of thirty percent (30%) of more of the number of licensed beds on the Demised Premises, Lessor shall hold in trust that portion, if any, of such award, settlement or compromise which shall be allocable to consequential damage to buildings and improvements not

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

taken, and Lessor shall pay out such portion to Lessee to reimburse Lessee for the cost of restoring the Demised Premises as a complete structural unit, as such restoration work progresses in accordance with the procedure for making insurance proceeds available for restoration, repair or rebuilding as set forth in Article 11.3 hereof.  In the event of a partial condemnation which does not result in a termination of this Lease, the annual Base Rent rate payable under Schedule 4.1 hereof shall be reduced to such amount as Lessor and Lessee agree is fair and equitable taking into consideration the number of operational beds remaining after such taking as compared to the number of operational beds on the Commencement Date.

## ARTICLE XII - ALTERATIONS AND DEMOLITION

12.1     Lessee will not remove or demolish the Demised Premises or any portion thereof or allow it to be removed or demolished, without the prior written consent of Lessor and Lender, which shall not be unreasonably withheld.  Subject to the Loan Documents and except as required by law, Lessee further agrees that it will not make, authorize or permit to be made any changes or alterations in or to the Demised Premises, the cost of which in any twelve (12) month period exceeds One Hundred Fifty Thousand Dollars ($150,000) collectively, without first obtaining Lessor's written consent thereto, which will not be unreasonably withheld or delayed and, if required by the Loan Documents, without receiving Lender's written consent thereto.   All alterations, improvements and additions to the Demised Premises shall be in quality and class at least equal to the original work and shall become the property of Lessor and shall comply with all building and fire codes, and all other applicable codes, rules, regulations, laws and ordinances. Not less than thirty (30) days prior to the commencement of any such changes or alterations, the cost of which in any twelve (12) month period may exceed One Hundred Fifty Thousand Dollars ($150,000) collectively, Lessee shall furnish to Lessor, at Lessee's sole cost and expense, plans and specifications, prepared by a licensed architect, for such changes or alterations and any additional insurance reasonably required by Lessor or Lender.  Such plans and drawings shall include detailed architectural, mechanical, electrical and plumbing working drawings.  The plans and drawings will be subject to Lessor's approval with respect to design, aesthetics, building code compliance and such other matters as Lessor deems relevant, which approval shall not unreasonably be withheld, conditioned or delayed.  Notwithstanding the provisions of the preceding sentence to the contrary, (i) the review and approval by Lessor shall not be relied upon by Lessee that any such plans or drawings are in compliance with applicable laws or represent a sound design; and (ii) nothing herein shall be deemed or construed to require Lessee to obtain Lessor's consent to non-structural changes or alterations such as painting, the replacement of wall coverings or the replacement of floor coverings.

## ARTICLE XIII - COMPLIANCE WITH LAWS AND ORDINANCES

13.1     Throughout the Term of this Lease, Lessee, at its sole cost and expense, will obey, observe and promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of any federal, state and municipal governmental agency or authority having jurisdiction over the Demised Premises and the operation thereof as a skilled nursing facility, which may be applicable to the Demised Premises, the Personal Property and the

{1066/149/00426111.8}
4817-3081-0582, v. 10                                      15

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

improvements located therein and including, but not limited to, the sidewalks, alleyways, passageways, vacant land, parking spaces, curb cuts, curbs adjoining the Demised Premises, which are under Lessee's control, whether or not such law, ordinance, order, rules, regulation or requirement shall necessitate structural changes or improvements.

13.2     Lessee shall likewise observe and comply with the requirements of all policies of public liability and fire insurance and all other policies of insurance at any time in force with respect to the Demised Premises.

13.3     Prior to the Commencement Date, Lessee shall obtain, at its sole cost and expense, all necessary approvals, certifications and licenses from all appropriate governmental agencies necessary to permit Lessee to operate the Facility as a skilled nursing facility, including, without limitation, the receipt of the License.  Lessee shall, subject to the terms of Article XX hereof and Article VIII hereof, keep in good standing and in full force and effect all necessary licenses, permits and certifications required by any governmental authority for the purpose of maintaining and operating on the Demised Premises a skilled nursing facility of not less than the number of skilled beds as identified on <u>Schedule 8.3</u>, and the Facility shall at all times, subject to the terms of Article XX hereof, continue to be qualified to and shall participate in the Medicare and Medicaid reimbursement programs.

13.4     Lessee will deliver to Lessor within two (2) business days following receipt thereof, any notice of a deficiency of the level of "G" or worse, any Civil Monetary Penalty ("**CMP**"), and/or any failed re-revisit with respect to a survey deficiency, at any of the Facility.  Lessee shall also deliver to Lessor, within two (2) business days after receipt any notice from any governmental agency terminating or suspending, or threatening termination or suspension, of any license or certification relating to any of the Facility.  Lessee will deliver to Lessor within five (5) business days copies of all other adverse notices from any licensing, certifying, regulatory, reimbursing or other agency which has jurisdiction over the Facility or over any license, permit or approval under which the Facility operates, any notice from the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("**CMS**"), LARA, the Missouri Department of Social Services ("**Missouri Medicaid**") or any governmental, quasi-governmental or other agency terminating, disqualifying or suspending, or threatening termination, disqualification or suspension, of the Medicaid or Medicare provider agreements (the "**Provider Agreements**"), the License or any other license or certification relating to the operations of the Facility or participation in any governmental or non-governmental reimbursement or third party payor program, including the Medicare or Medicaid reimbursement programs, and if Lessee becomes aware that any such notice likely to cause a material adverse effect is to be forthcoming before receipt thereof, it shall promptly inform Lessor thereof.  Lessee will deliver to Lessor within two (2) business days after receipt all other notices, exit interviews, inspection reports and surveys (including re-visit) and notices of administrative hearing or court pleadings from all state, federal and local governmental bodies regarding the Demised Premises or the nursing home operated thereon.

ARTICLE XIV - DISCHARGE OF LIENS

14.1     Subject to the right to contest provided in Section 14.2 hereof and the terms of the Loan Documents,  Lessee will not create or permit to be created or to remain, and Lessee will

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

discharge, any lien, encumbrance or charge levied on account of any mechanic's, laborer's or materialman's lien or any conditional sale, security agreement or chattel mortgage, or otherwise, which might be or become a lien, encumbrance or charge upon the Demised Premises or any part thereof or the income therefrom or the Personal Property, for work or materials or personal property furnished or supplied to, or claimed to have been supplied to or at the request of Lessee. Lessee shall have the right to purchase equipment, furniture, or furnishings (other than as a replacement for any personal property owned by Lessor and leased to Lessee hereunder) which may be subject to a security agreement, chattel mortgage, purchase money mortgage or lease financing arrangement provided that all payments for any such equipment, furniture or furnishings shall be paid on or prior to the due dates thereof and Lessee shall indemnify Lessor against all charges, costs and expenses that may be incurred by Lessor with respect to such security agreement or chattel mortgage.

14.2    If any mechanic's, laborer's or materialman's lien caused or charged to Lessee shall at any time be filed against any portion of the Demised Premises or Personal Property, if allowed by the terms of the Loan Documents and the Lender, Lessee shall have the right to contest such lien or charge, provided Lessee, within sixty (60) days after notice of the filing thereof, will cause the same to be discharged of record or in lieu thereof to secure Lessor against said lien (i) by deposit with Lessor or Lender of such security (not to exceed one hundred twenty five percent (125%) of the amount thereof plus any interest, cost and penalty thereon) as may be reasonably demanded by Lessor or Lender to protect against such lien, or (ii) post a release bond in form and amount as required by applicable law and as otherwise satisfactory to Lessor and Lender.  If Lessee shall fail to cause such lien to be discharged within the period aforesaid, or to otherwise secure Lessor as aforesaid, then in addition to any other right or remedy, Lessor may, upon ten (10) days prior notice, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by processing the discharge of such lien by deposit, title endorsement or by bonding proceedings.  Any amount so paid by Lessor and all costs and expenses incurred by Lessor in connection therewith, shall constitute Additional Rent payable by Lessee under this Lease and shall be paid by Lessee to Lessor within five (5) days after written demand from Lessor.  Except as herein provided, nothing contained herein shall in any way empower Lessee to do or suffer any act which can, may or shall cloud or encumber Lessor's or Lender's interest in the Demised Premises.

14.3    In the event that Lessor determines in its reasonable judgment, that it is not being adequately represented by counsel for Lessee in any contest referred to in Section 14.2 hereof, Lessor may, upon ten (10) days prior written notice to Lessee, obtain separate counsel to represent it in such contest.  In such event, the cost of such counsel shall be paid by Lessee.  In the event that Lessor determines, in its reasonable judgment, that Lessee has abandoned any contest referred to in Section 14.2 above, or that Lessee is not pursuing any such contest with due diligence, Lessor may, upon ten (10) days prior written notice to Lessee, discharge such lien by paying the amount claimed to be due from the security deposited by Lessee pursuant to the terms of said Section 14.2.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## ARTICLE XV - INSPECTION OF PREMISES AND RECORDS BY LESSOR

15.1     Throughout the Term of this Lease, at any time, during reasonable business hours and upon reasonable prior notice to Lessee, Lessor or its authorized representatives shall have the right to enter and inspect the Demised Premises and Personal Property.

15.2     Throughout the Term of this Lease, at any time, during reasonable business hours and upon reasonable prior notice to Lessee, Lessor or its authorized representatives shall have the right to inspect and/or audit, and, at Lessor's expense, make copies of, the books and records relating to the Demised Premises, the Facility, Lessee, any managing entity or any consulting entity, including, without limitation, to the extent permitted by applicable law, all patient records, employment records, financial records, surveys and inspections reasonably required by Lessor, subject to applicable law including without limitation the Health Insurance and Portability Act of 1996.

15.3     Lessor agrees that upon entering and inspecting the Demised Premises, Personal Property and books and records, Lessor shall take all reasonable measures to avoid disruption to Lessee's routine business operation during any such entries and the person or persons will cause as little inconvenience to the Lessee, its employees and residents of the Facility as may reasonably be possible under the circumstances.

## ARTICLE XVI - COVENANTS OF LESSEE

16.1     <u>Distributions; Management Fee</u>.  Following the occurrence and continuance of any uncured Event of Default, the Lessee shall not (i) declare, pay or make any Distribution (as such term is defined below) (other than dividends or distributions payable in its stock, or split-ups or reclassifications of its stock), (ii) apply any of its funds, property or assets to the acquisition, redemption or other retirement of any membership or equity interest, (iii) otherwise make any payments or Distributions to any stockholder, member, partner or other equity owner in such person's capacity as such, or (iv) make any payment in excess of three percent (3%) of the gross monthly revenue of the Facility for any management, consulting or service fee to any related or affiliated party; and any obligation of Lessee to make any of the foregoing payments shall be and hereby is made subordinate and junior in right of payment to the payment of all Rent, and other payment obligations of Lessee hereunder. "Distribution" shall mean any direct or indirect dividend, distribution, loan or other payment of any kind or character (whether in cash, securities or other property) in respect of any equity interests, any advance/loan to any third party including any affiliate of Lessee, and/or repayment of indebtedness to any member of Lessee or any affiliate or relative thereof, whether or not the same shall be due and payable, or any other third party unless such indebtedness is then due and payable and such third party lender has a lien in the assets of Lessee that primes Lessor's Lien (as defined herein) to the extent permitted in Section 24.1 below.

16.2     <u>Other Obligations</u>.    Throughout the Term of this Lease, Lessee shall not have any other liabilities, other than those which are necessary and related to its function as the operator of the applicable Facility, including without limitation, Lessee's working capital line of credit, if any, which may not be utilized for any other facility or other unrelated purposes other than for operations of the Facility.  In addition to and without limiting the foregoing, Lessee shall

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

not assume the status of a guarantor, surety or other financial partner of any other business or activity, including without limitation any other business involving any of Lessee's officers, directors, members, managers, owners, representatives, agents, successors and assigns, and their respective successors, assigns, agents and representatives.

## ARTICLE XVII - RENT ABSOLUTE

17.1    Except as otherwise provided in this Lease, damage to or destruction of any portion of the buildings, structures and fixtures upon the Demised Premises, by fire, the elements or any other cause whatsoever, whether with or without fault on the part of Lessee, shall not terminate this Lease or entitle Lessee to surrender the Demised Premises or entitle Lessee to any abatement of or reduction in the Rent payable, or otherwise affect the respective obligations of the parties hereto, any present or future law to the contrary notwithstanding.

## ARTICLE XVIII - ASSIGNMENT AND SUBLETTING

18.1    During the Term of this Lease, Lessee shall not assign this Lease or the Purchase Option or in any manner whatsoever sublet, assign, encumber or transfer all or any part of the Demised Premises or in any manner whatsoever transfer, assign or encumber any interest in the Demised Premises (whether by management agreement, or otherwise) or any interest in this Lease (an "**Assignment**") without the prior written consent of Lessor and Lender, which consent shall be given or denied in Lessor's sole discretion.  As a condition of granting its consent, Lessor may request, and Lessee shall provide to Lessor, resumés and financial statements for any proposed transferee.  Lessee acknowledges and agrees that Lessor has specifically chosen Lessee to operate the Facility based upon the skill and expertise of Lessee and its principals in operating nursing homes and upon the character and reputation of such principals.  Prior to any transfer of possession of the Demised Premises to such transferee, any proposed transferee shall assume all the obligations of Lessee transferred hereunder.  Any violation or breach or attempted violation or breach of the provisions of this Article by Lessee, or any acts inconsistent herewith shall vest no right, title or interest herein or hereunder or in the Demised Premises in any such transferee or assignee; and Lessor may, at its exclusive option, invoke the provisions of this Lease relating to default.  As a condition of granting its consent to any sublease or assignment: (x) Lessee shall pay, and Lessee hereby agrees to pay, any reasonable out of pocket third party costs and expenses of Lessor incurred in connection with such sublease or assignment, including, without limitation, all due diligence costs and reasonable attorneys' fees; and (y) Lessee shall deliver to Lessor a certified listing of the names and addresses of all members, shareholders, partners or co-venturers of the new assignee.

18.2    For purposes of this Article:

(a)    Any transfer or transfers of the membership interests in Lessee (or stock in a corporate lessee, partnership interests in a partnership lessee or stock in a corporate general partner of a partnership lessee, as the case may be) however accomplished, whether in a single transaction or in a series of related or unrelated transactions, which result in the following with respect to the initial ownership in Lessee set forth on Schedule 18.2 hereto: i) any change of control and/or decision-making authority, or ii) change in ownership, directly or indirectly, in more than fifty percent (50%) in the

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

aggregate of such membership interests in Lessee (or stock in a corporate lessee, partnership interests in a partnership lessee or stock in a corporate general partner of a partnership lessee, as the case may be) shall be deemed an assignment of this Lease.

(b)     Any person, corporation, limited liability company or other entity to whom Lessee's interest under this Lease passes by operation of law, or otherwise, shall be bound by the provisions of this entire Lease and this Article, and except for subsequent subleases, assignments or transfers permitted by this Article, shall obtain the consent of Lessor to any subsequent sublease, assignment, encumbrance or transfer or such event shall be deemed an Event of Default hereunder.

(c)     An agreement by any person, corporation or other entity, directly or indirectly, to assume Lessee's obligations under this Lease shall be deemed an assignment.

(d)     If Lessee is a corporation, partnership, limited liability company, or other entity, the term "Assignment" also includes any change in the manager, general partner or director of the entity.

18.3     Notwithstanding anything contained herein, Lessor shall have the unrestricted right to sell or otherwise transfer any of the Facility, and in such a case Lessor may freely assign this Lease (or portion thereof following division pursuant to the terms hereof) to any such transferee, and Lessee shall fully attorn to and recognize any such transferee as the Lessor hereunder; provided that any such successor landlord/lessor shall be bound by all terms and conditions contained herein.

18.4     Notwithstanding anything contained herein, Lessor shall have the unrestricted right to install, or to lease or provide license or right to others to install any and all subgrade installations and utilities therein for itself and for the benefit of third parties to the subsurface of the Real Property.  Lessee may not permit third parties to install billboards, cell towers, electric lines and other above ground utilities on the Real Property, without the consent of Lessor, which consent shall be in Lessor's sole discretion.  In the event either party desires to initiate any of the facilities described in the foregoing paragraph such party shall notify the other before performing any work on the Demised Premises. Prior to any digging or sub-grade work on the Demised Premises, proper notification is required for cable locations and field inspections to protect against damages.

ARTICLE XIX - EVENTS OF DEFAULT

19.1     The occurrence of any of the following acts or events, after the applicable notice and cure period (if any), shall be deemed to be a default ("**Events of Default**") on the part of the Lessee:

(a)     The failure of Lessee to pay when due any Rent payment, or any part thereof, or any other sum or sums of money due or payable to Lessor under the provisions of this Lease, when such failure shall continue for a period of five (5) days;

{1066/149/00426111.8}
4817-3081-0582, v. 10

20

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(b)      The failure of Lessee to perform, or the violation by Lessee of, any of the covenants, terms, conditions or provisions of this Lease (that are not otherwise specifically listed in this Section 19.1), if such failure or violation shall not be cured within thirty (30) days (or such longer period as is reasonably necessary to remedy such default, provided that Lessee shall commence to cure within such thirty (30) days and diligently pursue such remedy until such default is cured);

(c)      The failure of Lessee to timely deliver materials required under Section 13.4 and/or Article 33 hereof, in the timeframes set forth therein as applicable, after five (5) business days from the date when due;

(d)      The failure of Lessee to comply with, or the violation by Lessee of, any of the terms, conditions or provisions of the Loan Documents (excluding those terms, conditions or provisions requiring the making of principal or interest payments which relate specifically to Lessor), if such failure or violation shall not be cured within twenty (20) days (or such lesser period as may be provided in the Loan Documents);

(e)      The removal by any local, state or federal agency having jurisdiction over the operation of the Facility of twenty-five percent (25%) or more of the residents located at the Facility for a period of fifteen (15) days or more;

(f)      In the event Lessee removes any physical beds or a substantial portion of the Personal Property, or Lessee removes Personal Property necessary to the operation of the Facility, the failure of Lessee to replace within thirty (30) days, the Personal Property so removed by Lessee;

(g)      The making by Lessee of an assignment for the benefit of creditors or any other unauthorized assignment;

(h)      The levying of a writ of execution or attachment on or against the property of Lessee which is not discharged or stayed by action of Lessee contesting same, within forty-five (45) days after such levy or attachment (provided if the stay is vacated or ended, this section shall again apply);

(i)      If proceedings are instituted in a court of competent jurisdiction for the reorganization, liquidation or involuntary dissolution of the Lessee for its adjudication as a bankrupt or insolvent, or for the appointment of a receiver of the property of Lessee, and said proceedings are not dismissed and any receiver, trustee or liquidator appointed therein discharged within sixty (60) days after the institution of said proceedings;

(j)      The sale of the interest of Lessee in the Demised Premises under execution or other legal process;

(k)      Any conveyance or transfer in violation of Article XVIII hereof;

(l)      The abandonment of the Demised Premises by Lessee or if Lessee voluntarily ceases operations at the Facility for a period in excess of twenty-four (24) hours, except in the event of casualty damage;

{1066/149/00426111.8}
4817-3081-0582, v. 10                                21

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(m)     The voluntary transfer by Lessee of residents numbering more than ten percent (10%) of the number of licensed beds, whether in a single transfer or a series of transfers, in any calendar year from the Facility to any other nursing home facility owned or leased or under common control with Lessee or its affiliates, where such transfer is not for reasons relating to the health and well-being of the patients transferred or is otherwise required by law or such other reasons as may be permitted by state or federal law, such as nonpayment of stay or the welfare of other residents of the Facility;

(n)     The designation of any Facility as a "Special Focus Facility" by CMS;

(o)     Any suspension, termination or restriction placed upon Lessee or the Facility, or the ability to admit residents or patients (e.g., an admissions ban or non-payment for new admissions by Medicare or Medicaid), and such suspension, termination or restriction continues for more than thirty (30) calendar days after imposition thereof;

(p)     Receipt of a CMP or other fine or penalty at any Facility, in the amount of Fifty Thousand Dollars ($50,000) or more, unless Lessee pays and/or escrows such CMP prior to or at the time of becoming then due and payable (after any applicable appeal periods);

(q)     A survey deficiency that is an "Immediate Jeopardy", that is not abated within five (5) business days;

(r)     Omitted;

(s)     If CMS imposes a "Denial of Payment for New Admissions" sanction on the Facility, and such sanction continues for twenty-five (25) or more days;

(t)     The failure on the part of Lessee during the Term of this Lease to cure or abate any written violation claimed by any governmental authority, of any law, order, ordinance, rule or regulation pertaining to the operation of the Facility within the time permitted for such cure or abatement;

(u)     The institution of any proceedings against Lessee by any governmental authority to: (i) revoke any license granted to Lessee for the operation of the Facility as a skilled nursing facility; and/or (ii) decertify the Facility from participation in the Medicare and/or Medicaid reimbursement program;

(v)     The occurrence and continuation of a default, beyond any applicable notice and cure period, under a line of credit or similar loan maintained by Lessee and the lender has proceeded in the enforcement of Lessee's obligations thereunder by any remedy provided by law whether by legal proceedings or otherwise;

(w)     The failure of any of the Lessee to pay any and all bed taxes against any Facility prior to delinquency; and

(x)     The occurrence of a default, beyond any applicable notice and cure period, under the Purchase Option.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## ARTICLE XX - INTENTIONALLY OMITTED

## ARTICLE XXI - LESSOR'S REMEDIES UPON DEFAULT

21.1     In the event of any Event of Default, after the applicable notice and cure period, by Lessee, Lessor may, if it so elects, and with notice of such election to Lessee, and upon demand upon Lessee, forthwith terminate this Lease and Lessee's right to possession of the Demised Premises, or, at the option of Lessor, terminate Lessee's right to possession of the Demised Premises without terminating this Lease.  Upon any such termination of this Lease, or upon any such termination of Lessee's right to possession without termination of this Lease, Lessee shall vacate the Demised Premises immediately, and shall quietly and peaceably deliver possession thereof to Lessor, and Lessee hereby grants to Lessor full and free license to enter into and upon the Demised Premises in such event with process of law and to repossess the Demised Premises and Personal Property as Lessor's former estate.  In the event of any such termination of this Lease, Lessor shall again have possession and enjoyment of the Demised Premises and Personal Property to the extent as if this Lease had not been made, and thereupon this Lease and everything herein contained on the part of Lessee to be done and performed shall cease and terminate, all, however, without prejudice to and without relinquishing the rights of Lessor to Rent (which, upon such termination of this Lease and entry of Lessor upon the Demised Premises, shall, in any event, be the right to receive Rent due up to the time of such entry) or any other right given to Lessor hereunder or by operation of law.  In the event that following an Event of Default by Lessee, Lessor either terminates this Lease or terminates Lessee's possession of the Facility in accordance with the terms hereof, all rights of the Lessee (or its affiliate), as optionee, under the Purchase Option shall be of no further force and effect and the Purchase Option shall terminate.

21.2     In the event of an Event of Default, after the applicable notice and cure period, and Lessor elects either to terminate this Lease or to terminate Lessee's right to possession of the Demised Premises, then all licenses, certifications, permits and authorizations (including the License and Provider Agreements) issued by any governmental agency, body or authority in connection with or relating to the Demised Premises and the Facility thereon shall be deemed as being assigned to Lessor to the extent the same are legally assignable.  Lessor shall also have the right to continue to utilize the telephone numbers, internet domain and name used by Lessee in connection with the operation of the Facility.  In connection with the foregoing clauses of this Section 21.2, this Lease shall be deemed and construed as an assignment for purposes of vesting in Lessor all right, title and interest in and to (a) all licenses, certifications, permits and authorizations (including the License and Provider Agreements) obtained in connection with the operation of the Facility and (b) the names and telephone numbers used in connection with the operation of the Facility.  Lessee hereby agrees to take such other action and execute such other documents as may be reasonably necessary in order to vest in Lessor all right, title and interest to the items specified herein, to the extent permitted at law.

21.3     If Lessee abandons the Demised Premises or otherwise entitles Lessor so to elect, and Lessor elects to terminate Lessee's right to possession only, without terminating this Lease, Lessor may, at its option, enter into the Demised Premises, remove Lessee's signs and other evidences of tenancy and take and hold possession thereof as in the foregoing Section 21.1 of this

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Article provided, without such entry and possession terminating this Lease or releasing Lessee, in whole or in part, from Lessee's obligation to pay the Rent hereunder for the full remaining term of this Lease, and in any such case, Lessee shall pay to Lessor a sum equal to the entire amount of the Rent reserved hereunder and required to be paid by Lessee for the full term of the Lease. Upon and after entry into possession without termination of this Lease, Lessor may attempt to relet the Demised Premises or any part thereof for the account of Lessee for such rent, or may operate any Facility for such time and upon such terms as Lessor in their sole discretion shall determine.  In any such case, Lessor may make repairs, alterations and additions in or to the Demised Premises, to the extent reasonably deemed by Lessor desirable, and Lessee shall, upon demand, pay the cost thereof, together with Lessor's expenses of reletting.

21.4    In the event that Lessor shall relet or release the Demised Premises after termination of this Lease under this Article 21, then any such collected rent for any period shall be used to abate against and offset against Rent, Additional Rent and/or any and all amounts otherwise due and owing by Lessee hereunder for the same such period.

21.5    No receipt of funds by Lessor from Lessee after service of any notice of an Event of Default, termination of this Lease or of possession of the Demised Premises or after commencement of any suit or proceeding of Lessee shall in any way reinstate, continue or extend this Lease or in any way affect the notice of the Event of Default or demand or in any way be deemed a waiver by Lessor of any of its rights unless consented to in writing by Lessor.

21.6    Concurrently herewith, the Lessee shall execute and deliver an exit OTA, in the form of **Exhibit C** attached hereto, to be held in escrow by Lessor, which may be released upon any Event of Default hereunder. Notwithstanding anything herein to the contrary, the parties acknowledge that certain representations made by the Lessee in the exit OTA as Old Operator (as such capitalized term is defined therein) are forward looking and impossible to predict at the time the execution of the Exit OTA by the Lessee and the parties agree that Lessee will have the opportunity to update such forward looking representations and or any schedules in the exit OTA prior to Lessor presenting the exit OTA to any proposed new operator.

21.7    Concurrently herewith, the members of Lessee shall execute and deliver an executed and undated notice for licensure of change of operator and executed 855A pages, in the form of **Exhibit D** attached hereto, which may be released upon any Event of Default hereunder.

## ARTICLE XXII - LIABILITY OF LESSOR

It is expressly agreed by the parties that in no case shall Lessor, any partners, officers, directors, manager, members, agents or employees of Lessor be liable under any express or implied covenant, agreement or provisions of this Lease for any damages whatsoever to Lessee beyond the loss of rent reserved in this Lease, accruing after or upon any act or breach hereunder on the part of Lessor and for which damages may be sought to be recovered against Lessor. Anything to the contrary notwithstanding, under no circumstances shall any personal liability attach to or be imposed upon any partners, officers, directors, managers, members, agents or employees or employees of Lessor.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

ARTICLE XXIII - CUMULATIVE REMEDIES OF LESSOR

The specific remedies to which Lessor may resort under the terms of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Lessor may be lawfully entitled in case of any breach or threatened breach by Lessee of any provision or provisions of this Lease.  The failure of Lessor to insist, in any one or more cases, upon the strict performance of any of the terms, covenants, conditions, provisions or agreements of this Lease, or to exercise any option herein contained, shall not be construed as a waiver or relinquishment for the future of any such term, covenant, condition, provisions, agreement or option.

ARTICLE XXIV - SECURITY FOR RENT

24.1    Lessor shall have a first lien paramount to all others on every right and interest of Lessee in and to this Lease, and on any of Lessee's accounts receivable, furnishings, equipment, or fixtures, general intangibles, inventory, goods or property of any kind belonging to Lessee and located at or used in connection with the Facilities ("**Lessor's Lien**").  Notwithstanding the foregoing, Lessor's Lien (other than on the License, Provider Agreements and furniture, fixtures and equipment) shall be subject and subordinate to any lien thereon granted by Lessee from time to time to any institutional lender for working capital to be utilized solely for operation of the Facility and to all renewals, modifications, extensions and replacements thereof, provider that such lender enters into an intercreditor agreement satisfactory to Lessor.  Lessor agrees to prepare and file, or consent to the filing of, within five (5) days following Lessee's request therefor, such financing statements or other instruments as may be reasonably requested by Lessee or Lessee's lender to evidence or effect any such subordination of Lessor's Lien to the lien of the institutional lender described above.  Such lien is granted for the purpose of securing the payments of Rent, charges, penalties, and damages herein covenanted to be paid by Lessee, and for the purpose of securing the performance of all of Lessee's obligations under this Lease.  Such lien shall be in addition to all rights to Lessor given and provided by law.  This Lease shall constitute a security agreement under the Uniform Commercial Code granting Lessor a security interest in such furnishings, equipment, fixtures, general intangibles, inventory, goods or property of any kind and accounts receivable, and Lessee hereby consents to the filing of, such financing statements and other documents reasonably required to perfect such security interest, which documents shall be filed or recorded at the expense of Lessee.

24.2    (i) No later than the Effective Date, Lessee shall have deposited a non-refundable (except as otherwise set forth herein) deposit in the amount of One Hundred Thousand Dollars ($100,000.00), and (ii) no later than the earlier of (a) two business days after Lessee secures financing for a line of credit from its lender or (b) April 1, 2021, Lessee shall have deposited a non-refundable (except as otherwise set forth herein) deposit in the amount of One Hundred Sixty Four Thousand Nine Hundred Thirty Three Dollars ($164,933.00), and (ii) on the one-year anniversary of the Commencement Date, Lessee shall deposit an additional One Hundred Twenty Seven Thousand Five Hundred Sixty Three Dollars ($127,563.00) (collectively, the "**Security Deposit**") as security for the full and faithful performance by Lessee of each and every term, provision, covenant and condition of this Lease.  The Security Deposit shall not be considered an advance payment of Rent (or of any other sum payable to Lessor under this Lease) or a measure of Lessor's damages in a case of a default by Lessee.  Lessor shall have no obligation to maintain

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

the Security Deposit separate and apart from Lessor's general and/or other funds and may freely utilize the Security Deposit subject to obligations hereunder to return the Security Deposit to Lessee.  Without limitation of the foregoing, in the event required by a Lender, Lessor may deposit the Security Deposit with Lender, and/or pledge its rights in the Security Deposit to such Lender.  Upon any Event of Default hereunder, Lessor may elect to apply all or any part of the Security Deposit to the payment of any sum in default, any other sum that Lessor may expend or be required to expend by reason of Lessee's default or any other amounts due by Lessee hereunder.  Upon the expiration or earlier termination of this Lease, following Lessor's determination of any amounts due and owing to Lessor and application of the Security Deposit to such outstanding amounts, any remaining portion of the Security Deposit shall be paid by Lessor to Lessee within thirty (30) days after the termination of this Lease.

ARTICLE XXV - INDEMNIFICATION

25.1    Lessee agrees to protect, indemnify and save harmless Lessor and any future tenants of Lessor with respect to any of the Facility from and against any claims, demands, losses, and causes of action of any nature whatsoever asserted against or incurred by Lessor on account of: (a) any failure on the part of Lessee during the Term of this Lease to perform or comply with any of the terms of this Lease; (b) injury to or death of persons or loss of or damage to property, occurring on the Demised Premises or any adjoining sidewalks, streets or ways or in any manner growing out of or connected with the use or occupation of the Demised Premises or the condition thereof, or the use of any existing or future sewer system, or the use of any adjoining sidewalks, streets or ways occurring after the Commencement Date; (c) any claims, penalties, recoveries, interest, monetary sanctions, fees, or other liabilities imposed by a governmental agency or other third party payor related to the operations of or payments made to the Facility while Lessee was providing skilled nursing services; (d) any bed taxes relating to the Facility; or (e) additional costs incurred by Lessor to monitor the Facility after the occurrence of any of the events set forth in Section 19.1.  Lessee further agrees to pay any reasonable attorneys' fees and expenses incident to the defense by Lessor of any such claims, demands or causes of action.  Notwithstanding the foregoing, Lessee shall not be responsible for the gross negligence and willful misconduct of Lessor.

25.2    Lessor agrees to indemnify, defend and save harmless Lessee from and against any liabilities, losses, claims, demands and causes of action whatsoever asserted against or incurred by Lessee on account of: (a) any failure on the part of Lessor during the Term of this Lease to perform or comply with any of the terms of this Lease; (b) the gross negligence or willful misconduct of Lessor, or (c) any failure on the part of Lessor to perform or comply with the terms of the Loan Documents (unless such failure is caused in whole or in part by acts or omissions of Lessee).  Lessor further agrees to pay any reasonable attorneys' fees and expenses incident to the defense by Lessee of any such claims, demands or causes of action.  There is expressly excluded from Lessor's indemnity hereunder any claim or proceeding by Lessee (i) which is based upon the physical condition of the Demised Premises or Personal Property prior to or on the Commencement Date, or (ii) for any form of relief not satisfied by the payment of money.

25.3    In the event that any liability, claim, demand or cause of action which is indemnified against by or under any term, provision, section or paragraph of this Lease

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

("**Indemnitee's Claim**") is made against or received by any indemnified party (hereinafter "**Indemnitee**") hereunder, said Indemnitee shall notify the indemnifying party (hereinafter "**Indemnitor**") in writing within thirty (30) calendar days of Indemnitee's receipt of written notice of said Indemnitee's Claim, provided, however, that Indemnitee's failure to timely notify Indemnitor of Indemnitee's receipt of an Indemnitee's Claim shall not impair, void, vitiate or invalidate Indemnitor's indemnity hereunder nor release Indemnitor from the same, which duty, obligation and indemnity shall remain valid, binding, enforceable and in full force and effect so long as Indemnitee's delay in notifying Indemnitor does not, solely by itself, directly and materially prejudice Indemnitor's right or ability to defend the Indemnified Claim.  Upon its receipt of any or all Indemnitee's Claim(s), Indemnitor shall, in its sole, absolute and unreviewable discretion, diligently and vigorously defend, compromise or settle said Indemnitee's Claim at Indemnitor's sole and exclusive cost and expense to the extent funds are available ("**Available Funds**") to fully indemnify such claims, and shall promptly provide Indemnitee evidence thereof within fourteen (14) calendar days of the final, unappealable resolution of said Indemnitee's Claim.  Upon the receipt of the written request of Indemnitee, Indemnitor shall within ten (10) business days provide Indemnitee a true, correct, accurate and complete written status report regarding the then current status of said Indemnitee's Claim.  Prior to an Indemnification Default (as defined herein), Indemnitee may not settle or compromise an Indemnitee's Claim without Indemnitor's prior written consent.  Failure to obtain such consent shall be deemed a forfeiture by Indemnitee of its indemnification rights hereunder.  In the event that Indemnitor fails or refuses to indemnify, save, defend, protect or hold Indemnitee harmless from and against an Indemnitee's Claim and/or to diligently pursue the same to its conclusion, or in the event that Indemnitor fails to timely report to Indemnitee the status of its efforts to reach a final resolution of an Indemnitee's Claim, which failure to report causes Indemnitee material harm, or in the event that Indemnitor does not have the Available Funds, on seven (7) calendar days prior written notice to Indemnitor during which time Indemnitor may cure any alleged default hereunder, the foregoing shall immediately, automatically and without further notice be an event of default hereunder (an "**Indemnification Default**") and thereafter Indemnitee may, but shall not be obligated to, immediately and without notice to Indemnitor, except such notice as may be required by law and/or rule of Court, intervene in and defend, settle and/or compromise said Indemnitee's Claim at Indemnitor's sole and exclusive cost and expense, including but not limited to attorneys' fees, and, thereafter, within ten (10) business days of written demand for the same Indemnitor shall promptly reimburse Indemnitee all said Indemnitee's Claims and the reasonable costs, expenses and attorneys' fees incurred by Indemnitee to defend, settle or compromise said Indemnitee's Claims plus interest at the Default Rate.

ARTICLE XXVI - SUBORDINATION PROVISIONS

26.1     Notwithstanding any provision of this Lease to the contrary, this Lease (and Lessee's interest in the Demised Premises and Personal Property) shall be subject and subordinate to the Loan Documents.  Lessee shall execute and deliver such documents as may be reasonably required in order to evidence such subordination.

26.2     Notwithstanding anything to the contrary contained herein, it is understood, agreed and acknowledged that Lessor shall have the right to finance, refinance and guaranty such financing or refinancing, from time to time, the Demised Premises and Personal Property, and grant a mortgage, deed of trust or security interest thereon, to assign or pledge any or all of its

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

interest in this Lease and to assign or pledge the revenues and receipts to be received by Lessor hereunder to a third party; provided, that Lessee receives a subordination, non-disturbance and attornment agreement, in a commercially reasonable form satisfactory to such third party.

26.3     Lessor will use its commercially reasonable best efforts to secure from its existing Lender a standard form subordination, non-disturbance and attornment agreement whereby, provided Lessee is not in default beyond any applicable notice and/or cure period under this Lease, Lessee shall have the right to remain in possession of the Facility without disturbance after any default by Lessor of the Loan Documents.

## ARTICLE XXVII - LESSEE'S FAITHFUL COMPLIANCE WITH LOAN DOCUMENTS AND HUD REQUIREMENTS

27.1     Anything in this Lease contained to the contrary notwithstanding but subject to the terms of any subordination, non-disturbance and attornment agreement which may be in effect, Lessee shall at all times and in all respects fully, timely and faithfully comply with and observe each and all of the conditions, covenants, and provisions required on the part of Lessor of which Lessee has received notice under the Loan Documents, including, without limitation, such conditions, covenants and provisions thereof as related to the financial covenants and financial reporting, related to operations, related to the care, maintenance, repair, insurance, restoration, preservation and condemnation of the Demised Premises, notwithstanding that such conditions, covenants and provisions may require compliance and observance to a standard or degree in excess of that required by the provisions of this Lease, or may require performance not required by the provisions of this Lease.  If any Loan Document entered into following the Commencement Date requires compliance, observance or performance to a standard or degree in excess of that required by the terms of any existing Loan Document and this Lease, Lessee shall comply with such standard, degree or additional performance.  Lessee further agrees that it shall not do or permit to be done anything which would constitute a breach of or default under any obligation of Lessor under the Loan Documents, it being the intention hereof that Lessee shall so comply with and observe each and all of such covenants, conditions and provisions of any Loan Document affecting the Demised Premises so that they will at all times be in good standing and there will not be any default on the part of Lessor thereunder.  However, nothing in this Article contained shall be construed to obligate Lessee to pay any part of the principal or interest secured by any mortgage or to perform any obligation imposed on Lessor thereunder which is not delegable by Lessor by the terms thereof.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

27.2    Notwithstanding anything to the contrary contained herein, at no cost to Lessor, Lessee further agrees to cooperate and allow the granting to a lender providing a loan insured by the United States Department of Housing and Urban Development (an "**FHA Mortgagee**") of a subordinate security interest in Lessee's accounts and other assets, to execute loan and bank documents (in form and substance acceptable to Lessee) (collectively, the "**HUD AR Loan Documents**") in connection with the same, including an Intercreditor Agreement and Rider to Intercreditor Agreement, and to setup and maintain lockboxes to effectuate the same, provided that such security interest shall be subordinate to the lien of any working capital line secured by Lessee.  Lessee shall also, at its expense, comply with all other requirements relating to Lessor obtaining a loan by an FHA Mortgagee with respect to the Facility.

27.3    In addition to any applicable requirements under the Loan Documents, Lessee shall at all times and in all respects fully, timely and faithfully comply with and observe all of the covenants as listed in Schedule 27.3 which same may be amended and supplemented by Lessor upon execution of the Loan Documents or as required by Lessor's lender.

## ARTICLE XXVIII - LOAN DOCUMENT RESERVES

28.1    Any tax, insurance, replacement or other reserve required under the Loan Documents by the Lender against the Demised Premises during the Term of this Lease (except for

any payments resulting from Lessor's failure to comply with the terms of the Loan Documents) and not otherwise paid by Lessee to Lessor pursuant to Section 7.1, shall be paid by the Lessee to Lessor and shall be repaid to Lessee when Lender repays such sums to Lessor.

28.2    If Lessee (or its affiliate) purchases the Facility, then all unused amounts deposited by Lessee for the Security Deposit and into reserves for taxes, insurance, replacement reserves or any other purpose as required by Lender, other than amounts deposited by Lessor or Lender, shall be delivered to Lessee (or its affiliate) at the closing of the purchase of the Facility upon receipt, and to the extent received, from Lender.

## ARTICLE XXIX - LESSEE'S ATTORNMENT

29.1    Lessee covenants and agrees that, if by reason of a default upon the part of Lessor herein in the performance of any of the terms and conditions of the Loan Documents and the Lender forecloses on the estate of Lessor in the Demised Premises, Lessee will attorn to the then holder of such mortgage or the purchaser in such foreclosure proceedings, as the case may be, and will recognize such holder of the mortgage or such purchaser as Lessor under this Lease.  Lessee covenants and agrees to execute and deliver, at any time and from time to time, upon the request of Lessor, or of the holder of such mortgage or the purchaser in foreclosure proceedings, any instrument which may be necessary or appropriate to evidence such attornment.  In the event any such proceedings are brought against Lessor under such mortgage or the holder of any such mortgage, then Lessee further waives the provisions of any statute or rule or law now or hereafter in effect which may terminate this Lease or give or purport to give Lessee any right of election to terminate this Lease or to surrender possession of the Demised Premises and agrees that, pending any final order, this Lease shall not be affected in any way whatsoever by any such proceedings.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## ARTICLE XXX - REPRESENTATIONS

30.1    Lessor represents, warrants and covenants to Lessee as follows:

(a)    Lessor is a limited liability company, is duly organized and validly existing under the laws of the State of Missouri, and has the full right and power to enter into, and perform its obligations under this Lease and all agreements or documents entered into or executed in connection therewith, and has taken all requisite actions to authorize the execution, delivery and performance of this Lease and all agreements and documents entered into or executed in connection therewith.

(b)    Neither the execution and delivery of this Lease, nor any agreement referred to or contemplated hereby, by Lessor will violate any provision of its Operating Agreement, be in conflict with, constitute a default or create a right of termination or cancellation under any agreement or commitment to which Lessor is a party.

(c)    Except for any Loan Documents and except as set forth on **Exhibit B**:

(i)    Lessor has or on the Commencement Date will have valid fee simple title to the Demised Premises and the Personal Property, free and clear of all liens, charges, security interests, leasehold rights or interests, reservation, restrictions, adverse claims, encumbrances and other defects in or limitations on title other than liens for taxes not yet due and payable (collectively, "**Encumbrances**");

(ii)    Lessor has or will on the Commencement Date have authority to convey interest in and to the Demised Premises and Personal Property to Lessee, free and clear of all Encumbrances.

(d)    No representation or warranty by or on behalf of Lessor contained in this Lease and no statement by or on behalf of Lessor in any certificate, list, exhibit or other instrument furnished or to be furnished to Lessee by or on behalf of Lessor pursuant hereto contains any untrue statement of a material fact, or omits or will omit to state any material facts which are necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading in any material respect.

(e)    Unless otherwise indicated in a specific representation or warranty contained herein, each representation and warranty of Lessor hereunder shall be true, complete and correct in all material respects as of the date hereof and as of the Commencement Date with the same force and effect as though such representation or warranty made on such date, and all representations and warranties shall survive the Commencement Date.

(f)    The exhibits and schedules furnished by Lessor in connection with this Lease do not contain any untrue statement of a material fact nor do they omit to state any

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

material fact necessary to make the statements contained herein and therein not materially misleading.

30.2    Lessee represents and covenants to Lessor as follows:

(a)    Lessee is a limited liability company, duly organized and validly existing in good standing under the laws of the State of Delaware, and has full right and power to enter into, or perform its obligations under this Lease and has taken all requisite actions to authorize the execution, delivery and performance of this Lease.

(b)    Lessee acknowledges that it has inspected the Demised Premises and the Personal Property and, subject to the representations and warranties of Lessor provided above and further subject to the other terms and conditions of this Lease, agrees to lease the same in its present "AS IS-WHERE IS" condition.  Lessee further acknowledges except as set forth explicitly in this Lease, Lessor makes no representations, express or implied, as to the physical condition of the Demised Premises and the Personal Property or any other matter or thing affecting or related to the Demised Premises or the Personal Property.

(c)    In addition to all other covenants contained herein, Lessee expressly covenants that it shall keep and maintain at the Facility at all times in good order and repair all items of Personal Property necessary for operating the Facility in compliance with all material laws, rules and regulations of DHSS, CMS, Missouri Medicaid and any other applicable governmental authorities, applicable to the Facility.  Lessee shall maintain all such items in good order and repair, subject to reasonable wear and tear, and shall promptly replace any such items which become obsolete, damaged or destroyed with substitute items equivalent to that which has been replaced and such replacement items shall become and be deemed the personal property of Lessor.

(d)    No representation or warranty by or on behalf of Lessee contained in this Lease and no statement by or on behalf of Lessee in any certificate, list, exhibit, schedule or other instrument furnished or to be furnished to Lessor by or on behalf of Lessee pursuant hereto contains any untrue statement of a substantial fact, or omits or will omit to state any substantial facts which are necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading in any substantial respect.

(e)    Unless otherwise indicated in a specific representation or warranty contained herein, each representation and warranty of Lessee hereunder shall be true, complete and correct in all material respects as of the Commencement Date with the same force and effect as though such representation or warranty was made on such date, and all representations and warranties shall survive the Commencement Date.

ARTICLE XXXI - NON-SOLICITATION; NON-COMPETE; MANAGEMENT AND OPERATIONS;

31.1    Neither Lessee, nor any affiliate of Lessee shall solicit the Facility (for transfer of residents) or any residents thereof, during the Term of the Lease or for a period of twenty-four

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(24) months following the Closing Date where such transfer is not required by law, or to maintain the health and well-being of the residents in question or for the protection of person or property as permitted under the applicable law then in effect.  Lessee acknowledges that if there is a violation of any provision of this Section 31.1, then Lessee shall pay to Lessor an amount equal to Fifty Thousand Dollars ($50,000.00), as liquidated damages, for each such resident.  The parties agree and acknowledge that actual damages with respect to the foregoing would be difficult to ascertain and that Fifty Thousand Dollars ($50,000.00) is a fair and reasonable approximation of such actual damages.  This provision shall not in any way limit such other remedies as may be available to Lessor at law or in equity.  Lessee further acknowledges that the scope and duration of the provisions of this Section 31.1 are reasonable.

31.2    Neither Lessee nor any affiliate of Lessee shall solicit any employee of the Facility, during the Term of the Lease or for a period of twenty-four (24) months following the Closing Date.  Lessee acknowledges that if there is a violation of any provision of this Section 31.2, then Lessee shall pay to Lessor an amount equal to the greater of (a) one year of such employee's annual salary, or (b) Fifty Thousand Dollars ($50,000.00), as liquidated damages, for each such employee.  The parties agree and acknowledge that actual damages with respect to the foregoing would be difficult to ascertain and that Fifty Thousand Dollars ($50,000.00) is a fair and reasonable approximation of such actual damages.  This provision shall not in any way limit such other remedies as may be available to Lessor at law or in equity.  Lessee further acknowledges that the scope and duration of the provisions of this Section 31.2 are reasonable.

31.3    Neither Lessee, nor any affiliate of Lessee, during the Term of the Lease or for a period of two (2) years following the termination of the Lease (unless such Lease is terminated as a result of the exercise of the Purchase Option), will: (i) own, operate, develop, manage, or otherwise provide consulting or other services with respect to a skilled and/or intermediate nursing facility (a "**Competing Facility**") within a fifteen (15) mile radius of the Facility (the "**Restricted Area**"); or (ii) otherwise operate, own, develop, manage or consult with an entity or business which owns or develops a Competing Facility within a fifteen (15) mile radius of the Facility (collectively, the "**Non-Compete**").  Lessee acknowledges that a violation of any provision of this Section 31.3 will result in substantial and irreparable damage to the Lessor for which the Lessor will not have an adequate remedy at law and for which money damages would not be a sufficient remedy, and Lessee agrees that, in addition to all other remedies, in the event of any violation or alleged or threatened violation of any of the provisions of this Section 31.3, Lessor shall be entitled to equitable relief, including temporary or permanent injunctive relief and specific performance.  This provision shall not in any way limit such other remedies as may be available to Lessor at law or in equity.  Notwithstanding the foregoing, in the event that a Restricted Party would like to perform services in a manner restricted by this Section 31.3, the parties agree and acknowledge that upon request of a Restricted Party, Lessor shall consider and respond in writing within thirty (30) days of such request and any agreement in writing shall not violate this Section.  The restrictions contained in this Section 31.3 will not prevent any affiliate of Lessee, from continuing to own, operate, manage, render any services and/or otherwise deal with, directly or indirectly, a Competing Facility within the Restricted Period which Competing Facility has been, prior to the Commencement Date, owned, operated, managed, rendered any services and/or otherwise dealt with, directly or indirectly by an affiliate of the Lessee.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

31.4    Lessee further acknowledges that the scope and duration of the provisions of this Article 31 are reasonable.

31.5    Lessee shall be a single purpose entity and shall not engage in any other activities other than the ownership and operations of the Facility.  Lessee shall have the right to engage and hire an affiliated management company (the "**Affiliated Management Company**") (with common ownership and control between Lessee and the Management Company); provided, however, that any obligations of any Lessee to an Affiliated Management Company shall be subordinate to all obligations of Lessee to Lessor under this Lease and in no event shall any Lessee pay any management fee, consulting fee or other payment to any Affiliated Management Company during the existence of an uncured Event of Default hereunder.

## ARTICLE XXXII - CAPEX PAYMENTS

32.1    Lessor shall make available to Lessee an amount up to $2,000,000 for capital expenditures (the "**CapEx Payment**") to the extent set forth in this section. Lessee shall request each CapEx Payment by submitting a CapEx Payment request to Lessor. Lessor shall make the CapEx Payment no more than fifteen (15) days after such request to Lessee provided that [i] no Event of Default has occurred and is continuing, [ii] there are adequate undisbursed funds remaining related to the CapEx Payment with respect to which Lessee has not previously submitted a CapEx Payment request, [iii] the project improvements for which the CapEx Payment request is submitted are reasonably projected to be completed on or before the third anniversary of the Commencement Date, and [iv] Lessor has determined, in its commercially reasonable discretion, that all requirements for the CapEx Payment have been satisfied.

32.2    CapEx Payments for Project Improvements.

(a)    In addition to any other requirements set forth in this section, Lessor's obligation to make CapEx Payments for project improvements is subject to Lessor's prior written approval of the scope of work and budget, construction and disbursement schedules (if applicable), and contractor and construction agreements (if applicable) and the reasonable terms and conditions set forth in any Disbursing Agreement which Lessor may require Lessee to enter into with respect thereto. Tenant shall also provide a collateral assignment of any construction contract to Lessor and the contractor shall consent to the assignment, both in form reasonably satisfactory to Lessor.

(b)    Prior to the disbursement of any CapEx Payments, Samuel Goldner, an individual, will deliver to Lessor a personal guaranty in the form provided by Lessor in an amount equal to 50% of the total CapEx Payments made by Lessor.

(c)    Other than to the extent of the CapEx Payments for the limited duration provided for herein, Lessor has made no commitment to make CapEx Payments for project improvements or for any other capital expenditures with respect to the Demised Premises.  If the CapEx Payments have not been fully disbursed by Lessor to Lessee on or before the third anniversary of the Commencement Date, Lessee will have no further rights whatsoever to the CapEx Payments and Lessor shall have no further obligation to

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

fund any project improvements or other capital expenditures with respect to the Demised Premises.

ARTICLE XXXIII - FINANCIAL STATEMENTS AND REPORTING

33.1     Lessee shall furnish to Lessor full and complete financial statements (or as otherwise required by Lender) of the operations of the Demised Premises and the Facility for each such fiscal period identified herein, in a form reasonably satisfactory to Lessor, which shall be certified by the manager of Lessee that such Financial Statements present fairly the financial condition of Lessee (in addition to any further requirements herein), and which shall contain a statement of capital changes, balance sheet, detailed income and expense statement, statement of cash flows and statement of payor mix, accounts receivable and accounts payable aging (with detail regarding payor and vendor type, respectively), monthly census for the Facility specifying payor type, payroll expenses for the Facility, full trial balance including chart of accounts, and identify any payments made by Lessee to any managing entity or consulting entity, all prepared in accordance with generally accepted accounting principles ("**GAAP**") (collectively, the "**Financial Statements**").   Financial Statements shall be provided as follows: (a) within thirty (30) days after the end of each month, showing the results of operations of the Facility for such month; (b) within forty-five (45) days after the end of each of its fiscal quarters, showing the results of operations of the Facility for the fiscal quarter dated as of the end of each fiscal quarter; and (c) within one hundred twenty (120) days after the end of each of its fiscal years, annual reviewed consolidated and consolidating financial statements showing the results of operations of the Facility for the annual fiscal period dated as of the end of the fiscal year. Notwithstanding the foregoing, Lessee shall provide audited consolidated financial statements if same is required under the Loan Documents. Lessee shall also furnish to Lessor a copy of its cost reports within ten (10) days after filing thereof.  Each such statement shall be certified as being true and correct by an officer of Lessee as applicable, and shall contained a compliance certificate with respect to any such applicable periods, for financial covenants pursuant to Section 27.3 hereof.

33.2     Within thirty (30) days after the date for filing Lessee's tax return (as the same may be extended), Lessee shall furnish Lessor with a copy of the tax return for the Facility for said year, certified by an officer of Lessee to be true, correct and complete.

33.3     Not less than thirty (30) days prior to any fiscal year, a full year budget for the upcoming fiscal year shall be provided by Lessee to Lessor.  Lessee shall also provide to Lessor within forty-five (45) days following each fiscal quarter a list of any capital expenditures incurred during such quarter, and not less than thirty (30) days prior to any fiscal quarter a capital expense plan with respect to such quarter.

33.4     In addition to the above financial statements, Lessee shall also provide to Lessor and Lender such other financial statement(s) or information relating to its operation as may be required by Lender upon notice to Lessee.  Any such financial statement(s) or other information required by the Loan Documents shall be furnished to Lessor not later than three (3) days prior to the due date for Lessor to furnish the same to Lender.

33.5     Upon request by Lessor or Lender, Lessee shall prepare or cause to be prepared all financial covenant compliance certificates and worksheets as may be required by such Lender

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

and shall furnish the same to Lessor not later than three (3) days prior to the due date for Lessor to furnish the same to Lender.

33.6    At all times during the Term of this Lease, Lessee shall keep and maintain full and correct records and books of account of the operations of Lessee in the Demised Premises and records and books of account of the entire business operations of Lessee in accordance with generally accepted accounting principles.  Upon request by Lessor, from time to time, Lessee shall make available for inspection by Lessor or its designee, during reasonable business hours, at the Facility or Lessee's offices, the records and books of account covering the entire business operations of Lessee on the Demised Premises.

33.7    All materials required to be provided pursuant to this Article 33 shall be provided in EXCEL format.

ARTICLE XXXIV - LICENSURE/TERMINATION

34.1    Lessee represent and covenant that as of the Commencement Date they shall be licensed to operate the Facility, and Lessee shall remain licensed to operate the Facility for the duration of the Term.

34.2    The provisions of this Section 34.2 shall not apply in the event this Lease is terminated or assigned by reason of the exercise and closing of the Purchase Option.  Upon termination of this Lease (whether by reason of default, the natural expiration of the Term or otherwise), the following provisions shall be applicable:

(a)    Upon the expiration or other termination of this Lease, Lessee shall return to Lessor the Demised Premises and the Personal Property in a condition similar to that which existed on the Commencement Date, licensed by DHSS and by any governmental agencies having jurisdiction over the Demised Premises, reasonable wear and tear excepted, and free of liens or encumbrances arising through Lessee except for tax liens for current general real estate taxes or special assessments, personalty leases and other expenses incurred in the ordinary course of business which shall be prorated, and liens disclosed on **Exhibit E** hereto.

(b)    Lessor shall keep and shall not be obligated to return to Lessee any Base Rent paid by Lessee other than a *pro-rata* refund of any prepaid Base Rent paid to Lessor prior thereto.  Lessor shall pay to Lessee the amount of any unused tax, insurance or other reserve deposited by Lessee during the Term, other than those relating to expenses accrued during the Term; provided that in the event any such amounts are held by a Lender, Lessor shall remit such amounts to Lessee upon Lessor's receipt from the Lender.  Lessee shall not be obligated to account or pay to Lessor any earnings or income earned from the Commencement Date to the termination date.  Lessee shall pay all bills incurred in the ownership of the Demised Premises and operation of the Facility from the Commencement Date through the termination date, and shall receive and keep all income and suffer all losses incurred in the ownership of the Demised Premises and operation of the Facility from the Commencement Date through the termination date.

(c)    During the period from the Commencement Date to the termination date:

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(i)    Lessee shall be responsible for the payment of all real estate taxes in accordance with the provisions of Article VI hereof;

(ii)    Lessee shall maintain all required insurance and Lessee shall be liable for payment of and shall pay the premiums thereon; and

(iii)    In case of termination, Lessee shall be liable to return to Lessor, the Demised Premises and all Personal Property in a condition similar to that which existed on the Commencement Date, reasonable wear and tear excepted, and free of liens or encumbrances arising through Lessee except for tax liens for current general real estate taxes or special assessments, which shall be prorated to the termination date, and except as to consumable items to the extent of consumption thereof, which, as consumed, will be replenished by Lessee in the ordinary course of business.

(d)    Upon termination of this Lease, the parties will request appropriate inspections by governmental agencies upon the return of the Demised Premises to Lessor. Lessee agrees that it will cure any violations found involving the Demised Premises or Personal Property, provided such violations occurred on or after the Commencement Date (with Lessee bearing the burden of proof thereof). Lessee agrees to execute such documents and take such actions as may be reasonably required in order to restore Lessor to ownership and possession of the Demised Premises and the Personal Property, including, without limitation, execution of any assignment or change of ownership documents required to license Lessor or its assignee to operate the Facility.

(e)    Lessee shall keep and maintain medical records in accordance with applicable law and permit reasonable access and copy thereof by Lessor in accordance with such law, and to the extent permitted by law.

(f)    Lessee shall keep and maintain such financial and operational records (including, without limitation, cost reports/contracts) as are required for the operation of the business under applicable laws.

(g)    Upon termination or expiration of this Lease, any furniture, fixtures, equipment, linens, food, supplies and personal property acquired by Lessee with respect to the Facility shall become the property of Lessor, and this Lease shall serve as an assignment for purposes of giving effect to such transfer.

(h)    Upon Lessor's request, Lessee shall assign to any designee of Lessor, any rights of Lessee under any documents with the prior operators of the Facility. This Lease shall serve as an assignment to give effect to the foregoing.

ARTICLE XXXV - CONDITIONS PRECEDENT AND CONCURRENT TO CLOSING

35.1    The following shall be conditions precedent to Lessee's obligation to proceed with this Lease:

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(a)    The concurrent execution by all requisite parties of the Purchase Option;

(b)    Lessee shall obtain, at its sole cost and expense, all necessary approvals, certifications and licenses from all appropriate governmental agencies necessary to permit Lessee to operate the Facility as a skilled nursing facility.  Upon request, Lessor shall promptly execute and notarize (if appropriate) any documents reasonably requested by Lessee in connection therewith;

(c)    The execution prior to the Commencement Date of a Subordination, Non-Disturbance and Attornment Agreement by Lender, Lessor and Lessee;

(d)    The execution and delivery of the Commencement Date Rider;

(e)    The Closing shall have occurred under that certain Operations Transfer Agreements by and between Lessee and prior operator dated as of November 13, 2020 (the "**OTA**");

(f)    Lessor shall not be in material breach of any term, provision or condition of this Lease;

(g)    Lessor shall have duly and timely performed and fulfilled all of its duties, obligations, promises, covenants and agreements hereunder; and

(h)    All schedules and exhibits to this Lease prepared by Lessor shall be true, complete and correct in all material respects.

35.2    The following shall be conditions precedent to Lessor's obligation to proceed with this Lease:

(a)    The concurrent execution by all requisite parties of the Purchase Option;

(b)    The Closing shall have occurred under the OTA;

(c)    The execution prior to the Commencement Date of a Subordination, Non-Disturbance and Attornment Agreement by Lender, Lessor and Lessee;

(d)    The execution and delivery of the Commencement Date Rider;

(e)    The execution and delivery prior to the Commencement Date of the exit OTA, in the form attached hereto as **Exhibit C**;

(f)    The execution and delivery prior to the Commencement Date of the notice of CHOW and 855A pages, in the form attached thereto as **Exhibit D**;

(g)    Lessee shall have duly and timely performed and fulfilled all of its duties, obligations, promises, covenants and agreements hereunder; and

(h)    Lessee shall not be in material breach of any term, provision or condition

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

of this Lease.

35.3     Notwithstanding anything contained in Section 35.1 to the contrary, Lessee may in its sole discretion waive any conditions precedent or conditions concurrent contained in Section 35.1.

35.4     Notwithstanding anything contained in Section 35.2 to the contrary, Lessor may in its sole discretion waive any conditions precedent or conditions concurrent contained in Section 35.2.

ARTICLE XXXVI - TRANSFER OF OPERATIONS UPON TERMINATION OF LEASE

The provisions of this ARTICLE XXXVI shall apply in connection with any termination of this Lease or Lessee's right to possession of the Demised Premises, other than a termination resulting from the exercise by Lessee (or its permitted designee) of the Purchase Option.

36.1     The date on which (i) this Lease either terminates or expires pursuant to its terms or is terminated by either party whether pursuant to a right granted to it hereunder or otherwise, (ii) the date on which Lessee's right to possession of the Demised Premises is terminated pursuant to a right granted to it hereunder or otherwise, or (iii) Lessee otherwise abandons the Demised Premises, shall be referred to as the "**Closing Date**" in this Article.  On the Closing Date and upon Lessor's election, this Lease shall be deemed and construed as an absolute assignment for purposes of vesting in Lessor (or Lessor's designee) all of Lessee's right, title and interest in and to the following intangible property which is now or hereafter used in connection with the operation of the Demised Premises (the "**Intangibles**") and an assumption by Lessor (or Lessor's designee) of Lessee's obligations under the Intangibles from and after the Closing Date; provided that, from and after the Closing Date, Lessee shall indemnify, defend and hold harmless Lessor against any claims, losses, costs or damages, including reasonable attorneys' fees incurred or arising by reason of Lessee's obligations under the Intangibles during the Term of this Lease:

(1)     service contracts and equipment leases for the benefit of the Demised Premises to which Lessee is a party, and which can be terminated without penalty by Lessee within sixty (60) or fewer days' notice or which Lessor requests be assigned to Lessor (or Lessor's designee) pursuant to this Article 36, subject to any required consents of the lessors or providers under such service contracts and equipment leases;

(2)     to the extent permitted by law, any provider agreements with Medicare, Medicaid or any other third-party payor programs (excluding the right to any reimbursement for periods prior to the Closing Date, as defined above) entered in connection with the Demised Premises to the extent assignable by Lessee; provided that in addition thereto Lessor (or Lessor's designee) shall be permitted to bill under Lessee's Medicare and Medicaid provider agreements, as applicable, until any assignment thereof has become effective, and Lessee shall promptly remit to Lessor (or Lessor's designee) any funds received with respect to such billing);

(3)     all existing agreements with residents and any guarantors thereof of the Demised Premises, to the extent assignable by Lessee (excluding the right to any payments for periods prior to the Closing Date) and any and all patient trust fund accounts; and

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(4)    at Lessor's option, the business of Lessee as conducted at the Demised Premises as a going concern, including but not limited to the name of the business conducted thereon and all telephone numbers presently in use therein.

36.2    Lessor shall be responsible for and shall pay all accrued expenses with respect to the Demised Premises accruing on or after 12:01 a.m. (local time) on the Closing Date and shall be entitled to receive and retain all revenues from the Demised Premises accruing on or after 12:01 a.m. on the Closing Date.  Within fifteen (15) business days after the Closing Date, the following adjustments and prorations shall be determined as of the Closing Date:

(1)    Real estate taxes, ad valorem taxes, school taxes, assessments and personal property, intangible and use taxes, if any.  If the information as to the actual amount of any of the foregoing taxes and assessments are not available for the tax year in which the Closing Date occurs, the proration of such taxes shall be estimated based upon reasonable information available to the parties, including information disclosed by the local tax office or other public information, and an adjustment shall be made when actual figures are published or otherwise become available.

(2)    Lessee will terminate the employment of all employees on the Closing Date and shall be and remain liable for any and all wages, accrued vacation and sick leave pay for employees of the Demised Premises with respect to the period prior to 12:01 a.m. on the Closing Date.

(3)    Lessor shall receive a credit equal to any advance payments by patients at the Demised Premises to the extent attributable to periods after 12:01 a.m. on the Closing Date.

(4)    The present insurance coverage on the Demised Premises shall be terminated as of the Closing Date and there shall be no proration of insurance premiums.

(5)    All other income from, and expenses of, the Demised Premises (other than mortgage interest and principal), including but not limited to public utility charges and deposits, maintenance charges and service charges shall be prorated between Lessee and Lessor as of 12:01 a.m. on the Closing Date.  Lessee shall, if possible, obtain final utility meter readings as of the Closing Date.  To the extent that information for any such proration is not available, Lessee and Lessor shall affect such proration within sixty (60) days after the Closing Date.

(6)    Lessee shall be and remain responsible for any employee severance pay, accrued benefits (whether vested or unvested), and related taxes which may be payable as the result of any termination of an employee's employment on or prior to 12:01 a.m. on the Closing Date.

36.3    All necessary arrangements shall be made to provide possession of the Demised Premises to Lessor or its designee on the Closing Date, at which time of possession Lessee shall deliver to Lessor or its designee all medical records, patient records and other personal information concerning all patients residing at the Demised Premises as of the Closing Date and other relevant records used or developed in connection with the business conducted at the

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Demised Premises.  Such transfer and delivery shall be in accordance with all applicable laws, rules and regulations concerning the transfer of medical records and other types of patient records.

36.4    For the period commencing on the Closing Date and ending on the date Lessor, or its designee, obtains any and all appropriate state or other governmental licenses and certifications required to operate the Facility, Lessee hereby agrees that, to the extent permitted by law, Lessor, or Lessor's designee, shall have the right, but not the obligation, to manage and operate the Demised Premises, on a triple net basis, and shall be entitled to all revenues of the Demised Premises during such period, and to use any and all licenses, certifications and provider agreements issued to Lessee by any federal, state or other governmental authority for such operation of the Demised Premises, if permitted by any such governmental authorities.  If Lessor or its designee exercises the right described above in this Section 36.4, the provisions of this Section 36.4 shall be self-operative and shall constitute a management agreement between Lessee, on the one hand, and Lessor or its designee, on the other hand, on the terms set forth above in this Section 36.4; provided, however, that upon the request of Lessor or its designee, Lessee shall enter into a separate management agreement on the terms set forth in this Section 36.4 and on such other terms and provisions as may be specified by Lessor or its designee.

36.5    Lessee shall provide Lessor with an accounting within fifteen (15) days after the Closing Date of all funds belonging to patients at the Demised Premises which are held by Lessee in a custodial capacity.  Such accounting shall set forth the names of the patients for whom such funds are held, the amounts held on behalf of each such patient and Lessee's warranty that the accounting is true, correct and complete.  Additionally, Lessee, in accordance with all applicable rules and regulations, shall make all necessary arrangements to transfer such funds to a bank account designated by Lessor, and Lessor shall in writing acknowledge receipt of and expressly assume all Lessee's financial and custodial obligations with respect thereto.  Notwithstanding the foregoing, Lessee will indemnify, defend and hold Lessor harmless from all liabilities, claims and demands, including reasonable attorney's fees, in the event the amount of funds, if any, transferred to Lessor's bank account as provided above, did not represent the full amount of the funds then or thereafter shown to have been delivered to Lessee as custodian that remain undisbursed for the benefit of the patient for whom such funds were deposited, or with respect to any matters relating to patient funds which accrued during the Term and Lessor will indemnify, defend and hold Lessee harmless from all liabilities, claims and demands, including reasonable attorney's fees with respect to any matters relating to patient funds which accrue after the Term.

36.6    All cash, checks and cash equivalent at the Demised Premises and deposits in bank accounts (other than patient trust accounts) relating to the Demised Premises on the Closing Date shall remain Lessee's property after the Closing Date.  Subject to the provisions of Article 24 hereof, all accounts receivable, loans receivable and other receivables of Lessee, whether derived from operation of the Demised Premises or otherwise, shall remain the property of Lessee after the Closing Date.  Lessee shall retain full responsibility for the collection thereof.  Lessor shall assume responsibility for the billing and collection of payments on account of services rendered by it on and after the Closing Date.  In order to facilitate Lessee's collection efforts, Lessee agrees to deliver to Lessor, within a reasonable time after the Closing Date, a schedule identifying all of those private pay balances owing for the month prior to the Closing Date and Lessor agrees to apply any payments received which are specifically designated as being applicable to services rendered prior to the Closing Date to reduce the pre-Closing Date balances

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

of said patients by promptly remitting said payments to Lessee.  Payments received by Lessor or Lessee from patients owing money for services rendered by Lessor and Lessee and which are not allocated to a particular time period, shall be applied one-half (1/2) to the payment of Lessor's accounts receivable for that particular patient and one-half (1/2) to the payment of Lessee's account receivable for that particular patient.  Lessor shall cooperate with Lessee's collection of preclosing accounts receivable.  Lessor shall have no liability for uncollectible receivables and shall not be obligated to bear any expense as a result of such activities on behalf of Lessee.  Subject to the provisions of Article 24 hereof, Lessor shall remit to Lessee or its assignee those portions of any payments received by Lessor which are specifically designated as repayment or reimbursement arising out of cost reports filed for the cost reporting periods ending on or prior to the Closing Date.

36.7    With respect to residents at the Demised Premises on the Closing Date, Lessor and Lessee agree as follows:

(1)    With respect to Medicare and Medicaid residents, Lessor and Lessee agree that subject to the provisions of Article 24 hereof, payment for in-house residents covered by Medicare or Medicaid on the Closing Date will be made (on a per diem basis) by Medicare or Medicaid under current regulations directly to Lessee for services rendered at the Demised Premises prior to the Closing Date.  Said payments shall be the sole responsibility of Lessee and Lessor shall in no way be liable therefor.  After the Closing Date, Lessor and Lessee shall each have the right to review supporting books, records and documentation that are in the possession of the other relating to Medicaid or Medicare payments.

(2)    If, following the Closing Date, Lessor receives payment from any state or federal agency or third-party provider which represents reimbursement with respect to services provided at the Demised Premises prior to the Closing Date, Lessor agrees that, subject to the provisions of Article 24 hereof, it shall remit such payments to Lessee.  Payments by Lessor to Lessee shall be accompanied by a copy of the appropriate remittance.

36.8    In addition to the obligations required to be performed hereunder by Lessee and Lessor on and after the Closing Date, Lessee and Lessor agree to perform such other acts, and to execute, acknowledge, and/or deliver subsequent to the Closing Date such other instruments, documents and materials, as the other may reasonably request in order to effectuate the consummation of the transaction contemplated herein.

36.9    Lessee for itself, its successors and assigns hereby indemnifies and agrees to defend and hold Lessor and its successors and assigns, as well as any future tenant of Lessor with respect to any of the Facility harmless from any and all claims, demands, obligations, losses, liabilities, damages, recoveries and deficiencies (including interest, penalties and reasonable attorney's fees, costs and expenses) which any of them may suffer as a result of the breach by Lessee in the performance of any of its commitments, covenants or obligations under this Article 36, or with respect to any suits, arbitration proceedings, administrative actions or investigations which relate to the use by Lessee of the Demised Premises during the Term or for any liability which may arise from operation of the Demised Premises as a nursing home during the Term, including without limitation, any amounts due or to be reimbursed to any governmental authority based upon any audit or review of Lessee or of the Facility or the operation thereof and pertaining

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

to the period prior to the Closing Date or any amounts recaptured under Titles XVIII or XIX based upon applicable Medicaid/Medicare recapture regulations. The rights of Lessor under this paragraph are without prejudice to any other remedies not inconsistent herewith which Lessor may have against Lessee pursuant to the terms of this Lease. The foregoing indemnity shall survive the expiration or termination of this Lease, whether due to lapse of time or otherwise.

36.10 Lessor for itself, its successors and assigns hereby indemnifies and agrees to defend and hold Lessee and its successors and assigns harmless from any and all claims, demands, obligations, losses, liabilities, damages, recoveries and deficiencies (including interest, penalties and reasonable attorney's fees, costs and expenses) which any of them may suffer as a result of the breach by Lessor in the performance of any of its commitments, covenants or obligations under this Article 36, or with respect to any suits, arbitration proceedings, administrative actions or investigations which relate to the use of the Demised Premises after the Term or for any liability which may arise from operation of the Demised Premises as a nursing home after the Term. The rights of Lessee under this paragraph are without prejudice to any other remedies not inconsistent herewith which Lessee may have against Lessor pursuant to the terms of this Lease or otherwise.

36.11 Lessor shall have the right to offset against any monies due Lessee pursuant to the terms of this Article 36, any amounts due by Lessee to Lessor pursuant to this Lease, including without limitation any amounts due for taxes, utilities, unemployment insurance premiums, payroll obligations or any other obligation arising from the operation of the Demised Premises.

36.12 Anything to the contrary contained in this Article 36 notwithstanding, in the event the termination of this Lease is due to a default beyond the applicable notice and/or cure period by Lessee hereunder, none of the provisions of this Article 36 shall in any way limit, reduce, restrict or modify the rights otherwise granted to Lessor pursuant to this Lease, and to the extent any monies are due to Lessee pursuant to this Article 36, such sums shall be applied by Lessor to any damages suffered by Lessor as a result of Lessee's default hereunder.

36.13 Lessor and Lessee agree to reasonably cooperate with each other in order to effectuate the terms and provisions of this Article 36.

## ARTICLE XXXVII - MISCELLANEOUS

37.1 Lessee, upon paying the Rent and all other charges herein provided, and for observing and keeping the covenants, agreements, terms and conditions of this Lease on its part to be performed, shall lawfully and quietly hold, occupy and enjoy the Demised Premises and Personal Property during the Term of this Lease, and subject to its terms, without hindrance by Lessor or by any other person or persons claiming under Lessor.

37.2 All payments to be made by the Lessee hereunder (other than Base Rent), whether or not designated as "Additional Rent", shall be deemed Additional Rent, so that in the event of a default of payment when due, Lessor shall be entitled to all of the remedies available at law or equity, or under this Lease, for the nonpayment of Rent.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

37.3    It is understood and agreed that the granting of any consent by Lessor to Lessee to perform any act of Lessee requiring Lessor's consent under the terms of this Lease, or the failure on the part of Lessor to object to any such action taken by Lessee without Lessor's consent, shall not be deemed a waiver by Lessor of its rights to require such consent for any further similar act by Lessee, and Lessee hereby expressly covenants and warrants that as to all matters requiring Lessor's consent under the terms of this Lease, Lessee shall secure such consent for each and every happening of the event requiring such consent, and shall not claim any waiver on the part of Lessor of the requirement to secure such consent.

37.4    Lessee represents that it did not deal with any broker in connection with this Lease, and hereby indemnifies Lessor against the claims or demands of any broker claimed through a relationship with Lessee.  Lessor represents that it did not deal with any broker in connection with this Lease, and hereby indemnifies Lessee against the claims or demands of any broker claimed through a relationship with Lessor.

37.5    If an action shall be brought to recover any Rent under this Lease, or for or on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Lease, or for the recovery of possession of the Demised Premises, the prevailing party shall be entitled to recover from the other party, as part of the prevailing party's costs, reasonable attorneys' fees, the amount of which shall be fixed by the court and shall be made a part of any judgment rendered.

37.6    Should Lessee hold possession hereunder after the expiration of the Term of this Lease with or without the consent of Lessor, Lessee shall become a tenant on a month to month basis upon all the terms, covenants and conditions herein specified, excepting however that Lessee shall pay Lessor a monthly rental, for the period of such month-to-month tenancy, in an amount equal to fifty percent (50%) greater than the last Rent specified.

37.7    All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly delivered (i) upon the delivery (or refusal to accept delivery) by personal delivery, messenger or overnight express delivery service (or, if such date is not on a business day, on the business day next following such date), (ii) on the third (3rd) business day next following the date of its mailing by certified mail, postage prepaid, at a post office maintained by the United States Postal Service, or (iii) by electronic mail transmission, addressed as follows:

| If to Lessor: | If to Lessee: |
|---|---|
| c/o Cascade Capital Group, LLC | c/o Goldner Capital Management |
| 3450 Oakton Street | 525 Chestnut Street, Suite 102 |
| Skokie, IL 60076 | Cedarhurst, New York 11516 |
| Attn:  Daniel Garden, Esq. | Attn: Samuel Goldner |
|     Mordy Kaplan, Esq. | Email:  sgoldner@gcapmgmt.com |
| Email: dgarden@cascadellc.com | |
|     mkaplan@cascadellc.com | |

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

with a copy to:

   Gutnicki LLP
   4711 Golf Road, Suite 200
   Skokie, IL 60076
   Attn: Abraham A. Gutnicki
       Stacy J. Flanigan
   Email: agutnicki@gutnicki.com
        sflanigan@gutnicki.com

with a copy to:

   Gulko Schwed LLP
   525 Chestnut Street, Suite 207
   Cedarhurst, New York 11516
   Attn: Steven Gitelis
   E-mail: steven@gulkoschwed.com

or such other address that any party designates to the other by written notice given in the manner stated above.  Any notice sent by electronic mail shall be deemed delivered upon transmission, so long as said transmission is evidenced by proof of said transmittal, and sent before 5:00 p.m. local time at the place of the recipient and if sent after 5:00 p.m. shall be deemed delivered on the next business day.  Notices from counsel to Lessor shall for all purposes hereunder constitute notice from Lessor.  Notices from counsel to Lessee shall for all purposes hereunder constitute notice from Lessee.

37.8    Each party agrees at any time, and from time to time, upon not less than ten (10) days prior written request from the other party, to execute, acknowledge and deliver to the other party a statement in writing, certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified, and stating the modifications), the dates to which the Rent has been paid, the amount of the Additional Rent held by Lessor, and whether to the best Knowledge of such party an Event of Default has occurred or whether any events have occurred which, with the giving of notice or the passage of time, or both, could constitute an Event of Default hereunder, it being intended that any such statement delivered pursuant to this section may be relied upon by any prospective assignee, mortgagee or purchaser of the fee interest in the Demised Premises or of this Lease.

37.9    All of the provisions of this Lease shall be deemed and construed to be "conditions" and "covenants" as though the words specifically expressing or importing covenants and conditions were used in each separate provision hereof.

37.10    Any reference herein to the expiration of this Lease shall be deemed to include any termination thereof by expiration, or pursuant to Articles referring to earlier termination.

37.11    The headings and titles in this Lease are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of this Lease, or in any way affect this Lease.

37.12    This Lease contains the entire agreement between the parties and any executory agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.  This Lease cannot be changed orally or terminated orally.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

37.13    Except as otherwise herein expressly provided, the covenants, conditions and agreements in this Lease shall bind and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

37.14    All nouns and pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons, firm or firms, corporation or corporations, entity or entities or any other thing or things may require. "Any" or "any" shall mean "any and all"; "or" shall mean "and/or"; "including" shall mean "including, but not limited to".

37.15    This Lease may be executed in counterparts, each of which shall for all purposes be deemed an original, and all of such counterparts shall together constitute one and the same agreement.  This Lease may be executed by facsimile or .pdf signature and a facsimile or .pdf signature shall constitute an original for all purposes.

37.16    If any term or provision of this Lease shall to any extent be held invalid or unenforceable, the remaining terms and provisions of this Lease shall not be affected thereby, but each term and provision shall be valid and be enforced to the fullest extent permitted by law.

37.17    This Lease shall be construed in accordance with the laws of the State of Missouri without regard to conflict of laws principles.

37.18    With respect to disputes, problems or claims arising out of or in connection with this Lease ("**Disputes**"), the parties shall, in good faith, use their reasonable best efforts to resolve the Dispute.  If within ten (10) days of the arising of the Dispute, the parties are unable to resolve the Dispute in good faith, both parties shall make good faith efforts to agree upon and engage a third-party arbitrator.   If after thirty (30) days from the good faith effort to agree upon and engage a third party arbitrator, the Members are unable to agree upon an, either party may submit to final and binding arbitration before the Chicago Rabbinical Council (the "**Beit Din**").  The decision of the Beit Din shall be binding upon the parties with respect to all disputes submitted.    The provisions of this Section 38.20 may be enforced by any court of competent jurisdiction, and the parties seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the parties against whom enforcement is ordered.  The fees and expenses of such Beit Din shall be borne by the non-prevailing party, as determined by the Beit Din. The parties hereto agree that this Section 38.20 has been included to rapidly and inexpensively resolve any disputes between them with respect to the matters described above, and that this paragraph shall be grounds for dismissal of any court action commenced by any party with respect to a dispute arising out of such matters.

37.19    It is expressly understood and agreed that except as otherwise expressly provided herein, this Lease shall not be construed as creating any personal liability whatsoever against any member, officer, director, shareholder or agent of Lessor and/or of Lessee and in particular without limiting the generality of the foregoing, there shall be no personal liability to pay any obligations set forth herein or to perform any covenant, either expressed or implied, herein contained, and that, except as otherwise provided herein, all personal liability of any member, officer, director, shareholder or agent of Lessor and/or of Lessee of every sort, if any, is hereby expressly waived by the other party hereto.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

37.20    The term "Knowledge" as used herein shall be deemed to mean the best of a Person's knowledge, and of the principals, officers and agents of such Person.  Any fact or circumstance that a Person and their principals, officers or agents reasonably should know assuming commercially reasonable best efforts were utilized, shall be deemed the Knowledge of such Person.  The term "commercially reasonable best efforts" shall mean the efforts that a commercially reasonable Person desirous of achieving a result would use in similar circumstances to achieve that result as expeditiously as reasonably practicable, provided, however, that a Person required to use commercially reasonable best efforts under this Lease will not thereby be required to take any action that would result in a material adverse change in the benefits to such Person of this Lease or the transactions contemplated hereby or to make any change in its business, incur any extraordinary fees or expenses or incur any other material burden.  "Person" shall mean any individual, partnership (general and/or limited), association, corporation, limited liability company, trust, joint venture or other legal entity of any and every nature whatsoever.

37.21    If any time period for giving notice or taking action hereunder expires on a day which is a Saturday, Sunday or holiday in the State of Missouri is located, the time period shall be automatically extended to the business day immediately following such Saturday, Sunday or holiday.

37.22    Upon demand by either party, Lessor and Lessee agree to execute and deliver a Memorandum of Lease in recordable form so that the same may be recorded by either party and the costs thereof shall be borne by the party requesting recordation of the Memorandum.

[Signature Page Follows]

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be signed by persons authorized so to do on behalf of each of them respectively the day and year first above written.

**LESSOR**:

**West County Property Holdings, LLC,**
a Missouri limited liability company

By: _____
      Chaim Rajchenbach
      Authorized Signatory

**LESSEE:**

**WCCC OP LLC,**
a Delaware limited liability company,

By: _____
      _____
      _____

*Signature Page – Lease Agreement*

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be signed by persons authorized so to do on behalf of each of them respectively the day and year first above written.

**LESSOR**:

**West County Property Holdings, LLC,**
a Missouri limited liability company

By: _____
_____
_____


**LESSEE:**


**WCCC OP LLC,**
a Delaware limited liability company**,**

By: _____
Samuel Goldner
Authorized Signatory

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

# EXHIBIT A

# LEGAL DESCRIPTION

See attached.

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**Exhibit "A"**

**Legal Description**

Real property in the City of Ballwin, County of St Louis, State of Missouri, described as follows:

PARCEL 1:

A LOT OR PARCEL OF GROUND IN MANCHESTER HILLS, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 24, PAGES 46 AND 47 OF THE ST. LOUIS COUNTY MISSOURI RECORDS, AND BOUNDED AS FOLLOWS: NORTH BY LOT 13 IN BLOCK 1 OF SAID SUBDIVISION AND SOLLEY DRIVE AS SHOWN ON SAID PLAT, WEST BY LOTS 14 TO 21 IN BLOCK 1, SOUTH BY LOTS 13 TO 18 IN BLOCK 3 AND EAST BY LOTS 1 TO 10 IN BLOCK 3 OF SAID SUBDIVISION AND SHOWN ON THE PLAT OF MANCHESTER HILLS AS 'NOT SUBDIVIDED.'

PARCEL 2:

LOT 1 IN BLOCK 2 OF MANCHESTER HILLS, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 24, PAGES 46 AND 47 OF THE ST. LOUIS COUNTY MISSOURI RECORDS; EXCEPTING THEREFROM THAT PART OF SAID PROPERTY CONDEMNED BY THE STATE OF MISSOURI, AND EX REL STATE HIGHWAY COMMISSION OF MISSOURI FOR THE CONSTRUCTION AND MAINTENANCE OF MANCHESTER ROAD, U.S. ROUTE NO. 100 AND CONDEMNATION SUIT NO. 240993 IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## EXHIBIT B

## INTENTIONALLY OMITTED

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT C**
**Form of Exit OTA**

See attached.

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

OPERATIONS TRANSFER AGREEMENT
by and between

WCCC OP LLC
a Delaware limited liability company


"Old Operator"

and

[_____]
a [_____]
"New Operator"


Dated as of:  [_____ __], [_____]

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## OPERATIONS TRANSFER AGREEMENT

This OPERATIONS TRANSFER AGREEMENT (this "Agreement") is entered into this [____] day of [_____], [____] (the "Effective Date") by and between **WCCC OP LLC**, a Delaware limited liability company ("Old Operator"), and **[_____]**, a [_____] ("New Operator").

### WITNESSETH:

**WHEREAS**, **WEST COUNTY PROPERTY HOLDINGS, LLC,** a Missouri limited liability company ("Lessor") currently leases that certain real property improved with a 137 skilled care bed nursing home facility (the "Facility"), commonly known as "West County Care Center" (the "Property") to Old Operator;

**WHEREAS**, upon the Closing (as defined herein), New Operator will lease the Facility and other related assets from Lessor, under that certain Lease Agreement, commencing as of the "Closing Date" (as defined herein), by and between Lessor and New Operator (the "Lease");

**WHEREAS**, Old Operator currently has the sole rights to act as operator of the Facility and wishes to assign such rights to New Operator;

**WHEREAS**, Old Operator currently owns certain furniture, fixtures and equipment and other items of personal property, including as located on, used in connection with, the operation of the Facility (the "Personal Property"); and

**WHEREAS**, in order to ensure an orderly transition of operations of the Facility, the parties hereto desire to enter into this Agreement.

**NOW, THEREFORE**, for the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged by the parties hereto, the parties hereto agree as follows:

1.      **CLOSING**.  The closing ("Closing") under this Agreement shall occur when all the closing conditions set forth in Section 3 below are satisfied or such other date as mutually agreed upon by the Old Operator and New Operator (the "Closing Date").  New Operator shall use its best efforts to obtain all governmental or quasi-governmental approvals that are necessary or appropriate in order for New Operator to operate the Facility under Missouri law, including a nursing home license (the "License") issued by the Missouri Department of Health and Senior Services ("DHSS"), and also use best efforts to begin to obtain Medicare and Medicaid and managed care provider agreements (the "Provider Agreements") with respect to the Facility (the License and Provider Agreements, collectively, the "Regulatory Approvals").

1

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

2.    **DUE DILIGENCE; COOPERATION; INTERIM OPERATIONS OF THE FACILITY.**

a.    Old Operator agrees to cooperate with New Operator, and New Operator agrees to cooperate with Old Operator to effect an orderly transfer of the operation of the Facility.  Upon reasonable prior notice to Old Operator, New Operator and its agents, employees and contractors shall have the right to enter the Property during reasonable business hours to conduct any necessary diligence and, subject to Old Operator's approval, conduct interviews with employees.

b.    From the Effective Date until the earlier of the Closing Date or the date this Agreement is terminated, Old Operator shall operate the Facility in substantially the same manner as it has heretofore operated, use commercially reasonable and diligent efforts to preserve intact the business operations and relationships of the Facility with third parties and use best efforts to keep available the services of all of the Facility's employees, including but not limited to the Administrator, the Director of Nursing and the employee(s) responsible for public relations and marketing.  Without limiting the generality of the preceding sentences, until the earlier of (i) the Closing Date, or (ii) the termination of this Agreement, Old Operator shall:

i.   operate the Facility in the normal course of business and in compliance with all applicable laws, ordinances, orders, rules, regulations and requirements of any federal, state or municipal governmental agency or authority;

ii.   maintain the Facility's licensure status, and Medicare and Medicaid provider agreements, in compliance with all applicable laws, rules and regulations;

iii.   not sell, transfer or otherwise dispose of any of the Supplies (as hereinafter defined) except in the ordinary course of business consistent with the prior practices of Old Operator, in which event Old Operator shall replace the same with similar property of equal or greater quality, value and usefulness;

iv.   not enter into any contract, other than residential contracts, which shall become the obligation of New Operator nor modify, cancel, accept the surrender of or renew (except when any such acceptance of surrender or renewal is non-discretionary) any Contract (as hereinafter defined) which exists at present without New Operator's prior written consent;

v.   not decrease the private pay rates of the residents of the Facility, except with the prior written consent of New Operator;

vi.   maintain records in accordance with all applicable federal and state laws and in such manner so that all records will be prepared in a consistent manner and will be current, complete, accurate and true;

vii.   not increase or promise to increase any wages or benefits of, or grant or promise to grant any bonuses to, any of the employees of the Facility without the prior written consent of New Operator except those reasonable bonuses and wage

2

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

increases in the ordinary course of business consistent with Old Operator's past practice;

viii. not take any action which will or would cause any of the representations or warranties in this Agreement to become untrue or be violated;

ix. use reasonable commercial efforts to preserve the present residency occupancy levels of the Facility and the goodwill with all of the suppliers, residents and others having business relations with the Old Operator or the Facility;

x. keep the Property free and clear of all liens, claims and encumbrances and promptly remove any created or caused by Old Operator or its employees or agents;

xi. perform all of its obligations in respect of the Facility whether pursuant to any contracts, or other requirements;

xii. cooperate with New Operator as necessary for New Operator's receipt of licensure and enrollment of New Operator in the Medicare and Medicaid programs; and

xiii. promptly inform New Operator in writing of any material event adversely affecting the ownership, use, occupancy, operation, management or maintenance of the Facility, whether or not insured against.

3.    **CONDITIONS PRECEDENT.**

a. The effectiveness of this Agreement and New Operator's obligation to consummate the transactions contemplated in this Agreement shall be subject to the following conditions precedent on and as of the Closing Date to the reasonable satisfaction of New Operator or the waiver thereof by New Operator, which waiver shall be binding upon New Operator only to the extent made in writing and dated as of the Closing Date:

ii. Old Operator shall have duly and timely performed and fulfilled all of its duties, obligations, promises, covenants and agreements hereunder;

iii. Each of the representations and warranties of Old Operator contained in this Agreement shall be true and correct in all respects as of and on the Closing Date;

iv. Old Operator shall not be in breach of any term, provision or condition of this Agreement;

v. Old Operator shall deliver to New Operator on or before the Closing Date the following, each of which shall be in form and substance satisfactory to New Operator:

3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

A.   A duly executed assignment by Old Operator, in substantially the form annexed hereto as Exhibit A (the "General Assignment"), of all of Old Operator's right, title and interest in, to and under:

i.the Patient Trust Funds and Property (as defined herein);

ii.all resident contracts or other agreements with residents of the Facility;

iii.all licenses, permits, accreditations, Medicaid and Medicare contracts, and other regulatory approvals, and all rights of Old Operator under any government or non-government provider agreements or any other third party payor programs, if any, issued by any federal, state, municipal or local governmental authority relating to the use, maintenance or operation of the Facility running to, or in favor of, Old Operator, to the extent legally assignable (including all modifications thereto or renewals thereof) (the "Permits");

iv.all guaranties or warranties then in effect, if any, with respect to the Facility and the Personal Property (the "Warranties");

v.the trade name "West County Care Center" as well as any trademarks, logo-types or other similar descriptive items associated with such name, and all of the goodwill symbolized and associated with such name; and

vi.any other assets required to be assigned to New Operator pursuant to this Agreement.

B.   a duly executed Bill of Sale;

C.   a certificate of Old Operator, in a form reasonably acceptable to New Operator, executed by a duly authorized [officer] of Old Operator, dated the Closing Date, to the effect that the representations and warranties of Old Operator set forth in this Agreement are true and complete on and as of the Closing Date;

D.   a certificate from Old Operator, executed by a duly authorized manager of Old Operator, certifying the resolutions authorizing the transactions contemplated hereby, and appearing on said certificate shall be the true and correct signatures of all

4

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

authorized persons who have executed this Agreement (and all documents to be executed and delivered pursuant hereto, (the "Other Documents"));

E.    if applicable, any local filings necessary and Bulk Sales Stop Orders, dated as of the Closing Date, and either a full release of claims from the Missouri Department of Revenue with respect to all debts owed by Old Operator thereunder, or a statement setting forth the amount to be withheld by New Operator, and such amounts shall be held in escrow by Title Company pending the full release of claims by the Missouri Department of Revenue;

F.    a letter from the Missouri Department of Revenue dated no later than ten (10) days before the Closing Date, which certifies that Old Operator has no tax due to the State of Missouri (the "Tax Clearance Letter");

G.    the Closeout Report described in Section 5(e) below;

H.    the Medicaid Agreement described in Section 6(d) below, or, if eligible, the Cost Report Waiver Agreement described in Section 6(d) to obtain an exception pursuant to 13 CSR 70-10.015(10)(A)10.B(III);

I.    counterpart copies of all Warranties; and

J.    copies of all Permits.

vi.    As of and on the Closing Date there shall not have been imposed against Old Operator, nor shall have Old Operator received notice of (a) any civil monetary penalty ("CMP") or other federal, state or local fine and/or penalty or (b) any withholding, recoupment, repayment, recapture and/or recovery of any alleged overpayment by Medicaid or Medicare and/or any alleged underpayment of any tax and/or assessment, including but not limited to state bed tax or assessment or (c) that it is not in substantial compliance with any state or federal regulations, rule or law;

vii.    On or before the Closing Date, Old Operator shall have transferred to New Operator the Patient Trust Funds and Property on the Closing Date in compliance with all governmental statutes, rules and regulations with respect to the transfer of such Patient Trust Funds and Property and in accordance with the provisions of Section 5 below;

viii.    Between the Effective Date and the Closing Date, there shall not have been any material adverse change in the regulatory status and/or condition of any of Old Operator's licenses, permits and/or certifications, and the Medicare and Medicaid rates of the Facility, and/or the business operations, financial conditions or prospects of the Facility;

5

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

ix.     On the Closing Date, there shall not be any lawsuits filed or threatened against Old Operator which are not covered by insurance and being defended, subject to policy limits and any reservation of rights; nor shall there be any actions, suits, claims or other proceedings, pending or threatened, or injunctions or orders entered, pending or threatened against Old Operator, to restrain or prohibit the consummation of the transactions contemplated hereby;

x.      Samuel Goldner, an individual, will deliver a personal guaranty with a maximum amount of Three Hundred Thousand and No/100 Dollars ($300,000.00) attached hereto as Exhibit G in favor of New Operator, as security for Old Operator's obligations in connection with certain obligations of Old Operator that by the terms of this Agreement survive the Closing Date;

xi.     To the extent applicable, Old Operator shall have delivered evidence satisfactory to New Operators that all PPP loans were forgiven, no Medicare Advance Payments were accepted and still outstanding and provide a letter of credit on terms reasonably satisfactory to New Operator with respect to stimulus funds received by Old Operator and not returned, but not including the funds related to the infection control distribution;

xii.    During the period that is seven (7) days prior to the anticipated Closing Date there shall be no more than five (5) new diagnoses of COVID-19 among in-house residents and Facility staff as revealed by testing performed by Old Operator, which Old Operator shall perform in the ordinary course of business (the "COVID-19 Condition").  Faculty Staff members exposed, but not working at the facility, will not be counted.  In the event the COVID-19 Condition is not satisfied, (a) Old Operator shall promptly give New Operator notice of the same, and (b) New Operator shall have the right in its sole discretion to elect by written notice to Old Operator to (i) waive satisfaction of the COVID-19 Condition or (ii) delay the Closing Date for seven (7) days from the date of Old Operator's notice in order to determine if the COVID-19 Condition can be subsequently satisfied during such additional seven (7) day period.

xiii.   For the seven (7) days prior to the business day before the Closing Date, the average census of residents with verified payor sources at the Facility shall not be 10% less than the average census of residents with verified payor sources at the for the seven (7) day period ending on the Effective Date; provided however, the sole remedy of New Operator is an extension of the Closing Date, not to exceed thirty (30) days.

xiv.    New Operator shall have been issued or otherwise obtained all consents and all Permits that are not otherwise assigned under the General Assignment that are necessary for New Operator's legal operation of the Facility as of the Closing Date in substantially the same manner as operated by Old Operator. The foregoing contemplates without limitation that New Operator shall have received, to the extent required, all consents for New Operator's assumption of the Assumed Contracts; and

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

xv.    New Operator shall have received notice from DHSS reasonably satisfactory to New Operator that, upon the consummation of the transactions contemplated under this Agreement, DHSS is prepared to issue a Temporary Operating Permit effective upon the Closing pending final receipt of evidence of the effectiveness of the Closing.

b.    The effectiveness of this Agreement and Old Operator's obligation to consummate the transactions contemplated in this Agreement shall be subject to the following conditions precedent on and through the Closing Date to the reasonable satisfaction of Old Operator or the waiver thereof by Old Operator, which waiver shall be binding upon Old Operator only to the extent made in writing and dated as of the Closing Date:

1. New Operator shall have duly and timely performed and fulfilled all of its duties, obligations, promises, covenants and agreements hereunder;

xvi.    Each of the representations and warranties of New Operator contained in this Agreement shall be true and correct through the Closing Date;

xvii.    New Operator shall not be in breach of any term, provision or condition of this Agreement;

xviii.    New Operator shall have executed and delivered to Old Operator the Other Documents, as applicable;

xix.    New Operator shall deliver to Old Operator on or before the Closing Date the following, each of which shall be in form and substance reasonably satisfactory to Old Operator:  (1) a certificate of New Operator, executed by a duly authorized manager of New Operator, dated the Closing Date, to the effect that the representations and warranties of New Operator set forth in this Agreement are true and complete on and as of the Closing Date and (2) a certificate from New Operator, executed by a duly authorized [manager] of New Operator, certifying the resolutions authorizing the transactions contemplated hereby and appearing on said certificate shall be the true and correct signatures of all authorized persons who have executed this Agreement.

In the event that either of the parties hereto (a "Waiving Party") waives a condition precedent to its performance hereunder, or otherwise elects to proceed with the Closing despite the fact that one or more conditions precedent to its performance have not been satisfied, such action by the Waiving Party shall in no way be deemed a waiver of any payment, indemnification or other rights of the Waiving Party with respect to such condition, and the Waiving Party shall be entitled, following the Closing, to pursue any and all available remedies at law or equity with respect thereto.

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

4.   **CONVEYANCE OF SUPPLIES.**

a.    In consideration of this Agreement, on the Closing Date, Old Operator shall deliver to New Operator a bill of sale (the "Bill of Sale") for the Supplies (as defined herein), in the form annexed hereto as Exhibit C, as shall be necessary to convey to New Operator good and marketable right, title and interest in and to the Supplies and any other property of Old Operator used in connection with the operation of the Facility, free and clear of all liens, claims, encumbrances, charges, restrictions, rights or interests of others of any kind.

b.    Old Operator shall have no obligation to deliver the Supplies to any location other than that at which each item of Supplies is currently located, and New Operator agrees that the presence of the Supplies at the Facility on the Closing Date shall constitute delivery thereof.

5.   **TRANSFER OF PATIENT TRUST FUNDS.**

a.    On or prior to the Closing Date, Old Operator shall provide to New Operator a true, correct and complete accounting (properly reconciled) certified as being true, correct and complete by Old Operator of any patient trust funds and an inventory of all residents' property held by Old Operator on the Closing Date for patients at the Facility, a copy of which is attached hereto as Schedule 5(a) ("Patient Trust Funds and Property").

b.    Old Operator hereby agrees to transfer, or to cause to be transferred, to New Operator the Patient Trust Funds and Property on the Closing Date.  Old Operator shall comply with all governmental statutes, rules and regulations with respect to the transfer of such Patient Trust Funds and Property.  New Operator hereby agrees that it will accept the Patient Trust Funds and Property in trust for the residents, in accordance with applicable statutory and regulatory requirements; provided, however, such transfer shall not relieve Old Operator of its custodial and fiduciary responsibilities for such funds and property to the beneficiaries thereof for the period prior to the Closing Date.

c.    Old Operator will indemnify, defend and hold New Operator harmless from all liabilities, claims, demands and causes of action of any nature whatsoever, including reasonable attorneys' fees, in the event the amount of funds, if any, transferred to New Operator did not represent the full amount of the funds delivered to Old Operator as custodian or with respect to any Patient Trust Funds and Property delivered, or claimed to have been delivered, to Old Operator, but which were not delivered by Old Operator to New Operator, or for claims which arise from actions or omissions of Old Operator with respect to the Patient Trust Funds and Property prior to the Closing Date.

In addition to and not in lieu, place, stead or substitution of any other indemnity set forth herein, New Operator will indemnify, defend and hold Old Operator harmless from all liabilities, claims, demands and causes of action of any nature whatsoever, including reasonable attorneys' fees, in the event a claim is made against Old Operator by a patient for his/her Patient Trust Funds and Property where said funds were transferred to New Operator pursuant to the terms hereof, or for claims which arise from actions or omissions

**8**

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

of New Operator on and after the Closing Date with respect to Patient Trust Funds and Property actually received by New Operator.

d. In connection with the forgoing obligations, the parties hereto agree that the parties hereto shall execute and deliver a Closeout Report, substantially in the form attached hereto as **Exhibit D** (the "Closeout Report").

6. **REGULATORY APPROVALS; COST REPORTS; OVERPAYMENTS, CIVIL MONETARY PENALTIES.**

a. In the event that New Operator shall be unable to obtain any of the Regulatory Approvals prior to the Closing Date, then, subject to applicable law, until such time New Operator obtains such Regulatory Approval, Old Operator shall authorize New Operator to use such Regulatory Approval of Old Operator, provided that New Operator shall indemnify and hold Old Operator harmless on account of any liabilities that result from New Operator's use of such Regulatory Approval.

b. Effective on the Closing Date, Old Operator sells, assigns and conveys to New Operator the Medicare provider number in use at the Facility (the "Existing Medicare Provider Number"). Notwithstanding the foregoing, the Old Operator retains any and all rights and liabilities relating to the Existing Medicare Provider Number relating to any and all periods preceding the Closing Date. Old Operator and New Operator shall execute any and all documents necessary and will otherwise cooperate in connection with the assignment of the Existing Medicare Provider Number. During the pendency of New Operator's CMS Form 855A (the "CHOW"), New Operator may bill Medicare under Old Operator's name and the Existing Medicare Provider Number, until the Intermediary changes the electronic funds transfer account or special payment address to the New Operator. Notwithstanding the foregoing, New Operator shall be responsible for all rights and liabilities relating to the Existing Medicare Provider Number relating to any and all periods on or after the Closing Date. This Section 6 is intended to satisfy the requirements of Chapter Section 15.7.7.1.5 of the Medicare Program Integrity Manual.

c. Effective on the Closing Date, subject to applicable law, Old Operator shall, upon the request of New Operator, sell, assign and convey to New Operator the Medicaid provider number in use at the Facility (the "Existing Medicaid Provider Number"). Notwithstanding the foregoing, the Old Operator retains any and all rights and liabilities relating to the Existing Medicaid Provider Number relating to any and all periods preceding the Closing Date. Old Operator and New Operator shall execute any and all documents necessary and will otherwise cooperate in connection with the assignment of the Existing Medicaid Provider Number. New Operator shall be responsible for all rights and liabilities relating to the Existing Medicaid Provider Number relating to any and all periods on or after the Closing Date. During the pendency of New Operator's Medicaid change of ownership. New Operator may bill Medicaid under Old Operator's name and the Existing Medicaid Provider Number, until Medicaid changes the electronic funds transfer account or special payment address to the New Operator. Notwithstanding the foregoing, New Operator shall be responsible for all rights and liabilities relating to the Existing Medicaid Provider Number relating to any and all periods on or after the Closing Date.

9

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

d.      Old Operator shall prepare and file with the appropriate Medicare and Medicaid agencies its final cost reports with respect to its operation of the Facility as soon as reasonably practicable after the Closing Date, but in any event prior to the expiration of the period of time as may be required by law for the filing of each such final cost report under the applicable third-party payor program, it being specifically understood and agreed that the intent and purpose of this provision is to ensure that the reimbursement paid to New Operator for the period beginning on the Closing Date is not delayed, reduced or offset in any manner as a result of Old Operator's failure to timely file such final cost reports.  To the extent that there are any delays in payment by any third party payor to New Operator as a result of Old Operator's failure to timely file its cost reports under this Section 6(d), upon demand of New Operator, Old Operator shall pay to New Operator interest on the amounts withheld by such third party payor(s) equal to the then current prime rate of interest (as announced from time to time by the *Wall Street Journal*) plus three percent (3%) (the "Default Rate").  Old Operator agrees to cooperate with New Operator as necessary for New Operator to enroll in the Medicare and Medicaid programs.  In connection with Old Operator's obligations under this Section 6(d), the parties acknowledge that 13 CSR 70-10.015(10)(E) sets forth certain provisions concerning a change in ownership of a provider certified for participation in the Medicaid program, and that pursuant to 13 CSR 70-10.015(10)(E), the Missouri Department of Social Services ("DSS") will withhold certain Medicaid reimbursement amounts unless DSS receives assurances satisfactory to DSS that the final Medicaid cost report of Old Operator will be filed on a timely basis. To that end, the parties hereto agree to execute and deliver a Medicaid Agreement in the form attached hereto as **Exhibit E** (the "Medicaid Agreement"), unless an exception is granted to Old Operator by the Missouri Medicaid program pursuant to 13 CSR 70-10.015(10)(A)10.B(III) that waives the requirement for Old Operator to file a closing cost report.  If eligible under 13 CSR 70-10.015(10)(A)10.B(III) to obtain a waiver, the parties shall cooperate to apply to the Missouri Medicaid program for such an exception pursuant to 13 CSR 70-10.015(10)(A)10.B(III) by using the Cost Report Waiver Agreement in the form attached hereto as **Exhibit F** the ("Cost Report Waiver Agreement").

e.      Each party hereto agrees to notify the other within three (3) calendar days after receipt of any notice of any claim of recapture by DSS, CMS, OIG or any other governmental or quasi-governmental authority with respect to an alleged Medicare or Medicaid overpayment or any alleged underpayment of any tax or assessment for periods relating prior to the Closing Date (collectively "Recapture Claim").  For the avoidance of doubt, the term "Recapture Claim" shall include any recapture, recoupments or other claims related to use of CARES Act funds or other monies related to Covid-19.  To the extent ascertainable on or prior to the Closing Date, Old Operator shall pay or cause to be paid any Recapture Claim which is for the periods prior to the Closing Date; provided, however, nothing herein shall be deemed to prevent or restrict Old Operator from contesting any such Recapture Claim, and, if, based on the advice of its attorneys, by paying such Recapture Claim, Old Operator shall have forfeited its right to such contest, Old Operator may delay paying such Recapture Claim until final resolution of such contest, so long as Old Operator complies with the provisions of this Section 6.

10

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

f.      In the event DSS, CMS, OIG or any other governmental or quasi governmental authority or agency making payments to New Operator for services performed at the Facility on or after the Closing Date make any Recapture Claim for any period prior to the Closing Date, then Old Operator shall be entitled to contest such Recapture Claim; provided however, that New Operator shall be allowed the opportunity to participate in all meetings, and be provided with copies of all audit adjustments and workpapers.  Old Operator and New Operator shall cooperate to resolve such audit to their mutual satisfaction.  In the event Old Operator fails to pursue any issue or issues raised in any such appeal, New Operator may, at its own expense, pursue an appeal of such issue or issues and Old Operator will cooperate fully with New Operator in such appeal, including by providing copies of any documentation required to substantiate costs reported on the cost reports.

g.      If Old Operator does not prevail with regard to such contest, Old Operator hereby agrees to save, indemnify, defend and hold New Operator harmless from and against any loss, damage, injury or expense incurred by New Operator arising from or related to any such Recapture Claim.  In connection with the foregoing indemnification obligation, in the event that CMS, DSS or any other governmental or quasi governmental authority or agency or other third party payor source withholds amounts from New Operator's reimbursement checks as a result of such Recapture Claim, Old Operator shall pay such amounts to New Operator within ten (10) days following New Operator's demand therefor.  Such payment shall be made regardless of whether Old Operator is then contesting such Recapture Claim.

h.      Old Operator shall be and remain obligated for and shall pay on or before the date due thereof all amounts of any license fees/taxes or other amounts payable to any other government authority with jurisdiction over the Facility accrued through the Closing Date, including but not limited to any Medicaid provider taxes owed to the DSS or state bed tax or assessment.  Old Operator shall provide to New Operator, on or before the Closing Date, evidence reasonably satisfactory to New Operator of payment of all of such fees and taxes.

i.      Old Operator shall at its sole and exclusive cost and expense be liable and responsible for the correction of all violations cited by DHSS in any survey ("Survey") prior to, on or after the Closing Date as detailed in the Statement of Deficiencies issued by DHSS ("Statement"), if any, accompanying said Survey, and all proposed or imposed remedies, including but not limited to any CMP, that result from a condition or incident at the Facility prior to the Closing Date or as a result of an action or inaction of Old Operator prior to the Closing Date, until the same are cured and, if applicable, any proposed denial of payment by, or termination of certification to participate in, the Medicare or Medicaid programs set forth in the Statement or otherwise resulting from the Survey or Statement is withdrawn.

j.      Old Operator shall deliver to New Operator copies of any Medicare and Medicaid cost reports for the Facility that have not been filed as of the Effective Date, for New Operator's review, at least ten (10) days prior to filing of such reports, and provide New Operator with reasonable access to the underlying documentation for such reports.

11

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

7.      **CONTRACTS; RESIDENT AGREEMENTS.**

a.      As soon as practicable after the Effective Date, the Old Operator shall deliver to the New Operator true, accurate and complete copies of all Contracts, a schedule of which is attached hereto as Schedule 7(a).

b.      New Operator shall deliver written notice to Old Operator as to which of the Contracts New Operator desires to assume pursuant to the General Assignment and continue in full force and effect after the Closing Date (the "Assumed Contracts"), a listing of which shall then be attached hereto as Schedule 7(b).  Any Contracts that New Operator does not indicate it desires to assume and continue shall be deemed rejected by New Operator ("Rejected Contracts") and Old Operator shall terminate such Rejected Contracts, provided that such termination shall be made in compliance with the applicable provisions under such Rejected Contracts.

c.      Old Operator shall transfer, convey and assign to New Operator, in accordance with the terms of the General Assignment, on the Closing Date all existing agreements with residents and any guarantors thereof, to the extent assignable by Old Operator (excluding only the right to any payments for periods prior to the Closing Date).

d.      In addition to and not in lieu of any other indemnity set forth elsewhere herein, Old Operator hereby agrees to indemnify, protect, save, defend and hold harmless New Operator from and against any and all liabilities, obligations, claims, demands and causes of action of any nature whatsoever, including reasonable attorneys' fees, asserted against or incurred by New Operator arising out of and/or connected with (i) any third parties claiming to have rights under contracts or other agreements that are not set forth or described in Schedule 7(a) or (ii) any Rejected Contracts.

8.      **NO ASSUMPTION OF LIABILITIES**.

a.      Other than as specifically set forth in this Agreement, New Operator shall not assume and shall not be liable for, and Old Operator shall indemnify New Operator for, any debts, liabilities or obligations of the Old Operator including, but not limited to, any (i) expenses that accrue or arise prior to the Closing Date; (ii) liabilities or obligations of the Old Operator to its creditors, shareholders, partners, members or owners, (iii) liabilities or obligations of the Old Operator with respect to any Contracts, acts, events or transactions occurring prior to, on or after the Closing Date, (iv) liabilities or obligations of the Old Operator for any federal, state, county or local taxes applicable to or assessed against the Old Operator or the assets or business of the Old Operator, or (v) any contingent liabilities or obligations of the Old Operator, whether known or unknown by the Old Operator or New Operator, (vi) liabilities or obligations of the Old Operator relating to any of its employees, or (vii) any other liabilities resulting from any act or failure to act by Old Operator before the Closing Date.

b.      Old Operator shall not assume and shall not be liable for any debts, liabilities or obligations of the New Operator including, but not limited to, any (i) expenses that accrue or arise on or after the Closing Date, (ii) liabilities or obligations of the New

4813-2496-6622, v. 3

Operator to its creditors, shareholders, partners, members or owners, (iii) liabilities or obligations of the New Operator with respect to any Assumed Contracts, acts, events or transactions occurring before, on or after the Closing Date, (iv) liabilities or obligations of the New Operator for any federal, state, county or local taxes applicable to or assessed against the New Operator or the assets or business of the New Operator, or (v) any contingent liabilities or obligations of the New Operator, whether known or unknown by the New Operator or Old Operator, or (vi) any other liabilities resulting from any act or failure to act by New Operator on and after the Closing Date.

c.      Except as specifically provided in this Agreement, New Operator shall have no duty whatsoever to take any action or receive or make any payment or credit arising from or related to any services provided or costs arising from or related to any services provided or costs incurred in connection with the management and operation of the Facility prior to the Closing Date, including, but not limited to, any matters relating to Contracts, cost reports, collections, audits, hearing, or legal action arising therefrom, and Old Operator shall have no duty whatsoever to take any action or receive or make any payment or credit arising from or related to any services provided or costs arising from or related to any services provided or costs incurred in connection with the management and operation of the Facility on or after to the Closing Date, including, but not limited to, any matters relating to cost reports, collections, audits, hearing, or legal action arising therefrom.

9.    **ACCOUNTS RECEIVABLE; ACCOUNTS PAYABLE.**

a.      Old Operator shall retain the right to collect all unpaid accounts receivable as of the close of business on the day prior to the Closing Date with respect to the Facility, but only to the extent that such accounts receivable relate to services rendered prior to the Closing Date. All collections shall be conducted in accordance with normal business practices and no patients or residents shall be unreasonably harassed in the collection of such amounts.  Old Operator shall engage sufficient personnel to bill and collect Old Operator's accounts receivable using Old Operator's legacy billing system, which Old Operator shall maintain as required to bill and collect its accounts receivable hereunder.

b.      If at any time after the Closing Date, New Operator shall receive any payment from any federal or state agency, which payment includes any reimbursement with respect to payments or underpayments made to Old Operator for services rendered prior to the Closing Date, then New Operator shall remit such payments to Old Operator. New Operator and Old Operator shall send copies of all Medicare and Medicaid remittance advices to the other party for purposes of recording and pursuing accounts receivable for the period of twelve (12) months following the Closing Date and thereafter as reasonably requested by each party.  If at any time after the Closing Date, Old Operator shall receive any payment from any federal or state agency, which payment represents reimbursement with respect to payments or underpayments made to New Operator for services rendered on or after the Closing Date, then Old Operator shall remit such payments to New Operator. Any such remittances pursuant to this Section 9(b) shall occur within ten (10) days from the date the party required to make such remittance receives payment thereof, and if not paid in full by such date, any amount outstanding shall bear interest at the Default Rate until paid in full.

13

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

c.      Payments received by New Operator or Old Operator from non-governmental payment sources shall be paid to the party designated in such payments entitled to the payments for the services provided thereunder within ten (10) days from the date the party required to make such remittance receives payment thereof, and if not paid in full by such date, any amount outstanding shall bear interest at the Default Rate until paid in full.  Any non designated payments received by New Operator or Old Operator from non governmental payments sources after the Closing Date shall first be applied to any pre Closing Date monthly balances due to Old Operator for services provided prior to the Closing Date for the first sixty (60) days after Closing Date, with the excess if any, applied to any post Closing Date monthly balances due for services rendered by New Operator on or after the post Closing Date.  Any non designated payments received by New Operator or Old Operator from non governmental payments sources after sixty (60) days after the Closing Date shall first be applied to any post Closing Date monthly balances due to New Operator for services provided on or after the Closing Date, with the excess if any, applied to any pre Closing Date monthly balances due for services rendered by Old Operator prior to the post Closing Date.  Notwithstanding the foregoing, New Operator hereby acknowledges and agrees that such pre Closing Date monthly balances are the property of Old Operator and Old Operator reserves the right to continue to directly pursue the collection of such pre Closing Date monthly balances.

d.      To the extent either party receives any payments for accounts receivable of the other party, both parties acknowledge that the party receiving the payment belonging to the other party shall hold the payment in trust, that neither party shall have any right to offset with respect to such accounts receivable, and that the party erroneously receiving the payment shall have no right, title or interest whatsoever in the payment and shall remit the same to the other within ten (10) business days of receipt or pay same thereafter at the Default Rate.

e.      Nothing herein shall be deemed to limit in any way either party's rights and remedies to recover accounts receivable due and owing to it under the terms of this Agreement.

f.      All accounts payable for services provided or goods furnished for or at the Facility prior to the Closing Date, notwithstanding whether such accounts payable were incurred in the name of Old Operator, shall remain the sole responsibility and obligation of Old Operator.  All accounts payable for services provided or goods furnished for or at the Facility on or after the Closing Date, notwithstanding whether such accounts payable were incurred in the name of New Operator (except with respect to Rejected Contracts), shall be the sole responsibility and obligation of New Operator.  To the extent accounts payable have accrued for a period that includes time both before and after the Closing Date, the parties hereto shall equitably apportion the responsibility for payment of the same.  The parties hereto hereby agree to cooperate with each other and to notify the merchants, suppliers or other third parties with respect to which of Old Operator or New Operator bears responsibility for accounts payable of the Facility based on the foregoing clauses of this Section 9(e).

10.    **EMPLOYEES.**

14

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

a. Old Operator shall terminate the employment of all employees providing services at the Facility, a listing of which is attached hereto as Schedule 10(a) (such listing, to include the current base salaries of all such employees) (the "Current Employees"), effective as of the Closing Date. Old Operator shall be responsible for any "Continuation Coverage" (as that term is defined by COBRA Section 4980B of the tax code and Section 601, et seq. of ERISA) for any employee of Old Operator terminated at any time prior to or on the Closing Date who does not become a Retained Employee (as defined below). New Operator shall not be bound by or assume any employment contracts to which Old Operator may be a party. Old Operator shall not make any material changes in the compensation or benefits of the employees at the Facility prior to the Closing Date.

b. New Operator shall determine, in its sole discretion, which of the Current Employees shall be offered employment with New Operator, pursuant to employment terms acceptable to New Operator (hereinafter, the "Retained Employees"). Nothing in this paragraph, however, shall create any right in favor of any person not a party hereto, including without limitation, the Current Employees, or constitute an employment agreement or condition of employment for any employee of Old Operator or any affiliate of Old Operator who is a Current or Retained Employee.

c. On the Closing Date, Old Operator shall provide New Operator with a credit (the "Employee Accrual Credit") of an amount equal to all of the accrued, vested and unvested, but unpaid vacation, sick and holiday pay and severance obligations, and all other related payroll obligations including but not limited to all FICA, withholding, unemployment, workmen's compensation or other employment related taxes, as well as any insurance premium obligations of Old Operator, vested or unvested, with respect to the Retained Employees that have accrued prior to the Closing Date ("Old Operator's Vacation and Holiday Pay Expenses"). In exchange therefore, New Operator agrees to pay when and as due, all of such Old Operator's Vacation and Holiday Pay Expenses, provided, however, New Operator shall not be liable and Old Operator shall indemnify and hold the New Operator harmless on account of any and all other liabilities and obligations with regard to any of the Current Employees and with regard to the Retained Employees, any and all other liabilities and obligations that shall have accrued prior to the Closing Date. A schedule of Old Operator's Vacation and Holiday Pay Expenses is attached hereto as Schedule 10(c). In the event that New Operator discovers after the Closing Date that the amount credited is less than the amounts required under this Section 10(c), Old Operator shall pay to New Operator, within ten (10) days after New Operator provides notice thereof, an amount equal to such deficiencies.

d. New Operator and Old Operator agree and acknowledge that the employees at the Facility provide valuable services that are crucial for the success of the Facility, and New Operator's decision to serve as licensed operator of the Facility is based upon the skills and qualifications of such employees. As such, in the event that during the period beginning on the Effective Date and ending upon the date that is twelve (12) months following Closing: i) any employee of Old Operator reflected upon Schedule 10(a) dated [_____] and delivered prior to the Effective Date (each, a "Current Employee"), is solicited for employment by any person or entity that either directly or indirectly controls, is under common control with or is otherwise affiliated with Old Operator (any of the

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

foregoing, an "Old Operator Party"), or ii) any of the employees listed on Exhibit F attached hereto (each, a "Scheduled Employee") are hired by an Old Operator Party (excluding employees terminated by New Operator), then Old Operator shall pay to New Operator an amount equal to the greater of (a) Ten Thousand Dollars ($10,000.00), or (b) an amount equal to such employee's annual salary, as liquidated damages, for each such Current Employee or Scheduled Employee. The parties agree and acknowledge that actual damages with respect to the foregoing would be difficult to ascertain and that Ten Thousand Dollars ($10,000.00) or the amount of the annual salary is a fair and reasonable approximation of such actual damages. This provision shall not in any way limit such other remedies as may be available to New Operator. Old Operator further acknowledges that the scope and duration of the provisions of this Section 10(d) are reasonable. The parties also agree that advertisements available to the general public, such as through website job postings and newspaper, Internet and trade journals shall not constitute solicitation for purposes of this Section 10(d). Notwithstanding anything herein to the contrary, the cap on liquidated damages for violation of the non-solicitation provisions (but not the non-hire provisions) shall be Twenty Thousand Dollars ($20,000).

11.      **EMPLOYMENT RECORDS**. Old Operator shall deliver to New Operator, prior to the Closing Date, either the originals or full and complete copies of all employee records for all Retained Employees in its possession (including, without limitation, all employee employment applications, W-4's, I-9's and any disciplinary reports) (collectively, the "Employee Records"). Old Operator represents and warrants to New Operator that the Employee Records delivered to New Operator represent all employee records in Old Operator's possession or control as of the Closing Date with regard to the Retained Employees.

12.      **ACCESS TO RECORDS.**

a.      On the Closing Date, Old Operator shall deliver to New Operator all of the records of the Facility, including patient medical and financial records, provided, however, that nothing herein shall be construed as precluding Old Operator from removing from the Facility on the Closing Date its corporate financial records which relate to its operations at the Facility or to its overall corporate operations; and provided, further, that for a five (5) year period after the Closing Date, Old Operator shall give New Operator access to any information and the right of inspection (including the right to extract or make copies) in any such removed records as is necessary for the efficient and lawful operation of the Facility by New Operator or is otherwise required by law to be maintained at the Facility.

b.      Subsequent to the Closing Date, New Operator shall allow Old Operator and its agents and representatives to have reasonable access to (upon reasonable prior notice and during normal business hours), and to make copies of, the books and records and supporting material of the Facility relating to the period prior to and including the Closing Date, at its own expense, to the extent reasonably necessary to enable Old Operator to investigate and defend malpractice, employee or other claims, to file or defend cost reports and tax returns or any other government agency actions or notices.

c.      Old Operator shall, if allowed by applicable law and subject to the terms of such applicable law, be entitled to remove and/or copy any records delivered to New

16

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Operator, for purposes of litigation involving a resident or employee to whom such record relates, as certified to New Operator in writing prior to removal by an officer of or counsel for Old Operator in connection with such threatened or actual litigation.  Any record so removed shall promptly be returned to New Operator following its use.

d.      New Operator agrees to maintain such books, records and other material comprising records of the Facility's operations prior to the Closing Date that have been received by New Operator from Old Operator or otherwise, including patient records and records of patient funds, to the extent required by law, but in no event less than three (3) years.

13.      **USE OF NAME AND TELEPHONE NUMBER AND WEBSITE.**  New Operator may use the current name and present telephone numbers of the Facility.  Old Operator shall, as of the Closing Date, transfer or cause to be transferred, at its expense, all right, title and interest in and to the name "West County Care Center" or any derivations thereof, and the telephone numbers and website used by the Facility.

14.      **POLICY AND PROCEDURE MANUALS.**  Old Operator agrees to leave its policy and procedure manuals at the Facility and to transfer all of its right, title and interest in and to such policy and procedure manuals to New Operator.

15.      **TAXES.**  Old Operator shall discharge any provider tax charged by DHSS or other government agency for periods relating prior to the Closing Date.  Old Operator will file all returns, reports and filings of any kind or nature, required to be filed by Old Operator on a timely basis and will timely pay all taxes or other obligations and liabilities which are due and payable with respect to the Property in the ordinary course of business.  Old Operator shall pay before the same shall become due all taxes, duties and other governmental charges that accrue prior to the Closing Date, which, if not paid, would create or may hereafter create a lien on any of the assets of New Operator or for which New Operator could become liable as a successor operator of the Facility.  Old Operator shall also file any required bulk transfer filings necessary to establish that New Operator shall not succeed to any state tax liabilities.

16.      **INDEMNIFICATION.**

a.      New Operator shall indemnify, save, protect, defend and hold harmless Old Operator and its respective employees, affiliates, managers, members, partners, officers, directors and agents, from and against all claims, liabilities, losses, damages, demands and causes of action of any nature whatsoever (including demands and causes of action relating to injury or death to persons or loss of or damage to property), and all costs and expenses (including penalties and reasonable attorneys' and other professional fees and disbursements incurred in the investigation or defense of any such claims, or in asserting, pursuing or enforcing any such claims), whether or not resulting from third-party claims (collectively, "Losses") arising from, out of, or relating to (i) operation of the Facility by New Operator on or after the Closing Date, (ii) New Operator's use or occupancy of the Property or the condition thereof on or after the Closing Date, and (iii) any inaccuracy or breach of any representation, warranty, covenant, agreement or obligation contained in the OTA or in any of the Other Documents.

17

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

b.      Old Operator agrees to indemnify, save, protect, defend and hold harmless New Operator and its employees, affiliates, managers, members, officers, directors and agents, from and against all Losses arising from, out of, or relating to (i) operation of the Facility by Old Operator prior to the Closing Date, (ii) Old Operator's use or occupancy of the Property or the condition thereof prior to the Closing Date, (iii)  any Recapture Claim, (iv) any material inaccuracy or breach of any representation, warranty, covenant, agreement or obligation contained in the OTA or in any of the Other Documents by Old Operator, and (v) any resident present at the Facility on the Closing Date for whom a recognized payor source cannot be obtained following the Closing.  In order to secure Old Operator's obligations as provided herein, Old Operator shall deposit the Escrow in accordance of terms of Escrow Agreement.

(x)      Notwithstanding any other provision of this Agreement to the contrary, New Operator shall not have any indemnification obligations pursuant to Section 16.(a) and Old Operator shall not have any indemnification obligations pursuant to Section 16.(b) except to the extent that the aggregate amount of Losses incurred or suffered by New Operator or Old Operator that the other is otherwise responsible for under Sections 16.(a) or 16.(b) exceeds Thirty-Nine Thousand Two Hundred Fifty Dollars ($39,250.00) (the "Indemnity Threshold"), at which time New Operator or Old Operator shall be entitled to assert claims against the other for Losses in excess of, and including, the Indemnity Threshold.

(y)      Notwithstanding anything to the contrary in this Agreement, but subject to Section 16.(b)(z) below, the maximum aggregate liability of Old Operator to New Operator for all Losses under this Agreement shall be One Million Dollars ($1,000,000.00).

(z)      Notwithstanding anything to the contrary in this Agreement, the limitations set forth in Sections 16.(b)(x) – (y) shall not apply to any Loss arising out of:

(a)      the breach of a representation or warranty contained in Section 18.(d) (Litigation), Section 18.(i) (Compliance with Applicable Laws), Section 18(s) (Environmental Condition), or Section 18.(u) (Taxes);

(b)      fraud, intentional misrepresentation or the intentional breach of any representation or warranty by the indemnifying party;

(c)      the breach of any representation or warranty contained herein or pursuant hereto;

(d)      a claim or Loss asserted by a third party as a result of an alleged act or omission by Old Operator prior to the Closing Date; or

(e)      a claim by Medicare, Medicaid, U.S. Veteran's Administration, Missouri Department of Mental Health, or any other insurance company or payor for overpayment or other claim arising or in connection with, services provided prior to Closing Date.

c.      In the event that any liability, claim, demand or cause of action which is indemnified against by or under any term, provision, section or paragraph of this Agreement ("Indemnitee's Claim") is made against or received by any indemnified party

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

(hereinafter "Indemnitee") hereunder, said Indemnitee shall notify the indemnifying party (hereinafter "Indemnitor") in writing within thirty (30) calendar days of Indemnitee's receipt of written notice of said Indemnitee's Claim, provided, however, that Indemnitee's failure to timely notify Indemnitor of Indemnitee's receipt of an Indemnitee's Claim shall not impair, void, vitiate or invalidate Indemnitor's indemnity hereunder nor release Indemnitor from the same, which duty, obligation and indemnity shall remain valid, binding, enforceable and in full force and effect so long as Indemnitee's delay in notifying Indemnitor does not, solely by itself, directly and materially prejudice Indemnitor's right or ability to defend the Indemnified Claim.  Upon its receipt of any or all Indemnitee's Claim(s), Indemnitor shall, in its sole, absolute and unreviewable discretion, diligently and vigorously defend, compromise or settle said Indemnitee's Claim at Indemnitor's sole and exclusive cost and expense and shall promptly provide Indemnitee evidence thereof within fourteen (14) calendar days of the final, unappealable resolution of said Indemnitee's Claim.  Upon the receipt of the written request of Indemnitee, Indemnitor shall within two (2) calendar days provide Indemnitee a true, correct, accurate and complete written status report regarding the then current status of said Indemnitee's Claim.  Prior to an Indemnification Default (as defined herein), Indemnitee may not settle or compromise an Indemnitee's Claim without Indemnitor's prior written consent.  Failure to obtain such consent shall be deemed a forfeiture by Indemnitee of its indemnification rights hereunder. In the event that Indemnitor fails or refuses to indemnify, save, defend, protect or hold Indemnitee harmless from and against an Indemnitee's Claim and/or to diligently pursue the same to its conclusion, or in the event that Indemnitor fails to timely report to Indemnitee the status of its efforts to reach a final resolution of an Indemnitee's Claim, on seven (7) calendar days prior written notice to Indemnitor during which time Indemnitor may cure any alleged default hereunder, the foregoing shall immediately, automatically and without further notice be an event of default hereunder (an "Indemnification Default") and thereafter Indemnitee may, but shall not be obligated to, immediately and without notice to Indemnitor, except such notice as may be required by law and/or rule of Court, intervene in and defend, settle and/or compromise said Indemnitee's Claim at Indemnitor's sole and exclusive cost and expense, including but not limited to attorneys' fees, and, thereafter, within seven (7) calendar days of written demand for the same Indemnitor shall promptly reimburse Indemnitee all said Indemnitee's Claims and the reasonable costs, expenses and attorneys' fees incurred by Indemnitee to defend, settle or compromise said Indemnitee's Claims.

d.      All indemnification obligations of Old Operator and New Operator under this Agreement shall survive the Closing Date and shall continue in effect for a period of two (2) years after the Closing Date; provided that if there is an Indemnitee's Claim made prior to the three year anniversary of the Closing Date, such indemnification obligation shall continue to survive until the final, non-appealable resolution of such Indemnitee's Claim.

e.      The foregoing to the contrary notwithstanding, all indemnification obligations relating to the Recapture Claims and any other Losses relating to the Medicaid and Medicare programs shall survive indefinitely, subject to any applicable statutes of limitations.

19

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

f.      New Operator's right to indemnification, reimbursement or other remedy based upon any representation, warranty, covenant or obligation contained herein shall not be affected by any investigation (including any environmental investigation or assessment) conducted with respect to, or any knowledge acquired (or capable of being acquired) at any time, whether before or after the Effective Date or the Closing Date, with respect to the accuracy or inaccuracy of or compliance with any such representation, warranty, covenant or obligation.

g.      IN NO EVENT SHALL EITHER PARTY TO THIS AGREEMENT EVER BE LIABLE TO THE OTHER PARTY FOR ANY PUNITIVE DAMAGES OTHER THAN IN THE EVENT OF FRAUD.

17.     **<u>REPRESENTATIONS AND WARRANTIES OF NEW OPERATOR</u>**.  As an inducement to Old Operator to enter into this Agreement, New Operator covenants and makes the following representations and warranties set forth below, which are true and correct as of the Effective Date and which shall be true and correct on the Closing Date:

a.      <u>Organization and Authority</u>.  New Operator is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the State of Missouri.  As of the Closing Date, New Operator will have all necessary power and authority to enter into this Agreement and to execute all documents and instruments referred to herein or contemplated hereby and all necessary action has been taken to authorize the individual executing this Agreement to do so.  This Agreement has been duly and validly executed and delivered by New Operator and is enforceable against New Operator in accordance with its terms.

b.      <u>No Violations</u>.  Neither the execution and delivery of this Agreement, nor any agreement referred to or contemplated hereby, by New Operator will:

ii.      violate any provision of its Operating Agreement; or

iii.     be in conflict with or constitute a default or create a right of termination or cancellation under any agreement or commitment to which New Operator is a party.

c.      <u>Accuracy of Representations and Warranties of New Operator</u>.  No representation or warranty by or on behalf of New Operator contained in this Agreement and no statement by or on behalf of New Operator in any certificate, list, exhibit, schedule or other instrument furnished or to be furnished to Old Operator by or on behalf of New Operator pursuant hereto contains any untrue statement of  fact, or omits or will omit to state any facts which are necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading.

d.      <u>Survival of Representations and Warranties of New Operator</u>.  Each representation and warranty of New Operator hereunder shall be true, complete and correct as of the Closing Date with the same force and effect as though such representation or warranty was made on such date, and all representations and warranties shall survive the Closing Date for a period of three (3) years.

20

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

18.    **REPRESENTATIONS AND WARRANTIES OF OLD OPERATOR**.  As an inducement to New Operator to enter into this Agreement, Old Operator covenants and makes the following representations and warranties, which are true and correct as March 1, 2021 and which shall be true and correct as of the Closing Date subject to Section 21 below:

a.    <u>Organization and Authority</u>.  Old Operator is a Delaware limited liability company, duly formed, validly existing and in good standing under the laws of the State of Missouri.  Old Operator has all necessary power and authority to enter into this Agreement and to execute all documents and instruments referred to herein or contemplated hereby and all necessary action has been taken to authorize the individual executing this Agreement to do so.  This Agreement has been duly and validly executed and delivered by Old Operator and is enforceable against Old Operator in accordance with its terms.

b.    <u>No Violations</u>.  Neither the execution and delivery of this Agreement, nor any agreement referred to or contemplated hereby, by Old Operator will:

ii.    violate any provision of its operating or limited liability company agreement;

iii.    be in conflict with or constitute a default or create a right of termination or cancellation under any agreement or commitment to which Old Operator is a party or which pertains to the Facility; and

iv.    result in the creation or imposition of any security interest, lien or other encumbrance upon any of the assets of Old Operator.

c.    <u>No Consent Required</u>.  No consent, order, approval or authorization of, or declaration, filing or registration with, any governmental or regulatory authority is required in connection with the execution or delivery by Old Operator of this Agreement, or the performance by Old Operator of this Agreement, prior to, or as of or at the Closing Date, or as a consequence thereof, or with the consummation by Old Operator of transactions contemplated hereby to be consummated prior to, as of or at the Closing Date, except (i) such consents, certifications or licenses from the DHSS, CMS or any other governmental agency with jurisdiction over the Facility as necessary to permit New Operator to operate the Facility from and after the Closing Date, (ii) if applicable, such other consents or licenses required to operate a skilled care nursing home facility in Ballwin, Missouri, and (iii) as otherwise required in this Agreement.

d.    <u>Litigation</u>.  Except as set forth on <u>Schedule 18(d)</u>, there are no pending, nor, to Old Operator's Knowledge, threatened claims, lawsuits, governmental actions or other proceedings, including without limitation, any desk audit or full audit described in below, involving the Facility or the operation thereof before any court, agency or other judicial, administrative or other governmental body or arbitrator.

e.    <u>Overpayments</u>.  Except as set forth on <u>Schedule 18(e)</u>, there are no pending, nor threatened claims, demands or other notices of or action alleging the overpayment of Medicaid, Medicare or other governmental or quasi-governmental reimbursements or

21

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

demanding the return of such alleged overpayments by any third party payor, nor is Old Operator aware of any grounds from such a claim or demand.

f.      Audits.  Old Operator agrees to fully cooperate with New Operator in connection with any desk audit or full audit by CMS, DHSS or other applicable governmental regulatory agency in connection with the desk audit or full audit of any Medicaid or Medicare cost reports filed by Old Operator, including but not limited to providing New Operator with any and all necessary documentation, supporting schedules and personnel in its possession in order to properly support the dollar figures and classifications/characterizations contained in Old Operator's cost reports so that New Operator's Medicaid or Medicare reimbursements are maximized

g.      Status of Licensure and Certification.  The Facility currently holds a license issued by the DHSS to Old Operator for 137 skilled care bed nursing facility and said license is and shall through the Closing Date be unrestricted, unconditional, in good standing and in full force and effect and subject to no waivers or limitations.  Except as set forth on Schedule 18(g), there are no pending actions or claims or any threatened actions or claims, which, if adversely determined, could materially and adversely affect such license.  Old Operator has not received any written notice from DHSS or any other governmental agency requiring the correction of any condition with respect to such license which has not been the subject of a plan of correction for which compliance has been affected and Old Operator has no reason to believe that the good standing of any such license is in jeopardy.  Furthermore and except as set forth on Schedule 18(g), Old Operator has not received any written notice from DHSS or any other governmental or quasi-governmental organization of any life safety code or similar violations, nor does Old Operator have any reason to believe that any condition exists at the Property that would violate any life safety codes or any similar regulations.  The Facility is, and shall on the Closing Date be, certified for participation in the Medicaid and Medicare reimbursement program and such certification is in full force and effect and in good standing and subject to no restrictions or limitations.  Except as set forth on Schedule 18(g), there are no pending actions or claims or, to the best of Old Operator's knowledge, any threatened actions or claims, which, if adversely determined, could materially and adversely affect such certification.  Except as set forth on Schedule 18(g), Old Operator has not received any notice from DHSS, CMS or any other governmental agency requiring the correction of any condition with respect to such certification which has not been the subject of a plan of correction for which compliance has been affected and Old Operator has no reason to believe that the good standing of such certification is in jeopardy.  Old Operator shall promptly comply with any violation notices concerning the Facility received after the Effective Date and before the Closing Date to the extent that any such notice requires compliance activities.  In addition to, and not in any manner limiting the generality of, the foregoing, during the three-year period prior to the Closing Date, except as set forth in Schedule 18(g), Old Operator has not received any of the following with respect to the Facility:

i.      A notice of violations with a scope and severity level of "F" or higher;

22

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

ii.      A notice of termination of the license issued by DHSS to operate the Facility as a 137 skilled care bed nursing facility;

iii.      A notice of termination of the certification issued by DHSS or CMS of the Facility to participate in the Medicare and/or Medicaid reimbursement programs;

iv.      A notice that the Facility is not in substantial compliance with the requirements for participation in the Medicare and/or Medicaid reimbursement programs;

v.      A notice of a material Life Safety Code deficiency cited by CMS, DHSS or state or local building, fire safety or health authorities that have not been corrected as of the Effective Date; and

vi.      A notice of imposition of civil monetary penalties or other intermediate sanctions in accordance with 42 CFR § 488.430 et seq.

h.      Cost Reports; Audits.  Old Operator has filed, or will file, within the appropriate reporting period and with the appropriate authority, all cost reports required to be filed pursuant to Titles XVIII and XIX of the Social Security Act prior to the Effective Date with respect to the Facility.  All such reports have been or will be prepared in all material respects in accordance with all applicable laws, rules and regulations.  To the extent applicable, the status of any pending Medicare and Medicaid audits are attached as Schedule 18(h).

i.      Compliance with Applicable Laws.

(i)      To the knowledge of Old Operator, Old Operator is in compliance (without waivers) and as of the Closing Date will be in compliance (without waivers) with all applicable municipal, county, state and federal laws, regulations, ordinances, standards and orders, including without limitation, all health, building, fire and zoning ordinances and life safety codes and the Americans with Disabilities Act, as the same may be amended.

ii.      To the knowledge of Old Operator, the Property has been and is presently used and operated in compliance in all material respects with, and in no material way violates any applicable statute, law, regulation, rule, licensing requirement, ordinance, order or permit of any kind whatsoever affecting the Property or any part thereof, including without limitation, the Nursing Home Act, Environmental Laws, and any rules or regulations promulgated thereunder, as well as any thereof relating to wages, hours, hiring, promotions, retirement, working conditions, nondiscrimination, health, safety, pensions and employee benefits.

iii.      Except as set forth on Schedule 18(i), Old Operator has not received written notice of any claim, requirement or demand of any licensing or certifying agency supervising or having authority over Old Operator or otherwise to rework or redesign the Facility so as to conform to or comply with any existing law, code

23

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

or standard which has not been fully satisfied prior to the Effective Date or which will not be satisfied prior to the Closing Date.

iv.    All billing practices of Old Operator to all third party payors, including the Medicare and Medicaid programs and private insurance companies, have been in compliance with all applicable laws, regulations and policies of such third party payors and the Medicaid and Medicare programs.

j.    Life Care Contracts.  Except as set forth on Schedule 18(j), the Facility is not a party to any life care contract with respect to any resident of the Facility.

k.    Personal Property and Residents.  Unless specifically permitted pursuant to the terms of this Agreement, Old Operator shall not remove any items of personal property from the Facility nor shall it transfer residents from the Facility to a skilled care nursing home facility owned or operated by an entity which is owned in whole or part, directly or indirectly, by the principals of Seller and/or Old Operator.  The information set forth in the admission agreements and patient rolls pertaining to residents of the Facility is true and correct in all material respects as of the respective dates of such admission agreements and patient rolls, and there are no patient care agreements with respect to any resident of the Facility which differs materially from the standard form used at the Facility.

l.    Personal Needs Allowance.  Old Operator is currently in material compliance with all state and federal regulations relating to maintaining and accounting for the personal needs allowance ("PNA") for residents who request the establishment of a PNA account.  Except as set forth in Schedule 18(l), Old Operator has no knowledge of and has not received any notice from any governmental authority citing or alleging any violation by Old Operator or the Facility of any state or federal PNA regulations.

m.    Furniture.  There are at the Facility a number of beds equal to the maximum bed capacity as permitted under the Facility license.  Each bed is in good repair and conforms with the minimum standards set forth under the regulations adopted by DHSS. For each such bed, there also exists the minimum furnishings, fixtures and other accessories required by DHSS and all state, local or federal laws or regulations applicable to the Facility.

n.    Supplies.  Each and every item constituting the Supplies has been purchased by Old Operator and is owned by Old Operator free and clear of claims of all other parties. Such supplies and linens are sufficient in quantity for the proper conduct and operation of the Facility as a skilled care nursing home facility for at least that number of residents residing at the Facility as of the Closing Date in substantial compliance with all applicable laws, including, without limitation, the minimum standards of DHSS and in an amount sufficient to last not less than two (2) weeks.

o.    Old Operator's Vacation and Holiday Pay Expenses.  Schedule 18(o) is a complete and accurate list of Old Operator's Vacation and Holiday Pay Expenses, and except as provided in Schedule 18(o), as of the Closing Date, Old Operator has no

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

outstanding obligations with respect to vacation and holiday pay to any of the Retained Employees.

p.    Labor Unions.  Except as set forth in Schedule 18(p), Old Operator is not party to any collective bargaining agreement with any labor union or similar organization, nor does Old Operator know of any such organization which represents or claims to represent any of Old Operator's employees or intends to organize any of Old Operator's employees.

q.    Multi-Employer Plans.  Old Operator does not, and is not required to, contribute (and has not ever contributed or been required to contribute) to any multi-employer plan, as defined in Section 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") with respect to the Current Employees.

r.    Employee Benefit Plans.  Except as provided in Schedule 18(r):

ii.    Old Operator does not maintain or contribute to any non-qualified deferred compensation or retirement plans, contracts or arrangements;

iii.    Old Operator does not maintain or contribute to any qualified defined contribution plans (as defined in Section 3(34) of ERISA, or Section 414(i) of the Internal Revenue Code of 1986, as amended (the "Code"));

iv.    Old Operator does not maintain or contribute to any qualified defined benefit plans (as defined in Section 3(35) of ERISA or Section 414(j) of the Code);

v.    Old Operator does not maintain or contribute to any employee welfare benefit plans (as defined in Section 3(1) of ERISA); and

vi.    Old Operator has not entered into, nor has Old Operator established or maintained, any change-in-control or severance agreements or plans.

s.    Environmental Condition.  Old Operator has not generated, stored or disposed of any Hazardous Substances on the Facility or the Property, and Old Operator does not have any knowledge of any previous or present generation, storage, disposal or existence of any Hazardous Substance or hazardous waste on the Facility or the Property, except in such quantities that is customary in the operation of skilled care and in all events in compliance with all Environmental Laws.

t.    Status of Residents.    To Old Operator's knowledge, all of the residents at the Facility have full legal status as citizens of the United States of America.

u.    Taxes.  Except as set forth on Schedule 18(u), Old Operator has timely filed all tax returns and reports required by law to have been filed by it and has paid all taxes and governmental charges due and payable with respect to such returns.

25

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

      v.      Insurability.  Except as set forth on Schedule 18(v), Old Operator has not received any written notice or request from any insurance company or underwriters setting forth any defects in the Property which might affect the insurability thereof, requesting the performance of any work or alteration of the Property or setting forth any defect or inadequacy in Old Operator's operation of the Property which would materially and adversely affect the ability of New Operator to insure the Facility following Closing.

      w.      Special Assessments.  Except as set forth on Schedule 18(w), there are no (i) pending or, to Old Operator's knowledge, threatened special assessments affecting the Property or (ii) any contemplated improvements affecting the Property that may result in special assessments affecting the Property.  There are no tax abatements, phase-ins or exemptions affecting the Property.

      x.      Personal Property; Liens.  All of the Personal Property is located at or on the Property.  The Personal Property is sufficient to operate the Facility in the manner conducted by Old Operator as of the date hereof and as of the Closing Date.  All of the assets necessary to operate the Facility are owned by the Old Operator and shall be conveyed to New Operator pursuant to this Agreement.  The Property is free and clear of all liens, claims and encumbrances caused or created by Old Operator or its employees or agents.

      y.      Leases.  Except for Old Operator's lease and as set forth on Schedule 18(y), there are not currently, and as of the Closing Date there shall not be, any occupancy rights (written or oral), leases or tenancies presently affecting the Facility and the portion of the Property on which it is located, and any occupancy rights of any residents of any Facility.

      z.      Permits.  Old Operator currently maintains in good standing and full force all of the material certificates, licenses and permits from all applicable governmental authorities in connection with the ownership, use, occupancy, operation and maintenance of the Property and the Facility as necessary in connection with the current ownership, use, occupancy, operation and maintenance thereof.

      aa.      Old Operator has provided to New Operator true and correct copies of the Financial Statements (as hereinafter defined). The Financial Statements (i) have been prepared in strict accordance with the books and records of Old Operator, (ii) present fairly and accurately, and do not in any respect distort, the financial condition of the Seller, Old Operator or Facility as of the date of the balance sheet, (iii) present fairly and accurately, and do not in any respect distort, the results of operations of the Facility for the period covered by such statement, and iv) have been prepared on the same basis as the Facility's prior financial statements. Except as disclosed in Schedule 18(aa) or in the Financial Statements, there are no liabilities, debts, claims or obligations related to the operation of the Facility by Seller or Old Operator prior to the Closing Date, whether accrued, absolute, contingent or otherwise, whether due or to become due, that would reasonably be expected to be asserted against New Operator or Lessor, and/or the Facility following the Closing Date. For purposes hereof, the "**Financial Statements**" shall mean financial statements with respect to the Facility for the fiscal years ended September 30, 20___, through September 30, 20__. In addition to the Financial Statements, Old Operator has delivered,

26

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

or caused to be delivered, to New Operator true, correct and complete in all material respects resident census information for the Facility's last two (2) fiscal years and current year-to-date broken out by month.

bb.    Accuracy of Representations and Warranties of Old Operator.    No representation or warranty by or on behalf of Old Operator contained in this Agreement and no statement by or on behalf of Old Operator in any certificate, list, exhibit or other instrument, including the due diligence materials and financial statements, furnished or to be furnished to New Operator by or on behalf of Old Operator pursuant hereto contains any untrue statement, or omits or will omit to state any facts which are necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading.

cc.    Survival of Representations and Warranties of Old Operator.    Each representation and warranty of Old Operator hereunder shall be true, complete and correct as of the Closing Date with the same force and effect as though such representation or warranty was made on such date.    All representations and warranties shall survive the Closing Date for a period of two (2) years.

19.    **NON COMPETE AND NON SOLICITATION.**

a.    Neither Old Operator nor any of its or their affiliates or principals shall knowingly and intentionally solicit the Facility or any residents thereof, each for a period of twelve (12) months following the Closing.  Old Operator acknowledges that if there is a violation of any provision of this Section 19(a), then Old Operator shall pay to New Operator an amount equal to Twenty-Five Thousand Dollars ($25,000.00) as liquidated damages, for each such resident.  The parties agree and acknowledge that actual damages with respect to the foregoing would be difficult to ascertain and that Twenty-Five Thousand Dollars ($25,000.00) is a fair and reasonable approximation of such actual damages.  This provision shall not in any way limit such other remedies as may be available to New Operator at law or in equity.  Old Operator further acknowledges that the scope and duration of the provisions of this Section 19(a) are reasonable.  Anything to the contrary notwithstanding, if the resident's responsible party decides to move a resident to be closer to family or other valid reasons without solicitation from any affiliate of Old Operator, Old Operator shall not be deemed in violation hereunder.

b.    Neither Old Operator nor any of its or their affiliates or principals, for a period of two (2) years after the Closing Date, will not, own, operate, develop, manage or consult an intermediate living or skilled nursing home or otherwise operate, own, develop, manage or consult with an entity or business involved with an assisted living or skilled nursing care within a fifteen (15) mile radius of the Facility.  Anything to the contrary notwithstanding, the operations of any facility owned or controlled, directly or indirectly, by Samuel Goldner prior to the Effective Date shall not be deemed a violation hereunder. Old Operator acknowledges that a violation of any provision of this Section 19(b) will result in substantial and irreparable damage to the New Operator for which the New Operator will not have an adequate remedy at law and for which money damages would not be a sufficient remedy, and Old Operator agrees that, in addition to all other remedies,

27

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

in the event of any violation or alleged or threatened violation of any of the provisions of this Section 19(b), New Operator shall be entitled to equitable relief, including temporary or permanent injunctive relief and specific performance, in each case without being required to prove irreparable harm or damages, post a bond or otherwise provide security. This provision shall not in any way limit such other remedies as may be available to New Operator at law or in equity.  Old Operator further acknowledges that the scope and duration of the provisions of this Section 19 are reasonable.

20.     **NO JOINT VENTURE**.  Nothing contained herein shall be construed as forming a joint venture or partnership between the parties hereto with respect to the subject matter hereof. The parties hereto do not intend that any third party shall have any rights under this Agreement.

21.     **EXHIBITS AND SCHEDULES.**  If any exhibits or schedules are not attached hereto, the parties hereto agree to attach such exhibits and schedules as soon as reasonably practicable but in any event prior to ten (10) days before the Closing Date.  The parties hereto agree that the party charged with providing an exhibit or schedule to this Agreement shall, to the extent necessary after delivery thereof, amend or supplement all exhibits and schedules in order for the same to be current, true and correct as of the Closing Date.  The inclusion of all supplements to the exhibits and schedules pursuant to this Section shall be subject to New Operator approving, in its reasonable judgment, all such exhibits and schedules within seven (7) days of submission thereof to New Operator. Notwithstanding anything contained to the contrary herein, each of the parties acknowledges that this Agreement is being executed solely by the Old Operator on March 1, 2021 as required pursuant to the terms and conditions of that certain Lease Agreement with a commencement date of March 1, 2021 by and between the current fee owner, as lessor, and Old Operator, as lessee.  To that end, each of the parties further acknowledges and agrees that the Old Operator shall have a good faith reasonable opportunity and time to amend and update any and all of the representations, exhibits and schedules contained and referenced in Section 18 above prior to the later of (i) the Effective Date or (ii) the date that Old Operator is provided a fully executed copy of this Agreement, to the extent same omits and/or fails to contain a material fact.

22.     **EVENTS OF DEFAULT; REMEDIES.**  Except as to those specific notices and cure periods, if any, particularly set forth elsewhere herein, the breach by either party ("Defaulting Party") hereto of any term, provision, condition, promise, covenant, agreement, representation, warranty, guaranty, indemnity, duty or obligation if not cured within five (5) business days of the earlier of said Defaulting Party's receipt or refusal of written notice of the same from the other party ("Non-Defaulting Party") hereto shall automatically and without further notice hereunder be an immediate event of default ("Event of Default") entitling the Non-Defaulting Party to exercise any and all remedies available to it hereunder or in law or equity, provided, however, that if a non-monetary breach is not reasonably capable of being cured within the aforesaid five (5) business days but the Defaulting Party promptly commences to cure within said period, within said period notifies the Non-Defaulting Party in writing of the commencement of said cure, and thereafter diligently pursues the same to conclusion and successfully completes said cure within thirty (30) calendar days of its first receipt of notice of said breach or violation, it shall not be an Event of Default hereunder.  The Non-Defaulting Party's rights and remedies hereunder shall be cumulative and not mutually exclusive and the exercise by the Non-Defaulting Party of one or more rights or remedies granted it hereunder or in law or equity shall not be deemed, interpreted or construed as an election of the same or to bar, prevent or preclude the simultaneous or consecutive exercise of

28

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

any other right or remedy granted to the Non-Defaulting Party hereunder or in law or equity, including but not limited to the simultaneous or successive pursuit of money damages and injunctive relief.  The Non-Defaulting Party shall not be required to post any bond, surety or security of any nature whatsoever to pursue injunctive relief, the necessity or requirement for the same being hereby waived by the Defaulting Party.

23.    **CHOICE OF LAW**.    **THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS SHALL BE GOVERNED AND CONTROLLED BY THE INTERNAL LAWS OF THE STATE OF MISSOURI AS TO INTERPRETATION, ENFORCEMENT, VALIDITY, CONSTRUCTION, EFFECT, AND IN ALL OTHER RESPECTS.**

24.    **DISPUTE RESOLUTION**.  The parties hereto agree that with respect to all disputes, problems or claims arising out of or in connection with this Agreement and all other agreements or other instruments executed in connection herewith (collectively "Disputes"), the parties hereto shall, in good faith, use their reasonable best efforts to resolve the Dispute.  If after such efforts the parties hereto are unable within ten (10) days of the arising of the Dispute to resolve the Dispute in good faith, either party may submit to final and binding arbitration before the American Arbitration Association ("AAA"), with an office located in Missouri, or its successor, pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 1 *et seq*.  The parties hereto agree that the rules of the American Arbitration Association applicable to commercial arbitrations shall apply to any such arbitration and that the Expedited Procedures under the Commercial Arbitration Rules shall apply.  Either party may commence the arbitration process called for in this Agreement by filing a written demand for arbitration with AAA, with a copy to the other party.  The arbitration will be conducted in Missouri, in accordance with the provisions of AAA Streamlined Arbitration Rules and Procedures in effect at the time of filing of the demand for arbitration.  The parties will cooperate with AAA and with one another in selecting an arbitrator from AAA panel of neutrals, and in scheduling the arbitration proceedings.  Unless waived by all of the parties to the dispute, the arbitrator(s) in any arbitration shall be an attorney admitted to the bar of the state of Missouri having at least ten (10) years' experience practicing in health care law with experience on such matters relevant to the matter at issue under the claim.  The provisions of this Section 24 with respect to the arbitration before AAA may be enforced by any court of competent jurisdiction, and the parties seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the parties against whom enforcement is ordered.  The fees and expenses of such arbitration shall be borne by the non-prevailing party, as determined by such arbitration.  Upon the mutual agreement of the parties involved in the Dispute, the parties may submit to final and binding arbitration before any other recognized alternative dispute resolution company or organization with offices located in Missouri.  The parties hereto agree that this Section 24 has been included to rapidly and inexpensively resolve any disputes between them with respect to the matters described above, and that this paragraph shall be grounds for dismissal of any court action commenced by any party with respect to a dispute arising out of such matters.

25.    **JURISDICTION; VENUE**.    ANY ENFORCEMENT ACTION FOR ANY ARBITRATION AWARD (IF NECESSARY) MAY BE BROUGHT BEFORE ANY COURT HAVING SITUS IN ST. LOUIS COUNTY, MISSOURI.  EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURTS LOCATED WITHIN SAID COUNTY AND STATE.  TO THE

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

EXTENT LEGALLY WAIVABLE, EACH OF THE PARTIES HERETO HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON SUCH PARTIES BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO SUCH PARTY, AT THE ADDRESS SET FORTH FOR NOTICE IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED. THE PARTIES HERETO HEREBY WAIVE ANY RIGHT THEY MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST SUCH PARTY IN ACCORDANCE WITH THIS SECTION.

26. **ATTORNEYS' FEES IN THE EVENT OF DISPUTE**. In the event any dispute between the parties hereto that results in arbitration or litigation (including any enforcement action of an arbitration award or any action to compel arbitration or change venue), the prevailing party shall be reimbursed for all reasonable costs, including, but not limited to, reasonable attorneys' fees.

27. **DEFINITIONS**. For purposes of this Agreement, the following terms shall have the following meanings (all terms used in this Agreement which are not defined in this paragraph shall have the meanings set forth elsewhere in this Agreement):

a. *"CMS"* shall mean the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services.

b. *"Contracts"* shall mean all contracts, agreements, leases, commitments and arrangements (whether written or oral), including all service contracts, maintenance contracts and consulting agreements, and all of Old Operator's duties, obligations, covenants, promises, rights and privileges therein or thereunder to which the Old Operator or its predecessors or agents is a party and which relate to the Facility and the operations thereof.

c. *"Environmental Laws"* shall mean all federal, state and local environmental, health, or safety laws or regulations now or hereafter enacted.

d. *"Hazardous Substances"* shall mean any toxic or hazardous waste or pollutants, or substances, including, without limitation, asbestos, PCB's, petroleum products and by products, substances defined or listed as: "Hazardous Substances " or "Toxic Substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") as amended, 42 U.S.C. § 9601, et seq., "Hazardous Materials" in the Hazardous Materials Transportation Act, 49 U.S.C. § 1802, et seq., "Hazardous Waste" in The Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq., any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. § 2061, et seq., any "Toxic Pollutant" under the Clean Water Act, 33 U.S.C. §1251, et seq., as amended, any "Hazardous Air Pollutant" under the Clean Air Act, 42 U.S.C. § 7401, et seq., and any hazardous or toxic substance or pollutant regulated under any other applicable federal, state or local Environmental Laws.

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

e.   *"OIG"* shall mean the United States Department of Health and Human Services, Office of Inspector General.

f.   *"Supplies"* shall mean the food, central supplies, linens and housekeeping supplies and other consumable and non-consumable inventory present at the Facility as of the Closing Date and any other property of Old Operator used in connection with the operation of the Facility.

28.   **GENERAL PROVISIONS.**

a.   Each party hereto agrees to use commercially reasonable efforts to cause the conditions to its obligations and to the other party's obligations herein set forth to be satisfied at or prior to the Closing Date.  Each of the parties hereto agrees to execute and deliver any further agreements, documents or instruments necessary to effectuate this Agreement and the transactions referred to herein or contemplated hereby or reasonably requested by the other party to perfect or evidence their rights hereunder.  Each party shall promptly notify the other party of any information delivered to or obtained by such party which would prevent the consummation of the transactions contemplated hereby, or which would indicate a breach of the representations or warranties of any other party hereto.

b.   All notices to be given by either party to this Agreement to the other party hereto shall be in writing, and shall be: (i) given in person; (ii) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested; (iii) sent by national overnight courier service, priority next business day service; or (iv) sent by facsimile or e-mail (followed by delivery by one of the other means identified in (i)-(iii)) each addressed as follows:

if to Old Operator:          WCCC OP LLC
                             525 Chestnut Street, Suite 102
                             Cedarhurst, New York 11516
                             Attn: Samuel Goldner
                             Email: sgoldner@gcapmgmt.com

with copies to:              Gulko Schwed LLP
                             525 Chestnut Street, Suite 207
                             Cedarhurst, New York 11516
                             Attn: Steven Gitelis
                             Email: steven@gulkoschwed.com

if to New Operator:          [_____]
                             [_____]
                             [_____]
                             Attn: [_____]
                             Email: [_____]

31

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

with a copy to:        Gutnicki LLP
                       4711 Golf Road, Suite 200
                       Skokie, Illinois 60076
                       Attn:  Abraham A. Gutnicki, Esq.
                            Stacy J. Flanigan
                       Facsimile:  (847) 933-9285
                       E-mail:  agutnicki@gutnicki.com
                               sflanigan@gutnicki.com

Any such notice personally delivered shall be deemed delivered when actually received; any such notice deposited in, the United States mail, registered or certified, return receipt requested, with all postage prepaid, shall be deemed to have been given on the earlier of the date received or the date when delivery is first refused; any notice deposited with an overnight courier service for delivery **shall** be deemed delivered on the next business day following such deposit; and any such notice delivered via facsimile shall be deemed delivered upon the notifying party's receipt of facsimile confirmation provided that the notifying party follows up such facsimile transmission with one of the other means identified above.  Any party to whom notices are to be sent pursuant to this Agreement may from time to time change its address for further communications thereunder by giving notice in the manner prescribed herein to all other parties hereto.

c.     Each party hereto shall bear its own legal, accounting and other expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transaction contemplated hereby, whether or not the transaction is consummated.

d.     This Agreement, together with all exhibits and schedules attached hereto and any other agreements referred to herein, constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all negotiations, prior discussions and preliminary agreements.

e.     This Agreement may not be modified or amended except in writing signed by the parties hereto.

f.     No waiver of any term, provision or condition of this Agreement, in any one or more instances, shall be deemed to be or be construed as a further or continuing waiver of any such term, provision or condition of this Agreement. No failure to act shall be construed as a waiver of any term, provision, condition or rights granted hereunder.

g.     This Agreement shall bind and inure to the benefit of the respective heirs, executors, administrators, personal representatives, successors and permitted assigns of the parties hereto.

h.     Captions of paragraphs are for convenience only and are not part of this Agreement and do not affect, change or modify the paragraphs they precede.

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

i.    All understandings and agreements heretofore and between the parties are merged in this Agreement and all exhibits and schedules attached hereto, which alone fully and completely expresses their agreement.

j.    This Agreement may be executed in counterparts, each of which shall for all purposes be deemed an original, and all of such counterparts shall together constitute one and the same agreement.

k.    All of the provisions of this Agreement shall be deemed and construed to be "conditions" and "covenants" as though the words specifically expressing or importing covenants and conditions were used in each separate provision hereof

l.    The recitals set forth at the beginning of this Agreement constitute an integral part of this Agreement and are hereby incorporated by reference herein and made a part hereof as if fully set forth herein.

m.    All nouns and pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons, firm or firms, corporation or corporations, entity or entities or any other thing or things may require, or "any" shall mean "any and all"; "or" shall mean "and/or" and "including" shall mean "including without limitation".

n.    If any term or provision of this Agreement shall to any extent be held invalid or unenforceable, the remaining terms and provisions of this Agreement shall not be affected thereby, but each term and provision shall be valid and be enforced to the fullest extent permitted by law.

o.    The language used in this Agreement is the language chosen by the parties to express their mutual intent, and no rule of strict construction shall be applied against any of the parties hereto.

[SIGNATURE PAGE FOLLOWS ON NEXT PAGE]

33

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

IN WITNESS **WHEREOF,** the parties hereby execute this Agreement as of the day and year first above written.

OLD OPERATOR:                                    NEW OPERATOR:

WCCC OP LLC                                       [_____]


By: _____            By: _____
Name:  Samuel Goldner                           Name:
Its:    Authorized Signatory                        Its:

4813-2496-6622, v. 2

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT A**

**FORM OF GENERAL ASSIGNMENT**
**GENERAL ASSIGNMENT**

**THIS ASSIGNMENT**, is made as of the ___ day of _____ 2020, by [____] ("Assignor"), to [ _ ], a [___] ("Assignee").

W I T N E S S E T H:

**WHEREAS**, by Operations Transfer Agreement (the "OTA"), dated as of _____, 2020, by and among Assignor and Assignee, Assignor agreed to sell to Assignee certain personal property and such other assets, as more fully described in the OTA (the "Transferred Assets") (capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the OTA); and

**WHEREAS**, the OTA provides, inter alia, that Assignor shall assign to Assignee, the Permits, the Patient Trust Funds and Property, the Warranties, the Assumed Contracts, the resident contracts and agreements and such other items applicable to the Transferred Assets, as more fully provided in the OTA;

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby agree as follows:

1.     **Transfer of Permits**.  Assignor hereby assigns, sets over and transfers to Assignee all of Assignor's right, title and interest in, to and under the Permits.

2.     **Transfer of Warranties**.  Assignor hereby assigns, sets over and transfers to Assignee all of Assignor's right, title and interest in, to and under the Warranties.

3.     **Transfer of Patient Trust Funds and Property**.  Assignor hereby assigns, sets over and transfers to Assignee, all of Assignor's right, title and interest in, to and under the Patient Trust Funds and Property.

4.     **Contracts**.  Assignor hereby assigns, sets over and transfers to Assignee, all of Assignor's right, title and interest in, to the Assigned Contracts, as well as all contracts and agreements with residents of the Facility.

5.     **Assumption**.  Assignee hereby accepts the foregoing assignments set forth in Sections 1, 2, 3, and 4 hereof, provided, that said assignment and assumption shall in all respects be subject to the terms of the OTA with regard to the rights and obligations of each of the parties hereto with respect to the items assigned hereunder, and in the event that any term of this Assignment shall contradict the OTA, the OTA shall control.

5.     **Miscellaneous**.  This Assignment and the obligations of Assignor and Assignee hereunder shall survive the closing of the transactions referred to in the OTA shall be binding upon and inure to the benefit of Assignor and Assignee, and their respective successors and assigns, shall be

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

governed by and construed in accordance with the laws of the State of Missouri and may not be modified or amended in any manner other than by a written agreement signed by the party to be charged therewith.

(Signatures on following page)

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

   **IN WITNESS WHEREOF**, Assignor has duly executed this Assignment as of the day and year first above written.

ASSIGNOR

[ _ ]

By:

Name:

Its:


ASSIGNEE

[ _ ]

By:

Name:

Its:

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT B**

**Form of Escrow Agreement**

{1066/149/00446135.1}

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT C**

**FORM OF BILL OF SALE**

**BILL OF SALE**

[_____], a [_____], ("Old Operator"), in consideration of Ten and No/100 Dollars ($10.00), receipt of which is hereby acknowledged, does hereby sell, assign, transfer and set over to [ _ ], a [**name of state**] [**type of** company ("New Operator"), all of its right, title and interest in and to the following described personal property, to-wit:

All of the "Supplies", as defined in that certain Operations Transfer Agreement ("OTA"), dated as of _____, 2020, by and between Old Operator and New Operator.

Old Operator hereby represents and warrants to New Operator that Old Operator is the absolute owner of said property, that said property is free and clear of all liens, charges and encumbrances, and that Old Operator has full right, power and authority to sell said personal property and to make this Bill of Sale.  Except as set forth in the OTA, all warranties of quality, fitness and merchantability are hereby excluded.

(Signatures on following page)

{1066/149/00446135.1}2

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**IN WITNESS WHEREOF**, Old Operator has caused this Bill of Sale to be signed and sealed in its name by its officer thereunto duly authorized this ___ day of _____, 2020.

OLD OPERATOR:                                          NEW OPERATOR:

WCCC OP LLC                                            [_____]


By: _____    By: _____
Name:                                                 Name:
Its:                                                  Its:

{1066/149/00446135.1}3

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT D**

**CLOSEOUT REPORT**

This Closeout Report is made as of the ___ day of _____, 2020, by and [_____], ("Old Operator") and [_____] ("New Operator").

**RECITALS**

A.    Old Operator was the operator of the 137 skilled care bed nursing home facility (the "Facility"), commonly known as "West County Care Center" (the "Property") through the Effective Time hereof;

B.    New Operator wishes to operate the Facility from and after the Effective Time as defined below;

C.    The parties wish to prepare this Closeout Report in order to satisfy the provisions of Section 198.090.1(9) RSMo, and 19 CSR 30-88.020 concerning the funds of the current residents at the Facility;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements hereinafter set forth, the parties hereto agree as follows:

1.    Attached to this Closeout Report is Appendix 1.  Old Operator represents and warrants that Appendix 1 represents a true and accurate list which identifies each current resident of the Facility for which Old Operator held any personal funds, money, or property in trust and which shows the true and correct balance and inventory of such personal funds, money, or property as of the Effective Time, as defined below.  The aggregate amount of all current residents' funds held by Old Operator on the Effective Time is the amount shown in Appendix 1.

2.    Old Operator represents and warrants that as of the Effective Time, it did not hold any property of any current residents of the Facility other than the funds which are shown on Appendix 1.

3.    New Operator hereby acknowledges payment by Old Operator in the amount of the total shown on Appendix 1, which represents the full amount of the aggregate balance of the current residents' funds as of the Effective Time.  New Operator hereby acknowledges receipt of this transfer of the current residents' funds pursuant to Section 198.090.1(9) RSMo 2000.

4.    The Effective Time of this Closeout Report shall be _____ __, 2020.

{1066/149/00446135.1}4

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first above written.

OLD OPERATOR:                                    NEW OPERATOR:

WCCC OP LLC                                       [_____]


By: _____                     By: _____
Name:                                            Name:
Its:                                             Its:

{1066/149/00446135.1}5

4813-2496-6622, v. 3

# APPENDIX 1

## WEST COUNTY CARE CENTER

Name of Resident          Amount of Resident Funds

Total

{1066/149/00446135.1}6

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT E**

**MEDICAID AGREEMENT**

This Agreement is made on this ____ day of _____, 2020, by and between [_____], ("Old Operator") and [_____] ("New Operator").  This Agreement is based upon the following:

A.     Missouri Department of Social Services is an agency of the State of Missouri in which the MO HealthNet Division ("MHD") is contained.  MHD has authority to make reimbursement payments to nursing home facilities participating in the Title XIX (Medicaid) program in the State of Missouri.

B.     Old Operator operates a long-term care facility (the "Facility") located at:

> West County Care Center
> 312 Solley Drive
> Ballwin, MO 63021

C.     The Facility is certified by the Missouri Department of Health and Senior Services ("DHSS") to participate in the Title XVIII (Medicare) and Title XIX (Medicaid) reimbursement program.

D.     Old Operator and the New Operator have entered into an agreement whereby Old Operator and New Operator contemplate that as of _____(the "Effective Time"), there will be a change of operator of the Facility so that the New Operator will become the licensee and operator of the Facility effective on that date.

E.     As a result of the change in operator of the Facility, the parties acknowledge that the Old Operator is required by 13 CSR 70-10.015(10)(A)(11) to file a Medicaid cost report for the period ending on the Effective Time of the change in ownership or control of the Facility not later than the first day of the sixth month after the Effective Time of the change of control or ownership or on such other date as may be provided by any amendment to said regulation (the "Cost Report Deadline").

F.     Old Operator and New Operator wish to provide MHD with assurances satisfactory to MHD that the final cost report of the Old Operator will be filed on or before the Cost Report Deadline.

Now, therefore, in consideration of the mutual covenants, the parties agree as follows:

1. **Filing of Cost Report for Old Operator**.  In the event the change of operator described above shall occur, Old Operator and New Operator each agree to take all action which may be necessary or appropriate in order to cause the cost report of the Old Operator for the period ending on the date when the Old Operator will no longer be the operator of the Facility (the "Effective Time") to be filed on or before the final date for filing same permitted by applicable regulations (the "Cost Report Deadline").  The parties agree that the Cost Report Deadline is _____.  Old Operator agrees to file its final Medicaid cost

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

report on or before the Cost Report Deadline with MHD and to deliver to New Operator a copy of its cost report for the period ended on the Effective Time on or before the Cost Report Deadline.

2. **Withholding of Reimbursement to New Operator**.  In the event the change in operator described above shall occur and if the final cost report of the Old Operator shall not be filed on or before the Cost Report Deadline, the New Operator hereby authorizes MHD to withhold from one or more future Medicaid reimbursements otherwise payable to the New Operator the aggregate sum of _____.  Nothing in this agreement is intended to modify any other agreement entered by and between Old Operator and New Operator or to relieve either party of any of its obligations arising under any such other agreement.

3. **Enrollment by New Operator**.  The parties acknowledge that in order for Old Operator to file its final Medicaid Cost Report it needs to receive a provider statistical and reimbursement reconciliation ("PS&R") from its fiscal intermediary and that the PS&R report will not be sent to Old Operator unless New Operator shall file documents required to enroll in the Medicare and Medicaid programs.

New Operator agrees to use its best efforts in good faith to file all documents necessary for enrollment of New Operator in the Medicare and Medicaid programs no later than thirty (30) days after the Effective Time.

4. **Notices**.  All notices to be given by either party to this Agreement to the other party hereto shall be in writing, and shall be: (i) given in person; (ii) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested; (iii) sent by national overnight courier service, priority next business day service; or (iv) sent by facsimile or e-mail (followed by delivery by one of the other means identified in (i)-(iii)) each addressed as follows:

if to Old Operator:          [ _ ]
                             Facsimile:
                             Email:

with copies to:              [ _ ]
                             Facsimile:
                             Email:

if to New Operator:          [ _ ]
                             Facsimile:
                             Email:

{1066/149/00446135.1} 8

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

with a copy to:       Gutnicki LLP
                      4711 Golf Road, Suite 200
                      Skokie, Illinois 60076
                      Attn:  Abraham A. Gutnicki, Esq.
                           Stacy J. Flanigan
                      Facsimile:  (847) 933-9285
                      E-mail:  agutnicki@gutnicki.com
                             sflanigan@gutnicki.com

5.   **Miscellaneous**.

(a)   **Severability**.  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision.

(b)  **Interpretation**.  The headings used herein are for convenience only and do not limit or expand the contents of this Agreement.

(c)  **No Waiver**.  No waiver of a breach of any provision of this Agreement will be construed to be a waiver of any other breach of this Agreement, whether of a similar or dissimilar nature.

(d)   **Survival**.  Any provisions of this Agreement creating obligations extending beyond the term of this Agreement will survive the expiration or termination of this Agreement, regardless of the reason for such termination.

(e)  **Amendments**.  Any amendments to this Agreement will be effective only if in writing and signed by the parties hereto.

(f)  **Entire Agreement**.  This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

(g)  **Assignment**.  No party may assign its rights or obligations hereunder without the prior written approval of all other parties.

(h)  **Missouri Law**.  This Agreement shall be governed in all respects, including validity, interpretation, and effect in accordance with the laws of the State of Missouri.

(i)   **No Violation**.   Neither party shall be deemed to be in violation of this Agreement if it is, or reasonably determines it is, prevented from performing any of its duties or obligations for any reason beyond such party's control, including, without limitation, flood, storm, strikes, acts of God or the public enemy, or statute, ordinance, regulation, rule or action of any applicable governmental entity.

(j)  **No Joint Venture**.  It is understood and agreed by the parties that nothing contained in this Agreement shall be construed to create a joint venture, partnership, association,

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

or other affiliation or like relationship between the parties, or a relationship of landlord and tenant, it being specifically agreed that their relationship is and shall remain that of independent parties to a contractual relationship as set forth in this Agreement.  In no event shall either party be liable for the debts or obligations of the other of them, except as otherwise specifically provided in this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

OLD OPERATOR:

[_____]

By: _____
Name:
Its:

{1066/149/00446135.1}10

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT F**

**Scheduled Employees**

{1066/149/00446135.1}11

4813-2496-6622, v. 3

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**EXHIBIT G**

**Form of Guaranty**

{1066/149/00446135.1}RGSZ #653968

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## EXHIBIT D

**Notice of Change of Operator and Executed 855A**

Please see attached.

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

Date: _____

**VIA FEDERAL EXPRESS and e-mail to LTCapplication@dhss.mo.gov**

Department of Health and Senior Services
Section for Long-Term Care Regulation
Licensure Unit, PO Box 570
Jefferson City, MO 65102-0570

      RE:    Advance Notice of Change in Ownership of License No. _____
             312 Solley Dr, Ballwin, MO 63021

To whom it may concern:

     Please accept this letter as advance notice of a change of licensed operator anticipated to occur on _____ at the captioned location.  WCCC OP LLC, the current licensed operator, is licensed to operate the home located at 312 Solley Dr, Ballwin, MO 63021.

     Should you have any questions in this regard please feel free to contact our landlord's counsel, Gutnicki LLP by calling Stacy Flanigan at 847-745-6936.

Very truly yours,

WCC OP LLC

By:_____
Name:
Title:

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SECTION 1: BASIC INFORMATION *(Continued)*

### A. Check one box and complete the required sections

| REASON FOR APPLICATION | BILLING NUMBER INFORMATION | REQUIRED SECTIONS |
|---|---|---|
| ☐ You are a **new enrollee** in Medicare | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | **Complete all applicable** sections except **2F, 2G,** and **2H** |
| ☐ You are enrolling with another fee-for-service contractor's jurisdiction<br><br>☐ You are **reactivating** your Medicare  enrollment | Enter your Medicare Identification Number (if issued) and the NPI you would like to link to this number in Section 4. | **Complete all applicable** sections except **2F, 2G,** and **2H** |
| ☐ You are **voluntarily terminating** your Medicare enrollment | Effective Date of Termination:<br><br>Medicare Identification Number(s) to Terminate *(if issued):*<br><br>National Provider Identifier *(if issued):* | **Complete sections: 1, 2B1, 13,** and either **15** or **16** |
| ☐ There has been a **Change of Ownership (CHOW)** of the Medicare-enrolled provider<br><br>You are the:<br>☐ Seller/Former Owner<br>☐ Buyer/New Owner | Tax Identification Number: | **Seller/Former Owner: 1A, 2F, 13,** and either **15** or **16**<br><br>**Buyer/New Owner: Complete all** sections except **2G** and **2H** |
| ☐ Your organization has taken part in an **Acquisition** or **Merger**<br><br>You are the:<br>☐ Seller/Former Owner<br>☐ Buyer/New Owner | Medicare Identification Number of the Seller/Former Owner *(if issued):*<br><br>NPI:<br><br>Tax Identification Number: | **Seller/Former Owner: 1A, 2G, 13,** and either **15** or **16**<br><br>**Buyer/New Owner: 1A, 2G, 4, 13,** and either **15** (if you are the authorized official) or **16** (if you are the delegated official), and **6** for the signer if that authorized or delegated official has not been established for this provider. |

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SECTION 2: IDENTIFYING INFORMATION *(Continued)*

### F. Change of Ownership (CHOW) Information

Both the seller/former owner and the new owner should complete this section. (As the new owner may not know all of the seller/former owner's data, it should furnish this information on an "if known" basis.) The seller/former owner must complete Sections 1A, 2F, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.) The new owner must complete the entire application.

Legal Business Name of "Seller/Former Owner" as reported to the Internal Revenue Service

| "Doing Business As" Name of Seller/Former Owner *(if applicable)* | Old Owner's Medicare Identification Number *(if issued)* |
|---|---|

| Old Owner's NPI | Effective Date of Transfer *(this can be a future date) (mm/dd/yyyy)* | Name of Fee-For-Service Contractor of Seller/Former Owner |
|---|---|---|

Will the new owner be accepting assignment of the current "Provider Agreement?"   ☐ YES   ☐ NO

If the answer is "No," then this is an initial enrollment and the new owner should follow the instructions for "New Enrollees" in Section 1 of this form.

**Submit one copy of the bill of sale with the application. A copy of the final sales agreement must be submitted once the sale is executed.**

### G. Acquisitions/Mergers

Effective Date of Acquisition *(mm/dd/yyyy)*

The seller/former owner need only complete Sections 1A, 2G, 13, and either 15 or 16; the new owner must complete Sections 1A, 2G, 4, 13, and either 15 or 16. (Section 6 must also be completed if the signer has never completed Section 6 before.)

### 1. PROVIDER BEING ACQUIRED

This section is to be completed with information about the currently enrolled provider that is being acquired and will no longer retain its current Medicare provider number as a result of this acquisition.

Legal Business Name of the "Provider Being Acquired" as reported to the Internal Revenue Service

Current Fee-for-Service Contractor

Provide the name and Medicare identification number of all units of the above provider that have separate Medicare identification numbers but have not entered into separate provider agreements, such as swing bed units of a hospital and HHA branches. Also furnish the NPI. Units that already have a separate provider agreement should not be reported here.

| NAME/DEPARTMENT | MEDICARE IDENTIFICATION NUMBER (IF ISSUED) | NATIONAL PROVIDER IDENTIFIER |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SECTION 13: CONTACT PERSON

If questions arise during the processing of this application, the fee-for-service contractor will contact the individual shown below. If the contact person is an authorized or delegated official, check the appropriate box below and skip to the section indicated.

☐ Contact an Authorized Official listed in Section 15

☐ Contact a Delegated Official listed in Section 16

| First Name | Middle Initial | Last Name | Jr., Sr., etc. |
|---|---|---|---|
| | | | |

| Telephone Number | Fax Number *(if applicable)* |
|---|---|
| | |

Address Line 1 *(Street Name and Number)*

Address Line 2 *(Suite, Room, etc.)*

| City/Town | State | ZIP Code + 4 |
|---|---|---|
| | | |

E-mail Address

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SECTION 15: CERTIFICATION STATEMENT

An **AUTHORIZED OFFICIAL** means an appointed official (for example, chief executive officer, chief financial officer, general partner, chairman of the board, or direct owner) to whom the organization has granted the legal authority to enroll it in the Medicare program, to make changes or updates to the organization's status in the Medicare program, and to commit the organization to fully abide by the statutes, regulations, and program instructions of the Medicare program.

A **DELEGATED OFFICIAL** means an individual who is delegated by an authorized official the authority to report changes and updates to the provider's enrollment record. A delegated official must be an individual with an "ownership or control interest in" (as that term is defined in Section 1124(a)(3) of the Social Security Act), or be a W-2 managing employee of, the provider.

Delegated officials may not delegate their authority to any other individual. Only an authorized official may delegate the authority to make changes and/or updates to the provider's Medicare status. Even when delegated officials are reported in this application, an authorized official retains the authority to make any such changes and/or updates by providing his or her printed name, signature, and date of signature as required in Section 15B.

> **NOTE:** Authorized officials and delegated officials must be reported in Section 6, either on this application or on a previous application to this same Medicare fee-for-service contractor. **If this is the first time an authorized and/or delegated official has been reported on the CMS-855A, you must complete Section 6 for that individual.**

By his/her signature(s), an authorized official binds the provider to all of the requirements listed in the Certification Statement and acknowledges that the provider may be denied entry to or revoked from the Medicare program if any requirements are not met. All signatures must be original and in ink. Faxed, photocopied, or stamped signatures will not be accepted.

Only an authorized official has the authority to sign (1) the initial enrollment application on behalf of the provider or (2) the enrollment application that must be submitted as part of the periodic revalidation process. A delegated official does not have this authority.

By signing this application, an authorized official agrees to immediately notify the Medicare fee-for-service contractor if any information furnished on this application is not true, correct, or complete. In addition, an authorized official, by his/her signature, agrees to notify the Medicare fee-for-service contractor of any future changes to the information contained in this form, after the provider is enrolled in Medicare, in accordance with the timeframes established in 42 C.F.R. 424.520 (b).

The provider can have as many authorized officials as it wants. If the provider has more than two authorized officials, it should copy and complete this section as needed.

**Each authorized and delegated official must have and disclose his/her social security number.**

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SECTION 15: CERTIFICATION STATEMENT *(Continued)*

### B. 1ST Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 CFR § 424.520(b).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

### Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|
| Telephone Number | | Title/Position | |
| Authorized Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | Date Signed *(mm/dd/yyyy)* | |

X

### C. 2ND Authorized Official Signature

I have read the contents of this application. My signature legally and financially binds this provider to the laws, regulations, and program instructions of the Medicare program. By my signature, I certify that the information contained herein is true, correct, and complete, and I authorize the Medicare fee-for-service contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare fee-for-service contractor of this fact in accordance with the time frames established in 42 CFR § 424.520(b).

If you are changing, adding, or deleting information, check the applicable box, furnish the effective date, and complete the appropriate fields in this section.

| CHECK ONE | ☐ CHANGE | ☐ ADD | ☐ DELETE |
|---|---|---|---|
| DATE *(mm/dd/yyyy)* | | | |

### Authorized Official's Information and Signature

| First Name | Middle Initial | Last Name | Suffix *(e.g., Jr., Sr.)* |
|---|---|---|---|
| Telephone Number | | Title/Position | |
| Authorized Official Signature *(First, Middle, Last Name, Jr., Sr., M.D., D.O., etc.)* | | Date Signed *(mm/dd/yyyy)* | |

**All signatures must be original and signed in ink. Applications with signatures deemed not  original will not be processed. Stamped, faxed or copied signatures will not be accepted.**

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## <u>EXHIBIT E</u>

**Permitted Liens**

None.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## **EXHIBIT F**

### **PERMITTED ENCUMBRANCES**

1.   The lien of the general taxes for the year 2021 and thereafter, not yet due and payable.

2.    Easement granted Union Electric Company of Missouri according to the instrument recorded in Book 3043, Page 307. (Parcel 1 and 2)

3.   Agreement for sanitary sewage treatment with St. Louis County Sewer Company according to instrument recorded in Book 5215, Page 183. (Parcel 1 and 2)

4.   Easement granted Laclede Gas Company according to the instrument recorded in Book 4302, Page 161. (Parcel 1 and 2)

5.   Grant of Easement to Charter Communications Entertainment I, LLC recorded in Book 23414, Page 2743.

6.   Charges and assessments for sewer service; none now due and payable.

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**SCHEDULE 4.1**

**BASE RENT**

Month 1-6: $29,437 a month
Month 7-12: $32,708 a month
Year 2: $402,312
Year 3: $412,369.80
Year 4: $422,679.05
Year 5: $433,246.02
Year 6: $444,077.17
Year 7: $455,179.10
Year 8: $466,558.58
Year 9: $478,222.54
Year 10: $490,178.11


Annual base rent will increase by two and one half (2.5) percent at the beginning of Year 11 and on each annual anniversary thereafter during any extension terms, if applicable.

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SCHEDULE 8.3

## FACILITY AND NUMBER OF BEDS

| Facility Address | Beds (Total, Skilled, Intermediate) |
| --- | --- |
| 312 Solley Drive, Rear, Ballwin, MO 63021 | 137 skilled beds |

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SCHEDULE 11.2

### REQUIRED WORK

| Repair to be Completed | Time Frame |
| --- | --- |
| Asphalt Pavement Replacement | Within 120 days from August 16, 2021 |
| Inspect and certify the elevator with the State and County | Within 120 days from August 16, 2021 |
| Install three (3) standard accessible parking spaces | Within one (1) year from August 16, 2021 |
| Install one (1) van-accessible parking space | Within one (1) year from August 16, 2021 |
| Install scald and abrasion protection on the piping under the sinks in the communal shower rooms | Within 120 days from August 16, 2021 |

{1066/149/00426111.8}
4817-3081-0582, v. 10

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SCHEDULE 18.2

### LESSEE OWNERSHIP

See attached.

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

DRAFT 2-11-2021

**WEST COUNTY CARE CENTER (MISSOURI)**
**Structure Chart**



THIRD PARTY
LANDLORD

1

4820-3493-0638, v. 2
7168.22

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

**DRAFT 2-11-2021**

## GCM MANAGER STRUCTURE

Samuel Goldner

100%

**GCM Manager LLC**
(DE)
*Manager:  Samuel Goldner*

3

4820-3493-0638, v. 2
7168.22

Electronically Filed - St Louis County - March 29, 2023 - 08:33 PM

## SCHEDULE 27.3
### Lessee's Covenants as required under Lessor's Loan Documents

To be provided.